1   MARY-LEE SMITH (CA BAR NO. 239086)
    MICHELLE IORIO (CA BAR NO. 298262)
2   Disability Rights Advocates
    2001 Center Street, Fourth Floor
3   Berkeley, California  94704
    Telephone:    (510) 665-8644
4   Facsimile:    (510) 665-8511
    TTY:          (510) 665-8716
5   Email:        msmith@dralegal.org
6
    GAY GRUNFELD (CA BAR NO. 121944)
7   LISA ELLS (CA BAR NO. 243657)
    KARA JANSSEN (CA BAR NO. 274762)
8   Rosen Bien Galvan & Grunfeld LLP
    50 Freemont Street, 19th Floor
9   San Francisco, California  94105
    Telephone:    (415) 433-6830
10  Facsimile:    (415) 433-7104
    Email:        LElls@rbgg.com
11
12  Attorneys for Plaintiffs

13              **UNITED STATES DISTRICT COURT**

14            **NORTHERN DISTRICT OF CALIFORNIA**

15  DAVID COLE, LEROY BENJAMIN,                    **CLASS ACTION**
    ERASMO FLORES, JR., ROBERT
16  PHILLIPS and BRANDON WILLIAMS, on             **COMPLAINT FOR INJUNCTIVE AND**
    behalf of themselves and all others similarly  **DECLARATORY RELIEF**
17  situated,
18
                    Plaintiffs,
19
20  v.

21  COUNTY OF SANTA CLARA, a public
    entity, COUNTY OF SANTA CLARA
22  DEPARTMENT OF CORRECTION, a public
    entity under the control of the County of Santa
23  Clara, the COUNTY OF SANTA CLARA
    OFFICE OF THE SHERIFF, a public entity
24  under the control of the County of Santa Clara,
    and DOES 1 to 20, inclusive,
25
                    Defendants.
26
27
28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    Plaintiffs DAVID COLE, LEROY BENJAMIN, ERASMO FLORES, JR., ROBERT

2    PHILLIPS and BRANDON WILLIAMS (collectively, "Plaintiffs"), by and through their

3    counsel, Disability Rights Advocates and Rosen Bien Galvan & Grunfeld LLP, bring this

4    Complaint against Defendants COUNTY OF SANTA CLARA ("COUNTY"), COUNTY OF

5    SANTA CLARA DEPARTMENT OF CORRECTION ("CORRECTION DEPARTMENT") and

6    the COUNTY OF SANTA CLARA OFFICE OF THE SHERIFF ("SHERIFF'S OFFICE")

7    (collectively, "Defendants").

8                                    **INTRODUCTION**

9        1.    Plaintiffs bring this case to remedy the inaccessibility of the Santa Clara County

10    Jail system ("County Jails," "Jails," or "Jail") for inmates with mobility disabilities.  The Jail

11    system is the fifth largest jail system in the State of California.  Due to the lack of accessible

12    cells, showers, and living units in the County Jails, many individuals with mobility disabilities

13    are segregated in restrictive medical units despite the fact they do not require ongoing medical

14    care, and/or are held in higher security and more restrictive settings than they otherwise would be

15    but for their disabilities.  They are further denied access to educational, religious, and

16    rehabilitative programs due to physical and programmatic barriers, and cannot even use the toilet

17    and shower safely due to a lack of accessible features.  Inmates are not informed of their rights,

18    are not provided with a method for requesting reasonable modifications to policies and practices,

19    and are denied access to a functioning and meaningful grievance system.

20       2.    There are approximately 4,000 people incarcerated in the Jails at any given time

21    and over 65,000 individuals are booked into the Jails every year.  The Jails include facilities at

22    the Santa Clara County Main Jail Complex ("Main Jail"), consisting of Main Jail North and

23    Main Jail South, in San Jose, California; facilities for male inmates at the Elmwood Correctional

24    Complex in Milpitas, California ("Elmwood"); and the Elmwood Complex Women's Facility in

25    Milpitas, California ("Elmwood Women's Facility").

26       3.    In the entire County Jail system, there is not a single housing unit that is fully

27    accessible in compliance with state and federal disability laws.  As a result, inmates with

28    mobility disabilities cannot use the toilet safely and independently, take a shower safely and

**CIVIL CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**          **1**

1  independently, or otherwise have equal or meaningful access to programs and services offered at

2  the Jails. Further, this lack of accessible housing puts the physical safety of inmates with

3  mobility disabilities at risk.

4        4.        Additionally, there is no functioning system of screening inmates upon intake to

5  ensure inmates with mobility disabilities are identified and accommodated.  To the extent

6  Defendants are able to identify individuals with mobility disabilities, the County Jails lack a

7  system to track the location and needs of inmates identified as having a mobility disability,

8  causing Jail staff to fail to accommodate the inmates' disability needs..

9        5.        Inmates with mobility disabilities regularly are housed in a medical setting and/or

10  a higher custody level than warranted based solely on their disability.  Inmates in the Main Jail

11  with mobility disabilities who need a wheelchair are required to be housed in "special housing

12  units" including the Main Jail Infirmary, Unit 2C ("Main Jail Infirmary") and Main Jail Special

13  Housing, Unit 2B ("Main Jail Special Housing").  Additionally, medium security inmates with

14  mobility disabilities who need a wheelchair and who would otherwise be eligible for housing at

15  the less restrictive Elmwood facility are housed at in these special housing units at the Main Jail

16  instead.

17        6.        The Main Jail Infirmary and Main Jail Special Housing units are each 30-bed

18  facilities that are, on information and belief, the only housing at the Main Jail that offer any

19  accessible features, such as grab bars, although these units are still not fully accessible.

20  Individuals housed in these units are generally held in their cells for 23 or more hours per day

21  and are sometimes not let out at all.  These units do not provide access to programs, activities,

22  and services, including educational, vocational, and rehabilitative programs available in other

23  areas of the Main Jail or at Elmwood.  Similarly, minimum security level inmates with mobility

24  disabilities who use a wheelchair are required to be housed in the Elmwood Minimum Security

25  Camp Special Housing Unit ("Elmwood Special Housing"), which also is not fully accessible.

26        7.        Plaintiffs seek declaratory and injunctive relief against Defendants as a remedy

27  for their systemic discrimination against inmates with mobility disabilities. Defendants

28  discriminate in two predominant ways.  First, Defendants deny inmates with disabilities access to

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**CIVIL CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**          **2**

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  the County Jails' programs, services and activities.  They do so at the Main Jail by segregating

2  inmates who use wheelchairs, including inmates who would otherwise be eligible to be housed at

3  the lower-security Elmwood, in the highly restrictive special housing units and by maintaining a

4  physically inaccessible facility, the combination of which prevents inmates with mobility

5  disabilities from participating in programs, services and activities at the Main Jail.  At Elmwood,

6  the denial of access to the programs, services and activities offered is due mostly to the

7  physically inaccessible campus, which is particularly troubling given the far greater amount of

8  programming available at Elmwood.

9       8.     Second, Defendants discriminate by failing to modify their policies and

10  procedures.  Defendants fail to identify and/or track inmates with mobility disabilities, making it

11  virtually impossible to properly accommodate them.  Defendants have assistive device policies

12  and procedures that result in inmates with mobility disabilities rarely, and certainly not in a

13  timely manner, receiving the assistive devices that they need.  Jail staff also lack the adequate

14  disability-accommodation training, which only exacerbates Defendants' failure to provide legally

15  required accommodations.  Defendants also lack clear grievance policies and procedures for

16  disability-related grievances, rendering the grievance system almost useless in achieving any sort

17  of remedy.  As a result of these actions and omissions, inmates with mobility disabilities are

18  denied equal and meaningful access to Defendants' programs, services, and activities, including

19  educational programs, vocational programs, health care services, mental health services,

20  exercise, showers, recreational programs and religious services.

21       9.     Moreover, Defendants' failure to modify its policies and procedures makes

22  inmates with disabilities susceptible to exploitation and violence by other non-disabled inmates

23  and increases the risk of serious injury or even death for inmates with disabilities.

24       10.    Defendants' acts and omissions have resulted in the unequal treatment of, and

25  severe harm to, individuals with mobility disabilities housed at the County Jails.  Such

26  discrimination violates Title II of the Americans with Disabilities Act ("ADA"), Section 504 of

27  the Rehabilitation Act ("Rehabilitation Act" or "Section 504"),  and California Government

28  Code § 11153, *et seq.*

**CIVIL CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**          3

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**JURISDICTION**

11.    This Court has jurisdiction over Plaintiffs' federal claims arising under Title II of the ADA, and Section 504 of the Rehabilitation Act and the regulations promulgated thereunder, pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has jurisdiction over the claims brought under California law pursuant to 28 U.S.C. § 1367.

12.    This Court has jurisdiction over Plaintiffs' claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.  This Court also has authority under the ADA pursuant to 42 U.S.C. § 12205 and under Section 504 pursuant to 29 U.S.C. § 794a(b) to award Plaintiffs' reasonable attorneys' fees and costs.

**VENUE**

13.    Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b) because Defendants are located in this District and all of the acts and/or omissions complained of herein have occurred, are occurring, or will occur in the District.

**INTRADISTRICT ASSIGNMENT**

14.    Pursuant to the Northern District of California's Civil Local Rule 3-2(c)-(e), because a substantial part of the events giving rise to Plaintiffs' claims occurred in Santa Clara County, the intradistrict assignment should be to the San Jose Division.

**PARTIES**

A.    **PLAINTIFF DAVID COLE**

15.    Plaintiff DAVID COLE has diabetes and Charcot neuropathy, or "Charcot foot," a permanent condition caused by nerve damage related to diabetes.  As a result, Plaintiff COLE does not have sensation in his feet, and something as minor as a blister can lead to a serious infection in a matter of days.  It is extremely difficult for Plaintiff COLE to bear any weight on his feet as this can accelerate and exacerbate damage to his foot.  As a result of these conditions, which substantially limit Plaintiff COLE's ability to walk and stand, Plaintiff COLE uses a wheelchair to move about.  Plaintiff COLE is a person with a disability as defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(1).

16.    Plaintiff COLE has been detained at the County Jails since November 14, 2012.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  During this time he was housed at the Main Jail Infirmary, Main Jail Special Housing, and

2  Elmwood Special Housing.  Since approximately July 6, 2016, he has been housed in an early

3  release residential treatment center.

4    17.    During his time in the County Jails, Plaintiff COLE has required reasonable

5  modifications to policies and procedures necessary to ensure disability-related accommodations,

6  including but not limited to a wheelchair, wheelchair-accessible facilities, wheelchair-accessible

7  transportation, a shower chair, diabetic socks, Epsom salt foot soaks, insulin shots four times

8  daily, and a diabetic diet.  As a result of Defendants' failure to make reasonable modifications to

9  policies and procedures, Plaintiff COLE has experienced substantial delays and other problems

10  obtaining each of these required accommodations, and in some cases, as a result of Defendants'

11  failure to make reasonable modifications to policies and procedures, he has been denied

12  necessary accommodations.

13    18.    For example, at Elmwood, in order to get his insulin shots, Plaintiff COLE had to

14  travel to Elmwood's pill call area at least four times daily over an inaccessible path of travel.  In

15  order to get there he had to rely on other inmates to assist him in opening heavy doors and

16  pushing his wheelchair up steep curb ramps.  The Jail subsequently began assigning inmates to a

17  "wheelchair pusher" position to assist individuals such as Plaintiff COLE, but the wheelchair

18  pusher program does not provide the independence that other inmates enjoy.  Additionally, there

19  are not always enough wheelchair pushers available to serve the need for such pushers,

20  particularly during busy times such as pill call, and they have often been late to bring Plaintiff

21  COLE to get his medication.  Contributing to the problem is that the wheelchair pushers have

22  other jobs and, thus other obligations that prevent them from being available when needed.  As

23  such, when no designated wheelchair pusher is available, Plaintiff COLE has had to rely on other

24  inmates in Elmwood Special Housing, many of whom also had disabilities, to assist him, which

25  put those inmates at risk of physical injury as well.

26    19.    Plaintiff COLE also requires wheelchair-accessible vans when he is being

27  transported to court, medical appointments, or other services outside of the Jail, but has not been

28  consistently provided with accessible transportation.  For example, Jail staff failed to provide

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   him with a wheelchair accessible van to transport him to a medical appointment.  Instead, Jail

2   staff suggested that he use a non-accessible van that required him to step in and out of the van

3   and go without his wheelchair to stabilize him.  He refused this arrangement because he feared

4   for his physical safety and had to miss his medical appointment.

5         20.      When Plaintiff COLE was at the Main Jail, even after he had his wheelchair

6   issued to him, Jail staff sometimes took it away from him.  As a result, Plaintiff COLE was left

7   with no way to get around and without his wheelchair.  Consequently, Plaintiff COLE was

8   excluded from many Jail programs, services, and activities, including Narcotics Anonymous and

9   Alcoholics Anonymous.

10        21.      Plaintiff COLE was transferred to an early release program in July of 2016 to

11  complete the rest of his jail sentence.  However, at any time, Plaintiff COLE may be removed

12  from the program and returned to Elmwood or to the Main Jail, including for such minor

13  offenses as arguing or violating dress code.  He can also be remanded for failing a routine drug

14  test.  Plaintiff COLE has been in and out of the County Jails many times since 1989 for drug and

15  theft charges.  As such, he is qualified to participate in the programs, services and activities of

16  the County Jails.

17        **B.      PLAINTIFF LEROY BENJAMIN**

18        22.      Plaintiff BENJAMIN has pain in his left hip, shoulder, and leg due to bone loss

19  and disc degeneration, as well as paralysis on the left side of his body from the waist down,

20  which substantially limit his ability to walk and stand.  As a result of these conditions, Plaintiff

21  BENJAMIN, has, at various times, used a power wheelchair, walker, and cane for mobility

22  assistance.  Plaintiff BENJAMIN also has sleep apnea, which substantially limits his ability to

23  breathe and sleep, and so requires the use of a continuous positive airway pressure ("CPAP")

24  machine, which he used prior to coming to the Jails.  Plaintiff BENJAMIN currently uses a

25  wheelchair for mobility and a cane to assist him with moving about in his cell.  Plaintiff

26  BENJAMIN is a person with a disability as defined in 42 U.S.C. § 12102, 29 U.S.C. §

27  705(9)(B), and California Government Code § 12926(1).

28        23.      Plaintiff BENJAMIN has been detained at the Jails since October 3, 2015.  Since

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

arriving at the Jails, he has been housed in Main Jail South, the Main Jail Infirmary, Main Jail Special Housing, and the mental health unit of the Main Jail, which is located on the eighth floor ("Unit 8A").  Plaintiff BENJAMIN requires reasonable modifications to policies and procedures necessary to ensure disability-related accommodations for his disabilities, including but not limited to a wheelchair, cane, and CPAP machine.  He has experienced substantial delays and other problems obtaining each of these reasonable modifications, and in some cases has been denied reasonable modifications.

24.     Plaintiff BENJAMIN repeatedly has been housed in cells without accessible features, such as grab bars, to allow him to use the toilet safely and independently.  For example, when he was housed in Main Jail South, he was placed in a cell with no grab bars to allow him to use the toilet safely.  Additionally, his current cell in Main Jail Special Housing only has a grab bar located directly behind the toilet and no side grab bar to allow him to safely lift himself on and off the toilet.  As a result, he is at risk of falling and injuring himself every time he uses the toilet and is forced to use his cane to try to stabilize himself.

25.     He has also, at various times, been denied access to accessible shower facilities, which has forced him to go without showers or to put himself at risk of injury due to the lack of grab bars and other features that would allow him to bathe safely.  For example, when Plaintiff BENJAMIN first arrived at the Jails, he was housed in Main Jail South for approximately two weeks without access to a shower with accessible features such as grab bars.

26.     Plaintiff BENJAMIN was denied access to a wheelchair or cane upon arriving at the Jails and when he was housed at Main Jail South.  He was not provided with any assistive devices until he was transferred to Main Jail Special Housing.  He was again denied access to his wheelchair and cane on multiple occasions when he was housed in Unit 8A in order to receive mental health treatment.

27.     Furthermore, Plaintiff BENJAMIN did not receive a CPAP machine until approximately seven months after his initial request.  Without his CPAP machine, Plaintiff BENJAMIN wakes up feeling as if he is choking and is only able to sleep four to five hours per night.  The exhaustion caused by this lack of sleep worsens his pre-existing mobility disabilities.

1    After he received a CPAP machine, Plaintiff BENJAMIN again suffered a mental health crisis

2    and requested treatment in Unit 8A.  Jail staff told him that he could not go to Unit 8A for mental

3    health treatment with his assistive devices.

4         28.    By reason of his disabilities, Plaintiff BENJAMIN has been excluded from

5    programs and services at the Jail such as mental health treatment, visitation, shower, and yard

6    time.

7         29.    At any time, Plaintiff BENJAMIN may be transferred from the Main Jail to

8    Elmwood or vice versa.  As such, he is qualified to participate in the programs, services and

9    activities of the County Jails.

10        **C.    PLAINTIFF ERASMO FLORES, JR.**

11        30.    Plaintiff ERASMO FLORES, JR. has multiple disabilities including a vision

12   impairment, diabetes, water in his legs, and arthritis in his knees and shoulder, which

13   substantially limit his ability to walk and stand.  As a result of these conditions, Plaintiff

14   FLORES typically uses a cane or a walker for mobility but has used a wheelchair since

15   September 2016 due to a surgery.  Plaintiff FLORES is a person with a disability as defined in

16   42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(1).

17        31.    Plaintiff FLORES has been detained at the County Jails since April 28, 2015.

18   Since arriving at the County Jails, he has been housed in Elmwood, the Main Jail Infirmary, Unit

19   5B in the Main Jail, and in Main Jail Special Housing.  When Plaintiff FLORES was initially

20   brought to the County Jails, he did not have his cane with him.  Although he requested a cane

21   shortly after he arrived, Defendants initially rejected his request on the basis that he could not

22   have the cane in Unit 5B, where he was held at the time.  Plaintiff FLORES did not receive a

23   cane until approximately three to four months later when he was transferred to the Main Jail

24   Infirmary for other reasons.

25        32.    Plaintiff FLORES has repeatedly been housed in cells without grab bars and other

26   accessible features that would allow him to safely and independently use the toilet and navigate

27   his cell.  He has also repeatedly been forced to use a shower that is not accessible to him due to a

28   lack of clearance space for him to get into the shower from his wheelchair and a lack of grab

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

bars, putting him at risk of injury.  While housed in Unit 5B, Plaintiff FLORES was not only deprived use of a cane but was held in an inaccessible cell without features such as grab bars and without access to an accessible shower.  In Unit 5B, Plaintiff FLORES constantly was afraid of falling and injuring himself and came close to falling multiple times due to the lack of grab bars and his cane.  While housed in Elmwood, Plaintiff FLORES was also held in an inaccessible cell and was at risk of injuring himself due to the lack of grab bars in his cell.  Plaintiff FLORES' current cell in Main Jail Special Housing is also not accessible because the only grab bar is located directly behind the toilet and there is no side grab bar to allow him to safely lift himself on and off the toilet.  As a result, he is at risk of falling and injuring himself every time he uses the toilet.

33.     Additionally, when Plaintiff FLORES is held in the Main Jail Infirmary and in Main Jail Special Housing, he is denied access to programs and services available to non-disabled inmates due solely to his disabilities, including but not limited to day room, yard time, bible study, and religious services.

34.     At any time, Plaintiff FLORES may be transferred from the Main Jail to Elmwood or vice versa.  As such, he is qualified to participate in the programs, services and activities of the County Jails.

D.     **PLAINTIFF BRANDON WILLIAMS**

35.     Plaintiff BRANDON WILLIAMS is paralyzed from the waist down.  As a result of this condition, which substantially limits his ability to walk and stand, Plaintiff WILLIAMS uses a wheelchair for mobility and is a person with a disability as defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(1).

36.     Plaintiff WILLIAMS has been detained at the County Jails since August 12, 2016 and until approximately October 13, 2016 was housed in the Main Jail Infirmary despite the fact he did not require any ongoing medical care.  While housed in the Main Jail Infirmary, Plaintiff WILLIAMS was denied access to programs and services available to non-disabled inmates due solely to his disabilities including, but not limited to, day room and yard time, educational programs, and vocational programs.  Plaintiff WILLIAMS requested to be moved to Elmwood

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  multiple times in order to access such programs. Despite having been medically cleared prior to

2  submitting his request for transfer and having been approved for transfer to Elmwood, he was not

3  actually transferred for nearly a month. Plaintiff WILLIAMS filed a grievance on this issue on

4  October 7, 2016 which was denied on October 10, 2016 on the basis that he could not go to

5  Elmwood because he is an un-sentenced felon and because he had not been medically cleared,

6  which was inaccurate because he was medically cleared prior to submitting his grievance.

7  However, despite this response, Plaintiff WILLIAMS was nonetheless moved to Elmwood on

8  approximately October 13, 2016. Plaintiff WILLIAMS is currently housed in the Elmwood

9  Special Housing unit where he continues to face barriers due to lack of clearance space for him

10  to safely navigate his unit, cracked and broken pavement, a lack of accessible exercise

11  equipment, and a lack of accessible yard space.

12      37.     Plaintiff WILLIAMS also requires wheelchair-accessible transportation to go to

13  court and to medical appointments. While he has been provided with a wheelchair-accessible

14  van, Jail staff failed to properly secure Plaintiff WILLIAMS' wheelchair and his wheelchair

15  flipped over with him in it during transport. As a result, Plaintiff WILLIAMS was physically

16  injured and missed his court hearing because he had to go to the hospital.

17      38.     At any time, Plaintiff WILLIAMS may be transferred from the Main Jail to

18  Elmwood or vice versa. As such, he is qualified to participate in the programs, services and

19  activities of the County Jails.

20      E.    **PLAINTIFF ROBERT PHILLIPS**

21      39.     Plaintiff ROBERT PHILLIPS has slipped discs in his back and suffered multiple

22  injuries in 2015, including nerve damage caused by a surgery on his neck, which cause him to

23  drag his right foot when he walks. He suffered additional physical injuries in 2015 to his legs

24  and back as a result of two separate car accidents. As a result of these conditions, which

25  substantially limit his ability to walk, Plaintiff PHILLIPS uses a cane for mobility and is a person

26  with a disability as defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California

27  Government Code § 12926(1).

28      40.     Plaintiff PHILLIPS has been detained at the Main Jail since July 25, 2016. When

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    he was arrested, he had his cane with him but the arresting officers did not bring it with him to

2    the Jail.  Without his cane it is difficult for Plaintiff PHILLIPS to keep his balance when he

3    walks and he is at risk of falling and injuring himself.  When Plaintiff PHILLIPS initially arrived

4    at the Jail, he was housed at the Main Jail in Unit 4C and was not assessed to determine whether

5    he needed a cane.  Plaintiff PHILLIPS was initially housed in an inaccessible cell located on the

6    upper tier, which required the use of stairs.  Jail staff also shackled Plaintiff PHILLIPS' legs,

7    which, in combination with his lack of cane and dragging foot, made it dangerous for him to

8    walk and to navigate stairs.  As a result, Plaintiff PHILLIPS fell down the stairs and suffered

9    injuries. Despite repeated requests, Plaintiff PHILLIPS was not issued a cane for nearly three

10   months after being booked into the County Jails.  Once he was finally issued a cane, it was only

11   on a temporary basis, and he has not been approved to use the cane permanently to date.  The Jail

12   has also refused to give him the necessary medical documentation, known as a "chrono," to

13   ensure he is housed in a lower bunk and on a lower tier.

14        41.      After several weeks in Unit 4C, Plaintiff PHILLIPS was transferred to Unit 5A.

15   Plaintiff PHILLIPS has also been held for short periods in the Main Jail Infirmary.  In both Units

16   4C and Unit 5A, Plaintiff PHILLIPS has been housed in cells without any grab bars to allow him

17   to use the toilet safely and independently.  The only shower he is permitted to use also lacks grab

18   bars and a shower seat to allow him to bathe safely and independently.  To make matters worse,

19   when he is out of his cell, Jail staff continue to shackle Plaintiff PHILLIPS' hands and feet.  This

20   makes it incredibly dangerous for him to move about because his right foot drags when he walks

21   which, combined with the shackles on his feet, can cause him to lose his balance.  Since July 25,

22   2016, Plaintiff PHILLIPS has fallen multiple times due to the shackles and his lack of a cane for

23   support.  He is unable to brace himself for a fall due to the shackles and, each time he has fallen,

24   he was knocked unconscious by the force.

25        42.      At any time, Plaintiff PHILLIPS may be transferred from the Main Jail to

26   Elmwood or vice versa.  As such, he is qualified to participate in the programs, services and

27   activities of the County Jails.

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

### D.    **Defendants**

43.    Defendant SANTA CLARA COUNTY is a public entity, duly organized and existing under the laws of the State of California. The COUNTY operates and manages the County Jails and is, and was at all relevant times mentioned herein, responsible for the actions and/or inactions and the policies, procedures, practices, and customs of the SHERIFF'S OFFICE and CORRECTION DEPARTMENT, and their respective employees and/or agents. The COUNTY employs 50 or more persons and is ultimately responsible for, and retains ultimate authority over, the operation of the Jails in the COUNTY, including the housing and treatment of Plaintiffs and the class they seek to represent. Upon information and belief, the COUNTY receives state and federal funds for the operation of the County Jails and has received such funds at all times relevant to this complaint.

44.    Defendant SANTA CLARA COUNTY OFFICE OF THE SHERIFF is a public entity, duly organized and existing under the laws of the State of California and employs 50 or more persons. Sheriff Laurie Smith is the County Sheriff. The annual budget of the SHERIFF'S OFFICE – which is separate from the CORRECTION DEPARTMENT budget – is over $150,000,000. The SHERIFF'S OFFICE oversees the jail system for Santa Clara County and is responsible for day-to-day operation of the County Jails, including promulgating policies and procedures for the operation of the County Jails and the safety and security of approximately 4,000 inmates who are held in the County Jails. Upon information and belief, the SHERIFF'S OFFICE receives state and federal funds for the operation of the County Jails and has received such funds at all times relevant to this complaint.

45.    Defendant CORRECTION DEPARTMENT is a public entity, duly organized and existing under the laws of the State of California and employs more than fifty persons. The CORRECTION DEPARTMENT has an annual budget of over $90,000,000. The Chief of Correction for the CORRECTION DEPARTMENT is Carl Neusel. The Chief of Correction also acts as undersheriff in the SHERIFF'S OFFICE and supervises the Assistant Sheriff of Custody and Services who, in turn, supervises custody managers at each of the facilities as well as custody administrative and support services. The CORRECTION DEPARTMENT is

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  responsible for the care and custody of incarcerated pretrial and sentenced offenders in the

2  County Jails and a day reporting center, providing approximately 4,000 approved inmate housing

3  beds.  The CORRECTION DEPARTMENT also manages detainees in a court holding facility in

4  conjunction with the SHERIFF'S OFFICE.  Upon information and belief, the CORRECTION

5  DEPARTMENT receives state and federal funds for the operation of the County Jails and has

6  received such funds at all times relevant to this complaint.

7      46.    Plaintiffs are ignorant of the true names and capacities of Defendants sued in this

8  complaint as DOES 1 through 20, inclusive, and therefore sue these Defendants by such

9  fictitious names.  Plaintiffs will amend this complaint to allege their true names and capacities

10  when ascertained.  Plaintiffs are informed and believe, and thereon allege that each of the

11  fictitiously named Defendants is responsible in some manner for the occurrences alleged in this

12  complaint.

13      47.    At all times mentioned in this complaint, each Defendant was the agent of the

14  others and was acting within the course and scope of this agency, and all acts alleged to have

15  been committed by any one of them was committed on behalf of every other Defendant.

16                          **FACTUAL ALLEGATIONS**

17    **A.**    **Background**

18      48.    The Santa Clara County jail system is the fifth largest jail system in California,

19  and among the twenty largest systems in the United States.  The County jail system is among the

20  100 systems nationwide with an inmate population of more than 1,000.  The average daily

21  population for the County Jails in 2015 was approximately 3,638 inmates.

22      49.    The Custody Division of the SHERIFF'S OFFICE in conjunction with the

23  CORRECTIONS DEPARTMENT oversees the County Jails.  The County Jails include the Main

24  Jail Complex, in downtown San Jose, which houses both men and women; and the Elmwood

25  Correctional Complex, located in Milpitas, which includes the Elmwood Men's Facility and the

26  Elmwood Women's Facility.

27      50.    The County Jails' facilities have undergone construction and/or alterations since

28  January 26, 1992 and since July 26, 1992.  In particular, several units at the Elmwood

**CIVIL CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   Correctional Complex were constructed in the 1990's including building M-8, which was

2   constructed in 1996.  Additionally, Barrack 3, which is part of the minimum security housing at

3   Elmwood, was remodeled in 2008.

4   ***Main Jail***

5          51.     The Main Jail Complex houses medium security, medium high security, and high

6   security inmates and is located at 150 West Hedding Street in downtown San Jose.  All arrestees,

7   both male and female, are booked into custody at the Main Jail.  The annual budget for the Main

8   Jail is approximately $37 million.  Each year, the Main Jail receives and books approximately

9   65,000 persons.  The average length of stay is approximately 110 days.  The Main Jail Complex

10  is divided into Main Jail North and Main Jail South.  Individuals at the Main Jail are housed in

11  either dorm-style housing units, where many beds are placed in an open area shared by inmates,

12  or in celled housing, where the unit is divided into cells and inmates are housed individually or

13  with a small number of cellmates.

14         52.     Main Jail North, which includes general population, Main Jail Special Housing,

15  and Main Jail Infirmary, is designed to house up to 919 inmates and was opened in 1987.

16         53.     Main Jail North uses the direct supervision inmate management model where

17  correctional deputies oversee inmates from within locked housing units.  Inmate areas include

18  the basement level, which contains intake, booking, and court staging functions; the second

19  floor, which includes the health center, special housing, and infirmary; the fourth floor, which

20  includes maximum and high-maximum housing; general inmate housing on floors five through

21  seven; and mental health services on the eighth floor.  Housing units contain up to 48 cells

22  holding one or two inmates each and have a central common area with tables, chairs, television,

23  telephones, and a shower.  Each cell contains a toilet, sink, mirror, and bed.

24         54.     Correctional deputies in "direct supervision" housing, such as those in Main Jail

25  North, are locked in an inmate housing unit and are responsible for all aspects of inmate care and

26  custody including programming (time out of cell), meals, pill calls, headcounts, and removal

27  from cells for court appearances and seeing visitors.  Staffing is such that the majority of housing

28  units have only one correctional deputy on duty which means that a single correctional deputy

1    may be responsible for the care and custody of up to 96 inmates.

2        55.    Main Jail South opened in 1956 and has a rated capacity of 674 inmates.  Main

3    Jail South uses the indirect supervision model, which was widely used in the 1950's, and houses

4    inmates in the linear style with bars and tiers.  Individuals in Main Jail South are held in a mix of

5    cells and dorms.  Inmates housed in cells have a toilet and lavatory in the cell with common

6    shower facilities nearby.  Inmates housed in dorms have a common toilet and shower area with

7    each pair of sleeping areas sharing a common dayroom.

8                        *Elmwood Correctional Complex*

9        56.    Elmwood Men's Facility, opened in the early 1960s, houses approximately 2,350

10   medium- and minimum-security male inmates.  Elmwood has buildings that vary in shape and

11   size and uses both the direct and indirect supervision models.  The campus is divided into five

12   separately fenced housing compounds with central support facilities including medical, intake,

13   laundry, kitchen, and chapel.  The men's minimum security housing is a compound of nine older

14   barracks-style buildings plus the Special Housing unit, which are all dorm-style housing.

15   Medium security inmates are held in dorm-style housing in buildings designated as M-2, M-3,

16   M-4, and M-5.  They may also be held in celled housing in M-8.  The facility employs 265

17   correctional officers and 25 administrative support personnel and hosts a large number of

18   volunteers and programs staff.  Elmwood has an operating budget of approximately $32 million

19   a year.

20       57.    The Elmwood Complex Women's Facility was established in 1964 and houses

21   approximately 650 female inmates of all security levels and uses both the direct and indirect

22   supervision models.  Maximum security female inmates are housed in dorm-style housing in

23   building W-1.  Minimum and medium security female inmates are housed in dorm-style housing

24   in building W-2.  Female inmates who need medical services are housed in building W-4.  The

25   Women's Facility is staffed by 81 correctional officers, four sergeants, and seven administrative

26   support personnel, and is a base of operations for a number of volunteers and staff.  The annual

27   operating budget is about $ 7 million.

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**CIVIL CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF          15**

**B.** **Defendants Discriminate Against Inmates with Mobility Disabilities**

1.   At Main Jail Facilities, Defendants' Unnecessary Segregation of Inmates with Disabilities Combined with the Facility's Physical Inaccessibility Denies Inmates with Disabilities Access to Programs, Services and Activities.

58.   Inmates with mobility disabilities are unnecessarily segregated due to (1) Defendants' practice of prohibiting the use of wheelchairs at the Main Jail outside of the Main Jail Infirmary and Main Jail Special Housing; and (2) the physical inaccessibility of the Main Jail facilities.  Because of this segregation, inmates with mobility disabilities are denied access to Defendants' programs, services and activities.

*Defendants' Limits on Assistive Devices*

59.   Inmates with mobility disabilities who require assistive devices are regularly housed in a medical setting and in a higher level of custody due solely to their disability and need for an assistive device such as a wheelchair.

60.   The Santa Clara Valley Health and Hospital System Adult Custody Health Services Standards Manual Policy 4130-ASS14, which upon information and belief was last revised in 2009, defines "Special Housing patients" to include individuals who cannot be housed elsewhere in the jails due to "special medical equipment" including assistive devices, such as wheelchairs, walker, crutches, canes, prostheses, slings, cases, splints, immobilizers, braces, supports, or other orthotics, or CPAP machines.  Upon information and belief, in practice inmates who rely on certain assistive devices, such walkers, canes, crutches and prostheses, are now being allowed to  retain these devices when housed outside of the Special Housing units. However, inmates who rely on wheelchairs continue to be restricted to the Special Housing units.

61.   Rather, at the Main Jail, inmates who use wheelchairs for mobility are typically housed in either the Main Jail Infirmary or Main Jail Special Housing, both of which are segregated units for inmates with disabilities.  Inmates in the Main Jail Infirmary and Main Jail Special Housing units are extremely isolated and often locked in their cells for 23 or more hours per day and sometimes not allowed out at all.

62.   Medium security inmates who use wheelchairs and who would otherwise be

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    eligible for housing at Elmwood are instead housed at the Main Jail due solely to their

2    disabilities.  As such they are denied access to the additional programs, services, and activities

3    offered at Elmwood, which are not available at Main Jail.

4        63.    These special housing units are not the most integrated settings appropriate to the

5    needs of inmates with mobility disabilities.  Defendants' policy of placing inmates who use

6    wheelchairs in these units has resulted in Plaintiffs and many other inmates with mobility

7    disabilities being unnecessarily segregated into highly restrictive special housing units in the

8    Main Jail and places many more such inmates at serious risk of unnecessary segregation.

9                    *Physical Inaccessibility of Defendants' Main Jail Facilities*

10        64.    The County Jails' facilities were assessed in 2015 by experts at Sabot Consulting

11   to identify barriers at the Jails related to mobility disabilities ("Report").

12        65.    Main Jail North is not physically accessible to inmates with mobility disabilities.

13   According to the Report, typical physical barriers observed in Main Jail North include: (1) doors,

14   including cell doors and doors to visiting areas, that are too narrow for wheelchairs; (2)

15   inaccessible toilets and lavatories due to a lack of grab bars, improper positioning of toilets in a

16   manner that fails to provide adequate clearance for a person with a mobility disability, and grab

17   bars and lavatories which are not provided at the correct height; (3) ramps with excessive slopes;

18   (4) showers that are inaccessible due to curbs or lips, lack of grab bars, lack of shower seats, and

19   lack of spray hose; (5) tables in day rooms and in the chapel that are inaccessible due to a lack of

20   knee space; (6) inaccessible visiting areas that are not usable by wheelchair users due to the

21   presence of a fixed stool; (7) call buttons and telephones that are placed too high for a wheelchair

22   user to reach; (8) lack of clearance in the law library; (9) lack of accessible routes; and (10) lips

23   at thresholds that present a barrier to wheelchair users and a tripping hazard to persons using

24   canes, walkers, or other mobility assistive devices.

25        66.    Main Jail South is also not physically accessible.  According to the Report, typical

26   physical barriers observed in Main Jail South include: (1) cell doors that are too narrow for

27   wheelchairs; (2) inaccessible toilets and lavatories due to a lack of grab bars and improper

28   positioning of toilets in a manner that fails to provide adequate clearance for a person with a

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**CIVIL CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

1   mobility disability; (3) ramps with excessive slopes; (4) showers that are inaccessible due to

2   curbs or lips, lack of grab bars, lack of shower seats, and lack of spray hose; (5) tables in day

3   rooms and in the chapel that are inaccessible due to a lack of knee space; and (6) inaccessible

4   visiting areas that are not usable by wheelchair users due to the presence of a fixed stool.

5          67.     Inmates who are medium security and higher and who require wheelchairs are

6   housed in either the Main Jail Infirmary or Main Jail Special Housing.  These are the only

7   housing units in the Main Jail facilities that contain cells and showers with some accessible

8   features, such as grab bars.  However, these units still contain physical barriers for inmates with

9   mobility disabilities and are not fully accessible.  For example, both Plaintiff BENJAMIN and

10  Plaintiff FLORES are housed Main Jail Special Housing in cells where the toilet is missing a

11  side grab bar to allow them to safely lift themselves on and off the toilet.  Instead, the only grab

12  bar is located directly behind the toilet, which is of no practical use.  As a result, Plaintiff

13  BENJAMIN and FLORES, who both use wheelchairs, are at risk of falling and injuring

14  themselves every time they use the toilet.

15         68.     Individuals at the Main Jail who use assistive devices besides a wheelchair, such

16  as a cane, may be housed outside of the Main Jail Infirmary or Main Jail Special Housing.

17  However, these units are not accessible to inmates with disabilities and lack grab bars in the

18  showers and toilets to allow inmates with mobility disabilities to bathe and go to the bathroom

19  safely.  For example, Plaintiff PHILLIPS uses a cane due to his mobility disability and is

20  currently housed in Unit 5A in a cell without grab bars and without an accessible shower.

21  Plaintiff PHILLIPS was previously held in Unit 4C in a cell that also lacked grab bars and where

22  he did not have access to an accessible shower.  Another inmate who uses a cane due to a

23  mobility disability has been held in Main Jail South on the seventh floor and in Units 4B and 4C

24  at the Main Jail; in all of these locations, this inmate was housed in cells without an accessible

25  toilet with grab bars and without access to an accessible shower.

26         69.     Upon information and belief, Defendants did not conduct a full and

27  comprehensive Self-Evaluation of the Main Jail and/or a Transition Plan for the Main Jail in

28  compliance with Title II of the Americans with Disabilities Act, and/or Section 504 of the

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   Rehabilitation Act of 1973, and/or California Government Code § 11135.

2   ***Denial of Programs, Services and Activities Due to Segregation***

3   70.   Inmates with disabilities segregated in these restrictive units – due either to the

4   policy prohibiting wheelchairs or due to physical inaccessibility – are excluded from the range of

5   programs available to inmates housed in the general population units.  Because these inmates are

6   sometimes locked in their cell for the entire day, they are denied access to even basic services

7   and activities, including showers, phone calls, and recreation.  At the Main Jail, few programs

8   are made available to inmates with mobility disabilities who are housed in the segregated, highly

9   restrictive units due to their need for wheelchairs.

10   71.   In particular, inmates with mobility disabilities housed in the Main Jail Infirmary

11   and Main Jail Special Housing Unit are not provided with equal, and in some cases any, access

12   to: (1) the recreational library or law library; (2) religious programming; (3) commissary; (4)

13   visiting, including attorney visiting; (5) recreational activities, including yard, dayroom,

14   telephones, and recreational reading; and (6) inmate programs and work assignments.

15   72.   The only formal programs offered to individuals with disabilities housed in the

16   Main Jail Special Housing or the Main Jail Infirmary are limited to self-study workbooks that do

17   not involve leaving one's cell.

18   73.   For example, Plaintiff BENJAMIN is housed in Main Jail Special Housing and is

19   currently denied access to the full spectrum of rehabilitative and educational programs offered at

20   the Jail that would allow him to earn certificates of completion.  Plaintiff BENJAMIN has also

21   not been able to participate in treatment programs offered in other parts of the Jail because of his

22   wheelchair and CPAP machine.  Plaintiff WILLIAMS was also denied access to educational and

23   vocational programs when he was housed in the Main Jail Infirmary.  When he is housed in Main

24   Jail Special Housing and in the Main Jail Infirmary, Plaintiff FLORES is similarly denied access

25   to programs he would have otherwise been able to access when housed at Elmwood, including

26   bible study programs.  Plaintiff COLE was also not allowed to leave his cell in the Main Jail

27   Infirmary and Main Jail Special Housing to participate in any classes or rehabilitative

28   programming.  Other inmates have been denied access to such classes, programs, and services,

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  including the opportunity to work on their GED, while housed in these segregated units.

2      74.    Inmates who are housed in the Main Jail Infirmary and in Main Jail Special

3  Housing due to their need for wheelchairs are also denied access to the less formal services

4  offered in the Jails because they are housed in units where they are let out of their cells for an

5  hour or less per day and sometimes not at all.

6      75.    For example, because of their disabilities and the physical inaccessibility of the

7  showers, inmates with mobility disabilities often need additional time to shower.  Because

8  inmates who use wheelchairs are housed in restrictive, segregated units at the Jails and therefore

9  generally have an hour or less out of their cells, these individuals are frequently forced to choose

10  between calling loved ones or their attorneys, socializing with other inmates and taking care of

11  basic needs such as showering.  On days when they are not let out at all from their cells, they are

12  denied access to all of these activities.

13      76.    Plaintiffs COLE and BENJAMIN have been locked in their cells in Main Jail

14  Special Housing and in the Main Jail Infirmary for many consecutive days with no way to get to

15  a phone to even call an attorney.  This breach of the Plaintiffs' rights is in direct violation of the

16  Jail's own rules in the Inmate Orientation and Rulebook, which specifies that lockdowns shall

17  not restrict inmates' access to legal help.

18      77.    Because Plaintiff COLE uses a wheelchair, he has been held in Main Jail Special

19  Housing in a cell by himself for at least 23 hours per day, and some days he was not let out of his

20  cell at all.  In the Main Jail Infirmary, Plaintiff COLE has been held in a small cell with three

21  other inmates for over 23.5 hours most days, and some days he was never let out of his cell at all.

22  In both Main Jail Special Housing and Main Jail Infirmary, Jail staff have explicitly refused to

23  allow Plaintiff COLE out of his cell during daytime hours on weekdays to call his attorneys.

24  Instead, Jail staff would only let him out during evening hours (around 9 p.m.) on weekdays, if at

25  all.

26      78.    Plaintiff BENJAMIN has been held in Main Jail Special Housing in a cell by

27  himself for at least 23 hours per day.  While he occasionally is let out for 1.5 hours, he is far

28  more frequently not let out of his cell at all.  In the Main Jail Infirmary, Plaintiff BENJAMIN has

**CIVIL CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF       20**

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   been held for over 23.5 hours on certain days, and some days he was never let out of his cell at

2   all.  Recently, Plaintiff BENJAMIN was not allowed out of his cell at all for fourteen days in a

3   row.  During this time he was in his cell 24 hours a day and was not provided with any

4   explanation for why he was not being allowed out.

5         79.     Plaintiff WILLIAMS has similarly been held in the Main Jail Infirmary for over

6   two months in a cell by himself for approximately 23 hours per day, and some days was not let

7   out at all.  Plaintiff FLORES is currently housed in Main Jail Special Housing and typically kept

8   in his cell for 23 hours a day and sometimes not let out at all.

9         80.     Upon information and belief, other inmates with mobility disabilities are likewise

10   denied the opportunity to participate in the Jails' programs, services, and activities because of

11   these inmates' placement in the special housing units because of their mobility disabilities.

12         2.     <u>Due to the Physical Inaccessibility of the Elmwood Facilities, Inmates
              with Disabilities Are Denied Access to Defendants' Programs, Services</u>
13         <u>and Activities.</u>

14         81.     As with the Main Jail facilities, the Elmwood Correctional Complex is not

15   physically accessible to inmates with mobility disabilities.  According to the Report, typical

16   barriers found at Elmwood include: (1) doors, including cell doors and doors to visiting areas,

17   that are too narrow for wheelchairs; (2) inaccessible toilets and lavatories due to a lack of grab

18   bars, improper positioning of toilets in a manner that fails to provide adequate clearance for a

19   person with a mobility disability, and grab bars and lavatories which are not provided at the

20   correct height; (3) ramps with excessive slopes; (4) showers that are inaccessible due to curbs or

21   lips, lack of grab bars, lack of shower seats, and lack of a spray hose; (5) tables in day rooms,

22   inmate work and program areas, and the chapel that are inaccessible due to a lack of knee space;

23   (6) lack of accessible routes that present a barrier to wheelchair users and a tripping hazard to

24   persons using canes, walkers, or other mobility assistive devices; (7) a lack of high/low drinking

25   fountains to accommodate wheelchair users and individuals who have difficulty bending or

26   stooping and which are not located outside the path of travel; and (8) inaccessible classroom

27   buildings due to presence of stairs, curbs, excessive slopes, and narrow doorways.

28         82.     In particular, all of the visiting areas at Elmwood are inaccessible due to the lack

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    of clear floor space due to fixed stools, all of the group holding cells in the medical unit lack

2    compliant toilet grab bars and knee space, all of the holding cell doors are too narrow and none

3    of the minimum housing barracks provide fully accessible toilet and shower facilities.

4         83.    Individuals who use wheelchairs and are medium security, and who would

5    otherwise be eligible to be housed at Elmwood, are instead held above their custody level at

6    Main Jail in the highly restrictive special housing units discussed above due solely to their

7    disability. As such these medium-security inmates with disabilities are denied access to the many

8    additional programs, services, and activities offered at Elmwood.

9         84.    Minimum security inmates who use wheelchairs, however, are housed at

10    Elmwood, but are restricted to Elmwood Special Housing.  Elmwood Special Housing is not

11    fully accessible and contains physical barriers for inmates with mobility disabilities.  Elmwood

12    Special Housing consists of 16 beds and shared restroom facilities.  The bunks are arranged so

13    close together that there is insufficient space for a wheelchair to turn around in the aisle space

14    between bunks, let alone for two wheelchair users to pass each other.  This makes it consistently

15    difficult for individuals who use wheelchairs to access their bunks, and impossible to access their

16    bunks if two wheelchair users are assigned adjacent bunks.  Additionally, the sink in the unit's

17    restroom is too high for individuals who use wheelchairs to comfortably use, and the shower

18    lacks grab bars.

19         85.    For example, Plaintiff COLE experienced barriers when housed in Elmwood

20    Special Housing because the bunks are arranged too close together, thus limiting or even

21    precluding physical access to the bunks for people who use wheelchairs, walkers, or other

22    mobility aids.  Plaintiff WILLIAMS has also experienced barriers related to the lack of sufficient

23    clearance for wheelchair users.

24         86.    Individuals at Elmwood who do not need wheelchairs are typically held in the

25    minimum security camp barracks and medium security units, but these units and barracks are not

26    fully accessible to inmates with mobility disabilities, including lacking grab bars in showers and

27    toilets as described above.   Nonetheless, inmates who have mobility disabilities requiring

28    accessible features have been housed in these inaccessible units and barracks.

**CIVIL CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**          22

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

87.     Elmwood's recreational facilities are also inaccessible for inmates with mobility disabilities.  For example, Plaintiff COLE could not wheel himself to Elmwood's large yard because the path of travel was too uneven and the pavement was broken in places, requiring him to ask a fellow inmate to push him.  The yard itself was not accessible to him because it is one big grassy area with bumpy and uneven dirt paths.  Additionally, a curb leading to the yard and the absence of ramps prevented safe access to the yard.  The inmate helping him tried to back Plaintiff COLE's wheelchair over the curb into the grass and dirt, causing Plaintiff COLE to nearly fall out of his wheelchair.  Ultimately, Plaintiff COLE had to stay in his wheelchair on the grass.  Plaintiff WILLIAMS has experienced similar barriers.  Plaintiff WILLIAMS has also experienced barriers accessing the special housing unit yard due to lack of an accessible path of travel and lack of accessible exercise equipment.

88.     Multiple programs are offered at Elmwood, including all prison industries programs, job readiness and exit planning, the literacy program, the domestic violence workshop, codependency education, computer skills, art, and classes on parenting skills.  Inmates must travel at least 100 yards to get to the classroom areas in Elmwood.  However, inmates with mobility disabilities cannot safely and independently get to the classrooms where programs are offered because of physical barriers.  Such barriers include broken pavement, steep curb cuts, heavy doors, and long routes outdoors to the classrooms where these programs are held.  These same physical barriers also impede the ability of inmates with mobility disabilities to access necessary medical treatment.  Traveling to the classroom areas or medical facilities is even more inaccessible in the rain, as pushing a wheelchair with wet wheels on an already barrier-ridden path can become dangerous and impossible.  Also, when Elmwood does not clean up debris – such as tree limbs – after a storm, it makes it even more difficult for inmates with mobility disabilities to travel.

89.     Due to the fact that these programs are not offered in a location or manner that is accessible to inmates who need assistive devices, inmates with disabilities are unable to work to reduce their sentences in the same manner as their nondisabled peers and may also be unable to comply with court-ordered requirements to participate in certain programs.  For example,

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  Plaintiffs COLE and WILLIAMS have both been housed in Elmwood Special Housing due to

2  their need for a wheelchair.  Both Plaintiffs COLE and WILLIAMS have been forced to travel

3  along an inaccessible path in order to get to pill call to get necessary medications, or to get to

4  classrooms to participate in other programs.  As a result, Plaintiff COLE had to use all his energy

5  to wheel himself to pill call and did not have energy remaining to wheel himself to classes.  After

6  repeated requests to access programs, Jail staff recently arranged for an inmate to push Plaintiff

7  COLE's wheelchair to classes for the Regimented Correctional Program ("RCP Program") and

8  to pill call.  Plaintiff WILLIAMS has recently also been provided with a wheelchair pusher to get

9  him to medical appointments, pill call, and classes.  This proposed solution of a wheelchair

10  pusher does not allow for Plaintiffs COLE and WILLIAMS to independently access classrooms

11  and services; instead, they must rely on other inmates, thereby increasing their risk of being

12  exploited by those inmates.  Wheelchair pushers are not always available to assist inmates who

13  use wheelchairs and the wheelchair pusher program does nothing to obviate the obstacles

14  presented to a person who uses a cane, walker, or other assistive device for mobility.

15  Additionally, the wheelchair pusher program does not prevent damage to an inmate's wheelchair

16  due to the cracked and uneven pavement.  For example, the front wheel of Plaintiff WILLIAMS'

17  wheelchair was damaged while he was being pushed to a medical appointment when he was

18  pushed into an area with cracked pavement and his wheel was bent from colliding with the

19  uneven section.

20        90.    The Elmwood Women's Facility is also not accessible.  According to the Report,

21  typical barriers found at the Elmwood Women's Facility include: (1) showers that are

22  inaccessible due to curbs, lack of grab bars, lack of shower seats, and lack of spray hose; (2)

23  inaccessible toilets and lavatories due to lack of grab bars, the improper positioning of toilets in a

24  manner that fails to provide adequate clearance for a person with a mobility disability,  and

25  toilets and lavatories which are not provided at the correct height; (3) inaccessible faucets at

26  lavatories; and (4) lack of knee space at tables in the day room to allow for a wheelchair user.

27        91.    In the Elmwood Women's Facility, female inmates with mobility disabilities are

28  typically housed in building W-4, which is the medical unit.  This unit is not accessible.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

According to the Report, typical barriers found in building W-4 include: (1) inaccessible toilets due to lack of grab bars and improper positioning of grab bars; (2) lack of knee space at tables in dayrooms, (3) stairs that lack a cane-detectable railing; (4) phones that are placed too high for wheelchair users; and (5) excessive slopes without handrails in various paths of travel.  In particular, there are no accessible showers in building W-4.  All showers in W-4 have a one inch high curb and/or lack folding seat, spray house and grab bars.  Further, all isolation cells and court holding cells in W-4 lack grab bars at the toilet.

92.     Upon information and belief, Defendants did not conduct a full and comprehensive Self-Evaluation of the Elmwood Correctional Complex and/or a Transition Plan for the Elmwood Correctional Complex  in compliance with Title II of the Americans with Disabilities Act, and/or Section 504 of the Rehabilitation Act of 1973, and/or California Government Code § 11135.

3.     Defendants Fail to Make Reasonable Modifications to Their Policies, Practices and Procedures to Avoid Discrimination Against Inmates with Disabilities.

93.     Compounding the denial of access to programs, services and activities offered at the County Jails, Defendants fail to modify to their policies, practices and procedures in ways that could provide such access.

a.     *Defendants Lack Adequate Policies and Practices to Identify and Track Inmates with Disabilities and to Ensure They Are Provided with Reasonable Modifications.*

94.     Defendants have no comprehensive system for identifying and tracking individuals with mobility disabilities and the accommodations and modifications they require. As such, Defendants fail to provide the assistive devices needed and/or take away such assistive devices without warning, and fail to provide appropriate housing for inmates with mobility disabilities.

95.     During the intake process, staff are supposed to identify inmates with disabilities using the Medical Authorization Form.  However, the form does not allow staff to identify all potential needed accommodations.  Additionally, Jail staff have not been properly trained on how to identify people with disabilities, or how to use these forms, and therefore frequently fail

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

to identify inmates with disabilities and/or the reasonable modifications they need to access Jail programs and services.  The current screening process is also not confidential and deters inmates with mobility disabilities from self-reporting disabilities.  For instance, Jail staff have, upon information and belief, persistently failed to identify several older individuals who have great difficulty walking as needing a cane or other mobility aid, despite the fact at least one of them had been allowed to use a cane for six years while in state prison.  Finally, the screening area itself is physically inaccessible.

96.     There is also no centralized electronic repository for approved Medical Authorization Forms, which document disability information.  Instead, only the inmate and the housing unit deputy/officer have copies of these forms. To the extent that Defendants maintain information about an inmate's disabilities in any form, custody, medical, and clerical staff are not provided with access to the information in a manner that would timely and effectively inform them of an inmate's disabilities and required reasonable modifications.  Defendants also do not maintain adequate information about inmates' disabilities and related disability-related accommodations in the inmates' custody and/or medical files.  Without a central depository, approved Medical Authorization Forms may end up being lost, confiscated, or destroyed.  For example, deputies in his housing unit recently confiscated from his cell all of Plaintiff PHILLIPS' documents, and now has no record of his medical and disability-related needs.

97.     Additionally, the classification unit has the improper authority to override a physician's authorization to provide a mobility-disabled inmate with the appropriate reasonable accommodation, including assignment to accessible housing and allowance of an assistive device.

**b.     *Defendants' Policies Relating to Assistive Devices Must Be Modified In Order to Avoid Discriminating Against Persons with Mobility Disabilities.***

98.     Defendants have failed to modify their practice of prohibiting the use of wheelchairs at the Main Jail outside of the highly restrictive Main Jail Infirmary and Main Jail Special Housing units.  Defendants have also failed to modify their policy requiring medium security inmates who use wheelchairs to be housed at the Main Jail even where such inmates

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  would otherwise be eligible for housing at Elmwood.

2      99.      Additionally, Defendants have failed to consistently provide inmates with needed

3  assistive devices, even after Defendants have identified the person as having a disability and as

4  needing a particular assistive device.

5      100.      Multiple inmates with mobility disabilities housed at the Main Jail have been

6  denied access to needed assistive devices, including canes and walkers.  As detailed in the

7  Report, an inmate with partially amputated feet has had his cane taken from him at booking and

8  was not promptly issued a replacement.  Another inmate at Main Jail South with Myasthenia

9  Gravis, a muscular disease, had his cane taken away from him at booking and was not promptly

10  issued a replacement.  Another inmate was denied access to a cane for nearly a year and a half

11  while housed in Main Jail South and on the fourth and seventh floors of the Main Jail despite the

12  fact that he lacks muscle in his legs due to injuries that left him partially paralyzed.  Plaintiff

13  PHILLIPS was denied access to his cane for nearly three months despite repeated requests while

14  housed in the Main Jail in Unit 5C.  Plaintiff FLORES was also denied access to his cane when

15  he was initially brought to the County Jails and was not allowed to have a cane or other assistive

16  device for the approximately five months he was housed in Unit 5B at the Main Jail.

17      101.      Another inmate, who has a prosthetic leg, was not able to get stump socks (fabric

18  socks worn over the stump of an amputated limb) for his prosthetic leg for his first four to five

19  months in Main Jail Special Housing despite the fact that he asked for them.  Stump socks are

20  critical to ensuring that the prosthetic limb does not damage the skin of the edge of the body

21  which attaches to the prosthetic limb.  If a person with a prosthetic leg does not have stump

22  socks, the prosthetic limb can wear on the remaining skin, causing ulcers and infections that can

23  become serious enough so as to require amputation.  For his first four months in Main Jail

24  Special Housing, this inmate had to ask family members to mail him stump socks because Jail

25  staff would not provide them to him.

26      102.      Upon information and belief, Defendants did not initially identify an individual

27  with an amputated foot as needing reasonable modifications to policies and procedures necessary

28  to ensure disability-related accommodations.  Jail staff took away his prosthetic leg and the

1   special shoe for his prosthetic when he entered the Jail, making it extremely difficult for this

2   individual to walk.  While he eventually got his prosthesis back, his leg had become infected and

3   too inflamed for him to use it.  As a result, he was not able to ambulate to the library to attend

4   classes.

5         103.    Where the Jails do provide an inmate with an assistive device, Defendants often

6   unjustifiably and abruptly take these devices away from inmates.  For example, staff in the Main

7   Jail Infirmary suddenly took away Plaintiff COLE's wheelchair, thus leaving him no means of

8   getting around.  Jail staff returned it to him only when a family member called the Jail to

9   advocate on his behalf.

10        104.    Upon entering the Main Jail, Defendants identified Plaintiff BENJAMIN as an

11  inmate with a disability and as needing a wheelchair.  However, he was initially housed in Main

12  Jail South and was not provided with a wheelchair or other assistive device when he was there

13  except for when he had to go to court or other appointments outside of Main Jail South.  Plaintiff

14  BENJAMIN was unable to meet with his attorney because he could not ambulate to the visiting

15  room without a wheelchair.  Plaintiff BENJAMIN was also unable to shower, as he could not

16  ambulate to the shower without a wheelchair.  Plaintiff BENJAMIN was eventually moved to the

17  Main Jail Infirmary and provided with a wheelchair but staff then confiscated it and left him

18  confined to his hospital bed.  Further, staff confiscated Plaintiff BENJAMIN's wheelchair when

19  he was housed in the Main Jail Special Housing unit, and he injured himself trying to maneuver

20  without one.  Lastly, staff confiscated Plaintiff BENJAMIN's wheelchair when he was housed in

21  the mental health unit, Unit 8A, on two separate occasions, forcing him to crawl on the ground to

22  transport himself.

23        105.    Staff in Main Jail Special Housing suddenly took away another prisoner's cane

24  for periods of up to several weeks, despite knowing that he could barely move without it and

25  despite the fact that Defendants had previously approved his use of the cane.  Jail staff also took

26  away a different inmate's wheelchair.  Jail staff then rehoused both of the men in the Main Jail,

27  where both men were effectively bedridden without their assistive devices and consequently

28  were denied access to showers, phones, programs and recreation time.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

106.    Similarly, Defendants have on multiple occasions taken away another inmate's brace and sling and moved him out of his lower bunk into an upper bunk, despite being aware that he needed these reasonable modifications to policies and procedures necessary to ensure disability-related accommodations.  Staff in Main Jail Special Housing suddenly, and without explanation, ripped off that inmate' velcro arm brace and sent him to the Main Jail general population, where he suffered increased pain and decreased strength in his broken arm with no brace or support for it.  That inmate was also given a top tier bunk, meaning that he frequently had to climb a set of stairs to reach his bunk – a dangerous situation given his epilepsy and inability to hold on to the rail due to his injured arm.  Both while in the Main Jail and at Elmwood, he was denied a bottom bunk.  In both places, due to his disabilities, he fell from his top bunk onto the hard floor below.

107.    Another individual, who was approved for corrective shoes due to the fact that his legs are not the same length, was only briefly allowed to use the shoes before Defendants took them away without explanation.  Without his shoes, his condition rapidly deteriorated to the point where he required a wheelchair.  However, even after the Jail issued this individual a wheelchair, Jail staff proceeded to take it away on at least three occasions with no explanation, even though his inability to walk had not changed.  At one point, Main Jail staff withheld this individual's wheelchair for three months.  Without his wheelchair, the individual was effectively bedridden and unable to shower, make phone calls, go outside, or participate in any classes or programs.

108.    Defendants have also taken away the specialized shoe of an individual with a prosthetic leg even though he required this shoe to keep the foot of his prosthesis in working order.  Defendants withheld the shoe for two weeks, and during that time, the individual struggled to walk, and the foot of his prosthesis developed deep scrapes and tears.  Eventually the Jail staff returned his shoe, but by then, his prosthetic foot was destroyed to the point that he had to replace his expensive prosthesis.

109.    Defendants fail to consider inmates' specific needs and abilities in assigning assistive devices, to the detriment of those inmates' overall health and safety.  For example,

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   when Plaintiff COLE entered Elmwood, he was given a boot for Charcot foot, even though he

2   asked for and needed a wheelchair.  As a result, he had to walk on his affected foot, which

3   rapidly deteriorated until Plaintiff COLE needed a wheelchair and additional medical attention

4   soon thereafter.  When another inmate with a mobility disability first arrived at Main Jail Special

5   Housing, he was allowed to use his wheelchair, until Jail staff took it away from him after

6   approximately five months and gave him a cane to use instead.  Jail staff told him his ankle

7   would gain strength if he walked on it, but walking with a cane exacerbated this individual's

8   ankle injury and caused it to swell.  Although he could walk short distances with the cane, he

9   needed a wheelchair to travel long distances, which the Jail refused to provide.  Another inmate

10  was provided with a cane after nearly a year and a half at the Jail but was then told he could only

11  use it to travel long distances and was not allowed to use it on his unit.  Without his cane he is at

12  risk of losing balance due to a lack of muscle in his legs as a result of injuries that partially

13  paralyzed him.

14       110.    Defendants also fail to provide properly operational assistive devices to inmates.

15  For example, at Elmwood and the Main Jail, Plaintiff COLE was forced for approximately one

16  year to use a wheelchair with nonfunctioning wheel locks, a broken footrest, and a front wheel

17  that was so wobbly even a Jail deputy could not properly steer him in the wheelchair.  His

18  wheelchair often got caught in cracks and thresholds, making it even more difficult for him to

19  move around.  Plaintiff COLE was eventually given a functioning wheelchair, though it was too

20  small for his size and weight and was, therefore, physically uncomfortable.

21       111.    Additionally, for two weeks while housed in Main Jail South, Plaintiff

22  BENJAMIN was being denied access to a wheelchair or any other assistive device on his

23  housing unit.  Instead he was provided with a hospital wheelchair intended to be pushed by a

24  caregiver or a person that aids the user in order to go to and from court and other medical

25  appointments.  This type of wheelchair has only four tiny wheels, which made it nearly

26  impossible for Plaintiff BENJAMIN to propel himself on his own.  In order to move without

27  assistance, therefore, Plaintiff BENJAMIN had to use his feet to scuttle forward and back on his

28

**CIVIL CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**      30

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   own, which was very painful. In comparison, a wheelchair with two large back wheels is

2   designed to allow the user to propel himself with his arms without assistance.

3       112.    Another individual at the Main Jail who relied on the use of a wheelchair was

4   given one that lacked a footrest, which he needed, and that was generally in very poor condition.

5   The lack of a footrest made it difficult for him to use the wheelchair to move about and keep his

6   feet safe.

7       113.    The Jail has also failed to consistently provide accessible transportation to

8   inmates with mobility disabilities. Plaintiff COLE requires a wheelchair-accessible van with a

9   ramp or lift and proper securement for his wheelchair, but the Jail failed to provide him with one

10  to transport him to a medical appointment. As a result, Plaintiff COLE had to miss his medical

11  appointment or else face potential physical injury. Plaintiff WILLIAMS was physically injured

12  while being transported to court due to the failure of Jail staff to properly secure his wheelchair.

13  Because he was improperly secured inside the van, his wheelchair flipped over during transport

14  with him in it and he missed his court hearing because he had to go to the hospital instead.

15      114.    Because of Defendants' failure to modify its policies and procedures to ensure

16  equal access, inmates with disabilities are susceptible to exploitation by other inmates. In

17  exchange for help getting to the toilet, shower, or meals, or communicating with prison staff,

18  inmates with disabilities have been, for instance, required to pay other inmates.

19      115.    To the extent the Jail has disability-related policies and procedures in place, the

20  County fails to adequately train Jail staff regarding such policies and procedures. The lack of

21  proper training is evident in the failure of staff to provide legally required accommodations. For

22  example, staff at the Main Jail do not consistently allow assistive devices outside of the Main Jail

23  Infirmary and Main Jail Special Housing. One inmate with a mobility disability housed in the

24  Main Jail on the fourth floor was not allowed to have his cane for over a year. When he was

25  finally provided with his cane, Jail staff would not permit him to use it in his housing unit it. He

26  is still only allowed to use it when he leaves his housing unit, and he is required to check it in

27  and out with custody officers when he returns to and leaves his unit to go elsewhere in the

28  facility. Upon information and belief, an inmate who uses a wheelchair was recently moved to

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   the fourth floor and instead of allowing him to keep his wheelchair; Jail staff put him on top of a

2   mattress and dragged him into his cell where he was left without access to his wheelchair or any

3   other assistive device.  Jail staff are also not adequately trained regarding how to properly secure

4   a wheelchair user for transportation, as discussed above.

5

6               **c.**     **Defendants Lack an Effective Grievance Procedure for Inmates
                 to Request Reasonable Modification.**

7       116.    Defendants do not provide an effective or functional grievance system for inmates

8   with disabilities and do not have a disability-specific grievance process or any way for an inmate

9   to mark their grievance as disability-related.  There is no expedited process for disability-related

10   grievances that are emergent in nature and there is no process for provision of interim

11   accommodations for inmates during the time that the disability-related grievance is being

12   processed and considered.

13       117.    Upon information and belief, the only formal notice inmates receive regarding

14   any Jail grievance procedure comes from the Inmate Orientation and Rulebook ("Rulebook"),

15   which is not consistently provided to inmates when booked into the Jail.  For example, while

16   Plaintiff BENJAMIN received a copy of the Rulebook, Plaintiffs PHILLIPS and FLORES did

17   not.  Plaintiff WILLIAMS was not provided with a Rulebook when he was booked into the Main

18   Jail and only received a copy nearly a month later when he was transferred to Elmwood.  The

19   version of the Inmate Orientation and Rulebook currently provided to inmates states only that

20   grievances should be submitted by individuals, not groups, and may pertain to any condition of

21   confinement over which the Department of Correction has control.  Inmates are directed to

22   request grievance forms from the Housing Unit Officer and to deliver completed grievances to

23   any officer on their unit.  If the grievance is denied, inmates are told they may appeal the

24   decision by "writing a letter to the Facility Captain."  The Rulebook does not specify what

25   should be in this letter or provide an address for the Facility Captain, and inmates are not

26   provided with envelopes or stamps to allow them to mail their appeals.  Jail staff are not

27   adequately trained or informed about this procedure and so are unable to assist inmates with the

28   logistics of any appeals.  As a result of these deficiencies the appeals process is functionally

1    unavailable to inmates.

2    118.    The Inmate Orientation and Rulebook does not contain any information regarding

3    what process inmates with mobility disabilities should use to request disability-related

4    accommodations except for a statement that inmates with hearing impairments may request

5    accommodations such as assistive listening devices and interpreters.  No other information

6    regarding inmates' rights under the ADA is provided.  Because inmates are not made aware of

7    the process, they make requests for accommodations using whatever means are available to

8    them, including verbally, through medical request forms known as white cards, and through the

9    grievance process detailed above. Until recently, inmates were charged three dollars to obtain

10   and submit a "white card" and it is not clear if the County Jails intend to reinstitute such an

11   illegal charge.

12   119.    For example, Plaintiff PHILLIPS was not provided with any information at

13   orientation regarding how to request assistive devices.  In order to obtain his cane, Plaintiff

14   PHILLIPS filed multiple requests using medical request forms and grievances.  He also made

15   verbal requests to Jail staff and medical staff.  These requests were ineffective and he did not

16   receive his cane until after he was visited by his attorney who advocated on his behalf.

17   120.    Plaintiff FLORES was also not provided with any information regarding how to

18   request assistive devices and so attempted to request accommodations using white cards and by

19   verbally asking nurses.  Another inmate requested an ADA Accommodations Form so that he

20   could get his cane back and in response a nurse told him that the Jail did not have any such form,

21   leaving him without a means to officially make his request.  Without a consistent and effective

22   method to request reasonable accommodations or modifications, these inmates are denied timely,

23   equal, and meaningful access to Defendants' programs, services, and activities.

24   121.    In addition, Defendants routinely deny inmates with mobility disabilities access to

25   grievance forms that these inmates need to request reasonable modifications to policies and

26   procedures.  Such modifications are necessary to ensure that the inmates receive the disability-

27   related accommodations to which they are entitled.  In order to obtain grievance forms at the

28   County Jails, inmates either have to ask a custody officer in their unit for one, or hope that the

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**CIVIL CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  forms will be available in the common areas of their housing unit, which is rare.  This sporadic

2  availability means inmates cannot reliably access grievance forms, particularly during times

3  when they are not let out of their cells into the common areas.  For example, one inmate went

4  days without being let out of his cell, and when he has asked Jail staff for grievance forms, they

5  did not provide them.

6       122.  Even when inmates are able to submit grievances with regard to disability

7  discrimination, Defendants frequently do not provide any response or the response is so delayed

8  that it is not meaningful.  For instance an inmate who uses a specialized shoe that fits his

9  prosthetic leg filed a grievance after his specialized shoe was taken away.  While he waited for a

10  response to this grievance, his prosthetic leg was damaged to the point of having to be

11  completely replaced.  Plaintiff BENJAMIN submitted grievances only to have responses to those

12  grievances returned to a different inmate on his unit.

13       123.  Even when inmates are able to submit a grievance and Defendants provide a

14  response, the responses are not adequate or comprehensive, and are in some cases arbitrary and

15  counterproductive.  For example, an inmate who uses a wheelchair filed a grievance asking why

16  he was not getting physical therapy for his mobility impairment, and the Jail responded that it

17  was because the inmate was in Jail.

18       124.  Furthermore, many inmates with mobility disabilities are afraid to file grievances

19  due to concerns that County Jail staff will retaliate against them.  This is a real concern because

20  guards control access to the grievance forms and completed forms must be turned in to custody

21  staff, even if it is the same staff member about whom the inmate is filing a grievance.

22  Grievances are in no way kept confidential and may be read by any staff member on the unit.

23  Female inmates with mobility disabilities have had guards take their belongings or ransack their

24  rooms in response to receiving grievances.  Other inmates with mobility disabilities are afraid

25  they will lose the little access to programs they have if they file grievances.

26       125.  Plaintiff PHILLIPS suffered retaliation after filing a grievance related to

27  accessibility issues.  After Plaintiff PHILLIPS turned in his grievance to the deputy on his unit,

28  the deputy slammed his cell door on him while he was standing in the door way, which caused

**CIVIL CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**     **34**

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   Plaintiff PHILLIPS to fall and injure his back.  A few days later, a deputy grabbed Plaintiff

2   PHILLIPS from behind while he was cutting his own hair with hair clippers and his head was

3   down, which caused him to cut himself.  When Plaintiff PHILLIPS asked to see a doctor and to

4   report the use of force, the deputy refused to let him do so and then locked down the unit, which

5   requires all inmates to return to their cells and stops all programming.  The deputies then

6   announced to the other inmates that the lockdown was caused by Plaintiff PHILLIPS and

7   proceeded to allow Plaintiff PHILLIPS and approximately half of the other inmates out of their

8   cells.  Due to the deputies' announcement, the other inmates were angry at Plaintiff PHILLIPS

9   and he felt his safety was at serious risk.  Following the filing of his grievance, County Jail staff

10  also confiscated all of Plaintiff PHILLPS' personal property and documents from his cell,

11  including his legal documents, past grievances, and medical records including documentation of

12  his disability and disability-related needs.  The County Jail has refused to return these items to

13  him, claiming they have been lost.

14      126.   For individuals with mobility disabilities, particularly wheelchair users, the

15  grievance process is futile because many of the barriers they face are architectural in nature and

16  there are no facilities at either the Main Jail or at the Elmwood Correctional Complex that are

17  fully accessible in compliance with legal requirements.

18      127.   Additionally, the Report found that Defendants' grievance policy is not in

19  compliance with legal requirements established in *Armstrong v. Brown,* 857 F.Supp. 2d 919, 939

20  (N.D. Cal. 2012), which applies to correctional facilities, like the County Jail, that house inmates

21  who are also under the jurisdiction of the California Department of Corrections and

22  Rehabilitation.

23                      **CLASS ACTION ALLEGATIONS**

24      128.   All Plaintiffs bring this action on their own behalf and, pursuant to Rule 23(a),

25  (b)(1), and (b)(2) of the Federal Rules of Civil Procedure, on behalf of a class of all individuals

26  with mobility disabilities who are substantially limited in the major life activities of walking,

27  standing, lifting, and/or ambulating who are now, or will be in the future, incarcerated in the

28  County Jails (the "Class").

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*Numerosity:  Fed. R. Civ. P. 23(a)(1)*

129.    The proposed Class as defined is sufficiently numerous that joinder of all members of the Class is impracticable and unfeasible.  The exact number of members of the Class is unknown.  However, according to data from the United States Census conducted in 2010, more than 3.7 million Californians and more than 155,000 Santa Clara County residents identify as having a physical disability.  According to the 2010 Census, approximately 10% of Americans have some mobility impairment.  Based on available census data, approximately 10% of the inmates in the Jail, which averages 4,000 inmates per day, are qualified individuals with mobility disabilities as that term is defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(20), and California Government Code § 12926(j) and (m).

130.    Class members are easily ascertainable and identifiable using commonly used methods of assessment and/or records maintained in the ordinary course of business by Defendants.

*Commonality:  Fed. R. Civ. P. 23(a)(2)*

131.    There are questions of law and fact common to the class, including but not limited to: whether Defendants' failure to reasonably accommodate prisoners with disabilities violates the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and California Government Code § 11135.

132.    Defendants are expected to raise common defenses to these claims, including denying that their actions violate the law.

*Typicality:  Fed. R. Civ. P. 23(a)(3)*

133.    The claims of the named Plaintiffs are typical of the claims of the members of the proposed class.  Plaintiffs and all other members of the class have sustained similar injuries arising out of and caused by Defendants' common course of conduct and policies in violation of the law as alleged herein.  All of the proposed class members are at risk of being discriminated against or denied access to programs, services, and activities offered at the Jail as a result of the policies and practices of Defendants.  Therefore, all class members will suffer the same or

**CIVIL CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

1 | similar injuries for the purposes of the injunctive and declaratory relief sought.  Plaintiffs' claims

2 | are thereby representative of and co-extensive with the claims of the class.

3 | ### *Adequacy:  Fed. R. Civ. P. 23(a)(4)*

4 | 134.    Plaintiffs are members of the Class and will fairly and adequately represent and

5 | protect the interests of the putative class members because they have no conflict(s) of interest

6 | that would be antagonistic to those of the other class members.  Plaintiffs, as well as class

7 | members, seek to enjoin the unlawful acts and omissions of Defendants.

8 | 135.    The attorneys representing the Plaintiffs and the Class are competent and

9 | experienced in complex class action litigation, disability law, and prisoners' rights litigation.

10 | Counsel representing the Plaintiff class is qualified to fully prosecute this litigation and possesses

11 | adequate resources to see this matter through to resolution.  Counsel will fairly and adequately

12 | represent and protect the interests of the class.

13 | ### *Fed. R. Civ. P. 23(b)(1)(A) and (B)*

14 | 136.    Because the class consists of approximately 10% of the inmate population in the

15 | Jails, separate actions by individuals could result in inconsistent and varying decisions, which in

16 | turn would result in conflicting and incompatible standards of conduct for Defendants.

17 | ### *Fed. R. Civ. P. 23(b)(2)*

18 | 137.    This action is also maintainable as a class action pursuant to Fed. R. Civ. P.

19 | 23(b)(2) because Defendants have acted and refused to act on grounds that apply generally to the

20 | class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting

21 | the class and will apply to all members of the class.

22 | ## FIRST CAUSE OF ACTION

23 | ### *Violation of Americans with Disabilities Act*

24 | ### *42 U.S.C. § 12101, et seq.*

25 | 138.    Plaintiffs incorporate by reference each and every allegation contained in the

26 | foregoing paragraphs as if specifically alleged herein.

27 | 139.    Title II of the ADA states, in pertinent part:

28 | [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

benefits of the services, programs, or activities of a public entity, or subjected to discrimination by any such entity. 42 U.S.C. § 12132.

140.    The term "disability" includes physical and mental impairments that substantially limit one or more major life activities.  42 U.S.C. § 12102(2).  The named Plaintiffs and the Plaintiff Class represent people who have mobility disabilities that substantially limit the major life activities of walking, standing, lifting, and/or ambulating.  Additionally, Plaintiffs and the Plaintiff Class, as inmates in the County Jails, are all qualified – with or without reasonable modifications – to participate in the programs, services, and activities that the County Jails offered.  Thus, members of the Plaintiff Class are, and Plaintiffs represent, qualified individuals with disabilities within the meaning of 42 U.S.C. § 12102, 42 U.S.C. § 12131, and 28 C.F.R. § 35.104.

141.    A "public entity" includes state and local governments, their agencies, and their instrumentalities.  42 U.S.C. § 12131(1).  Defendants qualify as public entities within the meaning of 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104 and provide "program(s), service(s), or activit(ies)" to individuals housed in the County Jails including, but not limited to, (1) physical facilities where such programs, services or activities are held, including medical, mental health related, dining, housing, and recreational facilities, (2) administrative processes including classification, and grievance processes, and (3) other formal and informal programs including telephone services, entertainment, bathing and toileting, library, socialization, and educational and rehabilitative programs.

142.    Congress directed the United States Department of Justice ("DOJ") to write regulations implementing Title II's prohibition against discrimination.  42 U.S.C. § 12134.  Pursuant to this mandate, the DOJ has issued regulations defining the forms of discrimination prohibited by Title II of the ADA.  28 C.F.R. § 35.101 *et seq.* These regulations include regulations specific to adult detention and correctional facilities.  28 C.F.R. § 35.152.

143.    Defendants have violated the rights of Plaintiffs and members of the Plaintiff Class secured by Title II of the ADA and its implementing regulations.

144.    The discrimination prohibited by the regulations discussed below stems from (1)

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    Defendants' policy and practice of prohibiting wheelchairs units at the Main Jail outside of the

2    Main Jail Infirmary and Main Jail Special Housing, thereby requiring the segregation of inmates

3    housed at the Main Jail with mobility disabilities into separate, more restrictive housing units

4    where inmates spend up to 23 hours or more per day in their cells and where inmates are denied

5    access to Defendants' programs, services or activities.; (2) the physical inaccessibility of

6    Defendants' County Jail facilities that ultimately exclude such inmates from participation in, and

7    deny such inmates the benefits of, the services, programs, and/or activities of the County Jails;

8    and (3) Defendants' failure to make reasonable modifications to the County Jails' policies and

9    practices in order to avoid discriminating against inmates with disabilities, including

10   inadequately identifying and tracking inmates with disabilities, adopting discriminatory policies

11   and practices relating to assistive devices and/or failing to adopt policies sufficient to avoid

12   discrimination relating to assistive devices, insufficiently training staff to identify and address

13   disability-related needs of such inmates, and offering a deficient grievance system.

14           145.    A public entity must "administer services, programs, and activities in the most

15   integrated setting appropriate to" an individual's needs and is therefore prohibited from

16   unnecessarily segregating or isolating the individual.  28 U.S.C. § 35.130(d).

17           146.    Additionally, public entities responsible for the operation or management of adult

18   detention and correctional facilities "shall ensure that inmates or detainees with disabilities are

19   housed in the most integrated setting appropriate to the needs of the individuals.  Unless it is

20   appropriate to make an exception, a public entity – (i) Shall not place inmates or detainees with

21   disabilities in inappropriate security classifications because no accessible cells or beds are

22   available; (ii) Shall not place inmates or detainees with disabilities in designated medical areas

23   unless they are actually receiving medical care or treatment; (iii) Shall not place inmates or

24   detainees with disabilities in facilities that do not offer the same programs as the facilities where

25   they would otherwise be housed; and (iv) Shall not deprive inmates or detainees with disabilities

26   of visitation with family members by placing them in distant facilities where they would not

27   otherwise be housed."  28 C.F.R § 35.152(b)(2).

28           147.    Furthermore, a public entity may not "deny a qualified individual with a disability

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   the opportunity to participate in services, programs, or activities that are not separate or different,

2   despite the existence of permissibly separate or different programs or activities." 28 C.F.R. §

3   35.130(b)(2).

4   148.   When Plaintiffs and members of the Plaintiff Class are segregated in Main Jail

5   Special Housing, and the Main Jail Infirmary Defendants deny Plaintiffs and the Plaintiff Class

6   the opportunity to participate in services, programs, or activities that are in the most integrated

7   setting appropriate to their needs and that are not separate and different from those offered to

8   their nondisabled peers.

9   149.   Inmates with mobility disabilities who use wheelchairs are housed in the Main

10   Jail Infirmary, Main Jail Special Housing, and Elmwood Special Housing and are not integrated

11   into the general population most obviously because they are housed in separate units. These

12   separate units are only "appropriate" for their needs because the rest of the Jail is inaccessible to

13   them and/or because their disability-related needs are not accommodated in the Jail.

14   150.   Moreover, in segregating individuals who use wheelchairs,, the Main Jail

15   provides an opportunity to participate only in programs, services, and activities that are both

16   separate and inferior to those offered to their nondisabled peers, to the extent they are provided at

17   all. The only programs offered to individuals who use wheelchairs housed in the Main Jail

18   Infirmary and in Main Jail Special Housing are in-cell programs that involve completing

19   workbooks inside the individual's cell, such as the Roadmap to Recovery program.

20   Additionally, inmates who use wheelchairs and are classified as medium security are not able to

21   be housed at Elmwood even if they would otherwise be eligible. Instead, these inmates are

22   housed in the more restrictive Main Jail Infirmary and Main Jail Special Housing units. As such

23   they are denied access to the more expansive programs offered at Elmwood.

24   151.   A public entity may not (1) "impose or apply eligibility criteria that screen out or

25   tend to screen out an individual with a disability or any class of individuals with disabilities from

26   fully and equally enjoying any service, program, or activity, unless such criteria can be shown to

27   be necessary[,]" 28 C.F.R.§ 35.130(b)(8); or (2) "utilize criteria or methods of administration . . .

28   that have the effect of subjecting qualified individuals with disabilities to discrimination on the

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

basis of disability . . . or the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities[.]"  28 C.F.R. § 35.130(b)(3)(i)(ii).

152.    By requiring that inmates at the Main Jail must reside outside of the Main Jail Infirmary and Main Jail Special Housing to be allowed to fully and equally enjoy the educational and rehabilitative programs and basic services offered, Defendants have imposed eligibility criteria that screens out individuals with disabilities.  Similarly, in Elmwood, Defendants have screened out individuals with disabilities by placing physical barriers and safety risks that result in a denial of full and equal enjoyment of the programs, services, and activities offered at Elmwood.

153.    Furthermore, Plaintiffs and members of the Plaintiff Class are subjected to discrimination on the basis of their disability because Defendants utilize criteria and methods of administration that (1) segregate individuals with disabilities in separate units because of their need for assistive devices  and in so doing deny them access to Defendants' programs, services and activities; and (2) deny individuals with disabilities access to programs, services or activities due to physical inaccessibility of the County Jails.  These methods of administration also have the purpose and effect of defeating or substantially impairing accomplishment of the objectives of Defendants' educational and rehabilitative programs, services, and activities with respect to Plaintiffs and members of the Plaintiff Class, as Plaintiffs and members of the Plaintiff Class cannot participate in or benefit from these programs, services and activities.

154.    In providing any aid, benefit, or service, a public entity "may not . . . [d]eny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit or service," "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," "[p]rovide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity . . . as that provided to others," "[o]therwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others," or "provide different or separate aids, benefits, or services to individuals

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704–1204
(510) 665-8644

with disabilities or to any class of individuals with disabilities than is provided to others unless such action is necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others."  28 C.F.R. § 35.130(b)(1)(i)-(iv).

155.     Here the County Jails offer the aids, benefits and services available in a way that violates the regulation above.  Defendants' policies and practices do not permit access to individuals with disabilities who reside in the Main Jail Infirmary or Main Jail Special Housing to educational and rehabilitative programs that are available to persons without disabilities housed in other units of the Main Jail.  These programs included but are not limited to the GED program and substance abuse programs, including Alcoholics Anonymous and Narcotics Anonymous, and sentence-reduction programs.  Inmates who are segregated in Main Jail Special Housing or the Main Jail Infirmary because of their disabilities are only offered one unequal, limited and separate benefit in their segregated housing units:  a substance abuse program called Roadmap to Recovery, which is completed in-cell using workbooks and has no actual classes.

156.     Moreover, because individuals with disabilities segregated in the Main Jail Infirmary and Main Jail Special Housing are routinely locked in their cells for at least 23 hours daily, they do not have sufficient time to participate in all the activities and services offered by the Jail, including showers, large muscle activity and television, in which their nondisabled peers can participate.  Additionally, inmates who use wheelchairs and are classified as medium security are not able to be housed at Elmwood even if they would otherwise be eligible.  Instead, these inmates are housed in the more restrictive Main Jail Infirmary and Main Jail Special Housing units.

157.     Similarly in Elmwood, inmates with disabilities face physical inaccessibility that otherwise limits their ability to enjoy the programs, services and activities that are enjoyed by others.  Moreover, Defendants "solution" to the inaccessibility at Elmwood – the wheelchair pushers – also violates the law since it provides an aid, benefit, or service that is not as effective in affording equal opportunity as that provided to others because inmates with mobility disabilities must rely on wheelchair pushers.  Such reliance deprives them of independence that other non-disabled inmates have.  Traversing the physically inaccessible features at Elmwood

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    also endangers their safety, a risk that non-disabled inmates do not have to bear to access

2    Defendants' programs, services and activities.  Additionally, upon information and belief,

3    multiple educational and vocational programs offered at Elmwood are not accessible to inmates

4    with mobility disabilities due to physical barriers at the program facilities such as stairs or

5    inadequate clearance space.

6         158.    In addition, public entities responsible for the operation or management of adult

7    detention and correctional facilities "shall ensure that qualified inmates or detainees with

8    disabilities shall not, because a facility is inaccessible to or unusable by individuals with

9    disabilities, be excluded from participation in, or be denied the benefits of, the services,

10   programs, or activities of a public entity, or be subjected to discrimination by any public entity."

11   28 C.F.R. § 35.152(b)(1).

12        159.    Because of the inaccessibility of the Main Jail, inmates with mobility disabilities

13   are denied the benefits of Defendants' programs, services and activities in two ways.  First,

14   inmates who use wheelchairs are segregated in more restrictive units where there is little access

15   to any of Defendants' formal programs, services or activities, such as classes or treatment

16   programs.  Second, inmates with mobility disabilities face inaccessibility within their more

17   restrictive units, as inmates with mobility disabilities cannot access basic services such as

18   showers or even toilets without risk of injury.  Additionally, to the extent inmates with mobility

19   disabilities are housed outside of the Main Jail Infirmary and Main Jail Special Housing they are

20   housed in inaccessible cells and without access to accessible showers.

21        160.    Similarly, in Elmwood Special Housing, educational or rehabilitative programs

22   are denied because of the presence of physical barriers.  In order to access such programs, which

23   are available to their nondisabled peers, inmates with disabilities at Elmwood must travel

24   outdoors for at least 100 yards to the classroom area of Elmwood.  The path of travel to the

25   classroom area is not accessible due to barriers such as broken pavement, steep curb cuts and

26   heavy doors.  This path of travel is even more inaccessible in the rain, as pushing a wheelchair

27   with wet wheels on an already barrier-ridden path can become dangerous and impossible.  Also,

28   when Elmwood does not clean up debris – such as tree limbs – after a storm, it makes it even

**CIVIL CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**          43

1   more difficult for inmates with mobility disabilities to travel.  While Defendants have recently

2   provided wheelchair pushers, wheelchair pushers are not always available such that inmates

3   traveling along the path to the classroom may become stranded due to heavy doors that they are

4   unable to open due to their disability.  In addition, there is no guarantee that a wheelchair pusher

5   will be able to safely traverse the inaccessible pathway and thus, the dangers of an inaccessible

6   path remain.  The denial of physical access to the educational and rehabilitative programs at

7   Elmwood is by reason of disability because these architectural barriers affect only inmates with

8   disabilities.

9       161.    A public entity "shall make reasonable modifications in policies, practices, or

10  procedures when the modifications are necessary to avoid discrimination on the basis of

11  disability[.]"  28 C.F.R. § 35.130(b)(7).

12      162.    Defendants fail to make reasonable modifications to their policies, practices, and

13  procedures even though such modifications are necessary to avoid discriminating against

14  Plaintiffs and members of the Plaintiff Class by, *inter alia*, not identifying and tracking Plaintiffs

15  and members of the Plaintiff Class who require disability-related accommodations and not

16  modifying Defendants' policies, practices, and procedures to allow individuals with disabilities

17  who need assistive devices and other such disability-related modifications (1) to be housed with

18  their nondisabled peers or, (2) at the very least, to receive the same access to the programs,

19  services or activities offered at the County Jails as their nondisabled peers.

20      163.    Reasonable modifications would include but are not limited to: (1) modifying

21  policies and practices that do not allow inmates who use wheelchairs and housed in segregated

22  units to participate in rehabilitative and educational programs; (2) modifying housing policies

23  and practices so that assistive devices, including wheelchairs, are allowed in all units, (3)

24  modifying assistive device policies and practices to allow the use of wheelchairs in all units such

25  that the use of wheelchairs would not limit housing options; (4) implementing an

26  identification/tracking system for reasonable modifications in the County Jails; (5) modifying

27  assistive devices policies so that such devices will be provided and not removed when deemed

28  needed in all areas of the Jail; (6) providing staff training to ensure that reasonable modifications

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**CIVIL CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF          44**

1  for individuals are implemented; and (7) making the grievance system effective for inmates with

2  disabilities including by adding a method for grievances to be marked as disability-related.

3         164.    Defendants' failure to modify Defendants' policies and practices

4  disproportionately burdens Plaintiffs and the Plaintiff Class by reason of their disabilities.  But

5  for the fact that Plaintiffs and the Plaintiff Class have disabilities, they would not require these

6  reasonable modifications which they are being denied.

7         165.    The regulations implementing Title II of the ADA also require public entities to

8  prepare and implement a Self-Evaluation and Transition Plan to evaluate and improve the

9  accessibility of their facilities.  A Self-Evaluation must "evaluate current services, policies and

10 practices, and the effects thereof, that do not or may not meet the requirement of this part and, to

11 the extent modification of any such services, policies, and practices is required, the public entity

12 shall proceed to make the necessary modifications."  23 C.F.R. § 35.105(a).  Further, "a public

13 entity shall provide an opportunity to interested persons . . . to participate in the self-evaluation

14 process by submitting comments."  28 C.F.R. § 35.105(b).  A Transition Plan must "(i) identify

15 physical obstacles in the public entity's facilities that limit accessibility of its programs or

16 activities to individuals with disabilities; (ii) describe in detail the methods that will be used to

17 make the facilities accessible; (iii) specify the schedule for taking the steps necessary to achieve

18 compliance with this section and, if the time period of the transition plan is longer than one year,

19 identify steps that will be taken during each year of the transition period; and (iv) indicate the

20 official responsible for implementation of the plan."  28 C.F.R. § 35.150(d)(3).

21        166.    Upon information and belief, Defendants have failed to conduct a full and

22 comprehensive Self Evaluation and Transition Plan with a complete and up-to-date schedule for

23 providing physical and program access in the County Jails.  Upon information and belief,

24 Defendants have also failed to make a copy of their Transition Plan available for public

25 inspection, in violation of 28 C.F.R. § 35.150(d)(1).

26        167.    Pursuant to 28 C.F.R. § 35.149 "[n]o qualified individual with a disability shall,

27 because a public entity's facilities are inaccessible to or unusable by individuals with disabilities,

28 be excluded from participation in, or be denied the benefits of the services, programs, or

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   activities of a public entity, or be subjected to discrimination by any public entity."  Additionally,

2   pursuant to 28 C.F.R. § 35.150(a), Defendants must "operate each service, program, or activity

3   so that the service, program, or activity, when viewed in its entirety, is readily accessible to and

4   usable by individuals with disabilities."

5        168.    Pursuant to 28 U.S.C. § 35.151(b)(1), "[e]ach facility or part of a facility altered

6   by, on behalf of, or for the use of a public entity in a manner that affects or could affect the

7   usability of the facility or part of the facility shall, to the maximum extent feasible, be altered in

8   such a manner that the altered portion of the facility is readily accessible to and usable by

9   individuals with disabilities, if the alteration was commenced after January 26, 1992."

10       169.    Upon information and belief, the County Jails have been altered in a manner that

11  affects the usability of the County Jails since January 26, 1992, and the altered portions of the

12  facilities are not readily accessible to and usable by individuals with disabilities in violation of

13  28 U.S.C. § 35.151(b)(1).

14       170.    Pursuant to 28 U.S.C. § 3.151(c)(1) physical alterations that commence after July

15  26, 1992 must comply with the DOJ's Standards for Accessible Design published on July 26,

16  1991 and republished as Appendix D to 28 CFR Part 36 ("1991 Standards")  or with the Uniform

17  Federal Accessibility Standards ("UFAS").

18       171.    Upon information and belief, areas of the County Jails have been constructed after

19  July 26, 1992 and are not in compliance with the 1991 Standards or UFAS.

20       172.    Pursuant to 28 U.S.C. § 35.151(4) an "alteration that affects the usability of or

21  access to an area of a facility that contains a primary function shall be made accessible so as to

22  ensure that, to the maximum extent feasible, the path of travel to the altered area and the

23  restrooms, telephones, and drinking fountains serving the altered area are readily accessible to

24  and usable by individuals with disabilities, including individuals who use wheelchairs . . . ."  A

25  "primary function" is a major activity for which the facility is intended. 28 U.S.C. §

26  35.151(b)(4)(i).

27       173.    Upon information and belief, Defendants have altered the usability of areas that

28  contain primary functions but have failed to make the path of travel to such areas readily

1  accessible to individuals with disabilities, including individuals who use wheelchairs, in

2  violation of 28 U.S.C. § 35.151(4).

3      174.    The regulations implementing Title II of the ADA also require that alterations that

4  commence on or after September 15, 2010 to jails, prisons, and other detention and correctional

5  facilities may comply with the DOJ's 2010 Standards.  28 C.F.R. § 35.151(c)(2).  Alterations

6  that commence on or after March 15, 2012 must comply with the DOJ's 2010 standards.  28

7  CFR § 35.151(c)(3).  The 2010 Standards are defined to include the requirements set forth in

8  appendices B and D to 36 CFR part 1191 (2009) (known as the "2004 ADAAG") and the

9  requirements contained in 28 CFR § 35.151.  28 CFR § 35.104.   Specifically, pursuant to 28

10 U.S.C. § 35.151(k)(2), altered cells with mobility features shall be provided in each classification

11 level, although public entities may satisfy this obligation by providing the required mobility

12 features in cells other than those where alterations were originally planned.  Such cells must:

- be "located within the same prison site;"

- be "integrated with other cells to the maximum extent feasible;"

- provide, "at a minimum, equal physical access as the altered cells to areas used by inmates or detainees for visitation, dining, recreation, educational programs, medical services, work programs, religious services, and participation in other programs that the facility offers to inmates or detainees;" and

- provide "a substitute cell" at another prison site within the corrections system "if it is technically infeasible to locate a substitute cell within the same prison site."

21 28 U.S.C. § 35.151(k)(2)(i)-(iv).

22     175.    Upon information and belief, the County Jails have altered cells after the

23 applicable dates without installing the required mobility features in compliance with 28 U.S.C. §

24 35.151(k).

25     176.    With respect to medical and long-term care facilities in jails, prisons, and other

26 detention and correctional facilities, public entities are required to apply the 2010 Standards

27 technical and scoping requirements for those facilities, irrespective of whether those facilities are

28 licensed, for alterations and construction occurring after the applicable dates.  28 U.S.C. §

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

35.151(k)(3).  Upon information and belief, Defendants fail to apply these standards here.

177.    Because Defendants' discriminatory and wrongful conduct is ongoing, declaratory and injunctive relief are appropriate remedies.  Further, as a direct result of Defendants' actions, Plaintiffs and members of the Plaintiff Class are suffering irreparable harm, including lost opportunities to participate in rehabilitative programs and/or classes that could reduce the rate of recidivism upon their release and/or reduce the length of their sentence. Therefore, speedy and immediate relief is appropriate.

178.    Pursuant to 42 U.S.C. § 12133, Plaintiffs are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs incurred in bringing this action under 42 U.S.C. § 12205.

## SECOND CAUSE OF ACTION

### *Violation of Section 504 of the Rehabilitation Act*

### *29 U.S.C. § 794*

179.    Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if specifically alleged herein.

180.    Section 504 provides, in pertinent part:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance[.]  29 U.S.C. § 794(a).

181.    Each Defendant was, at all times relevant to this action, and is currently a recipient of federal financial assistance within the meaning of Section 504 and provides a "program or activity," including "all the operations of" the recipient which includes the educational and rehabilitative programs and activities offered in the County Jails.  29 U.S.C. § 794(b).

182.    An "individual with a disability" is defined under the statute, in pertinent part, as "an individual who has a physical or mental impairment that substantially limits one or more major life activities of such individual."  29 U.S.C. § 705(20)(B) (referencing 42 U.S.C. § 12102).  "Qualified" means, with respect to services, a person who meets the essential

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   eligibility requirements for the receipt of such services.  28 C.F.R. § 41.32.

2       183.    Plaintiffs and the Plaintiff Class were, at all times relevant to this action, and are

3   currently "otherwise qualified individuals with disabilities" within the meaning of Section 504,

4   as they all have impairments that substantially limit a major life activity, and they were and/or

5   are all residents of the County Jails qualified – with or without reasonable accommodation – to

6   participate in the programs, services, and activities offered by Defendants in the County Jails.

7       184.    Defendants have violated the rights of Plaintiffs and members of the Plaintiff

8   Class secured by Section 504 and its implementing regulations.

9       185.    The DOJ is charged under Executive Order 12250 with coordinating the

10  implementation of Section 504 of the Rehabilitation Act of 1973.  28 C.F.R. § 41.1.

11      186.    In providing any aid, benefit, or service, a recipient of federal financial assistance

12  "may not . . . [d]eny a qualified handicapped person the opportunity to participate in or benefit

13  from the aid, benefit or service," "[a]fford a qualified handicapped person an opportunity to

14  participate in or benefit from the aid, benefit, or service that is not equal to that afforded others,"

15  "[p]rovide a qualified handicapped person with an aid, benefit, or service that is not as effective

16  in affording equal opportunity . . . as that provided to others," "[o]therwise limit a qualified

17  handicapped person in the enjoyment of any right, privilege, advantage, or opportunity enjoyed

18  by others or "provide different or separate aids, benefits, or services to individuals with

19  disabilities or to any class of individuals with disabilities than is provided to others unless such

20  action is necessary to provide qualified individuals with disabilities with aids, benefits, or

21  services that are as effective as those provided to other."  45 C.F.R. § 84.4(b)(i)-(iv), (vii).

22      187.    A public entity may not "deny a qualified individual with a disability the

23  opportunity to participate in services, programs, or activities that are not separate or different,

24  despite the existence of permissibly separate or different programs or activities."  45 C.F.R. §

25  84.4(b)(3).

26      188.    When Plaintiffs and members of the Plaintiff Class are placed in the Main Jail

27  Infirmary, Main Jail Special Housing, and/or Elmwood Special Housing, Defendants exclude

28  them from participating in and deny them the benefits of Defendants' educational and

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**CIVIL CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    rehabilitative programs, services, and activities solely by reason of their disabilities. Inmates who

2    use wheelchairs segregated in the Main Jail Infirmary and Main Jail Special Housing are housed

3    in highly restrictive units, where they are routinely locked in their cells for 23 hours per day, due

4    solely to their disability.  Additionally, inmates who use wheelchairs and are classified as

5    medium security are not able to be housed at Elmwood even if they would otherwise be eligible

6    and are thus denied access to the additional programs and activities available at Elmwood.

7    Defendants' actions and omissions deny Plaintiffs and the Plaintiff Class the opportunity to

8    participate in services, programs or activities that are not separate and different from those

9    offered to their nondisabled peers.

10        189.    Defendants also deny inmates with mobility disabilities access to programs and

11    activities due to the physical inaccessibility of the Main Jail and Elmwood. Due to physical

12    barriers at the Main Jail inmates with mobility disabilities are frequently housed in inaccessible

13    cells and without access to accessible showers.  Inmates with mobility disabilities at Elmwood

14    are denied access to programs and activities due to barriers in the path of travel throughout

15    Elmwood and due to physical barriers including steps and insufficient clearance space in some

16    classrooms and other facilities where programs are offered.

17        190.    A recipient of federal financial assistance may not "utilize criteria or methods of

18    administration (i) that have the effect of subjecting qualified handicapped persons to

19    discrimination on the basis of handicap and/or (ii) that have the purpose or effect of defeating or

20    substantially impairing accomplishment of the objectives of the recipient's program or activity

21    with respect to handicapped persons . . . ."  45 C.F.R. § 84.4(b)(4)(i), (ii).

22        191.    By denying individuals with disabilities access to wheelchairs and other needed

23    modifications to Defendants' policies and procedures outside of the Main Jail Infirmary and

24    Main Jail Special Housing units, Defendants deny inmates with mobility disabilities who require

25    wheelchairs access to programs and services and lock them in a cell for 23 or more hours per

26    day.  As such, Defendants utilize methods of administration that have the effect of subjecting

27    Plaintiffs and members of the Plaintiff Class to discrimination by reason of their disabilities.

28    These methods of administration also have the purpose and effect of defeating or substantially

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   impairing accomplishment of the objectives of Defendants' educational and rehabilitative

2   programs, services, and activities with respect to Plaintiffs and members of the Plaintiff Class.

3        192.    Defendants fail to make reasonable modifications to their policies, practices, and

4   procedures even though such modifications are necessary to avoid discriminating against

5   Plaintiffs and members of the Plaintiff Class by, *inter alia*, not identifying and tracking Plaintiffs

6   and members of the Plaintiff Class who require reasonable accommodations and not modifying

7   Defendants' assistive devices and housing policies to allow individuals with disabilities who

8   need use wheelchairs to be housed in the least restrictive setting appropriate to their needs and

9   with their nondisabled peers.  Reasonable modifications would include but are not limited to: (1)

10   modifying policies and practices that do not allow inmates who use wheelchairs and housed in

11   segregated units to participate in rehabilitative and educational programs; (2) modifying housing

12   policies and practices so that assistive devices, including wheelchairs, are allowed in all units, (3)

13   modifying assistive device policies and practices to allow the use of wheelchairs in all units such

14   that the use of wheelchairs would not limit housing options; (4) implementing an

15   identification/tracking system for reasonable modifications in the County Jails; (5) modifying

16   assistive devices policies so that such devices will be provided and not removed when deemed

17   needed in all areas of the Jail; (6) providing staff training to ensure that reasonable modifications

18   for individuals are identified and implemented properly; and (7) making the grievance system

19   effective for inmates with disabilities including by adding a method for grievances to be marked

20   as disability-related.

21        193.    Defendants' failure to modify Defendants' policies and practices

22   disproportionately burdens Plaintiffs and the Plaintiff Class by reason of their disabilities.

23        194.    Because Defendants' discriminatory conduct is ongoing, declaratory relief and

24   injunctive relief are appropriate remedies.  Further, as a direct result of Defendants' actions,

25   Plaintiffs and members of the Plaintiff Class are suffering irreparable harm, including lost

26   educational and rehabilitative opportunities.  Therefore, speedy and immediate relief is

27   appropriate.

28        195.    Pursuant to 29 U.S.C. § 794a, Plaintiffs are entitled to declaratory and injunctive

1   relief and to recover from Defendants the reasonable attorneys' fees and costs incurred in

2   bringing this action.

**THIRD CAUSE OF ACTION**

*Violation of California Government Code § 11135*

*Cal. Gov't Code § 11135 et seq.*

6   196.   Plaintiffs incorporate by reference each and every allegation contained in the

7   foregoing paragraphs as if specifically alleged herein.

8   197.   California Government Code section 11135 sets forth a nondiscrimination policy

9   for state programs.  It provides, in pertinent part, that:

> [n]o person in the State of California shall, on the basis of race,
> national origin, ethnic group identification, religion, age, sex,
> sexual orientation, color, genetic information or disability, be
> unlawfully denied full and equal access to the benefits of, or be
> unlawfully subjected to discrimination under, any program or
> activity that is conducted, operated, or administered by the state or
> by any state agency, is funded directly by the state, or receives any
> financial assistance from the state. Cal. Gov't Code § 11135(a).

15   198.   Upon information and belief, each Defendant was, at all times relevant to this

16   action, and is currently operating or administering a program or activity that receives state

17   financial assistance within the meaning of section 11135, including educational and rehabilitative

18   programs and activities in the County Jails.

19   199.   Plaintiffs and the Plaintiff Class were, at all times relevant to this action, and are

20   currently "persons in the State of California" within the meaning of California Government Code

21   section 11135.  Plaintiffs and the Plaintiff Class all have disabilities as defined by California

22   Government Code section 12926, and they were and/or are all residents of the County Jails

23   qualified to participate in the programs, services and activities of the County Jails.

24   200.   Defendants have violated the rights of Plaintiffs and members of the Plaintiff

25   Class secured by Section 11135 *et seq.* and the regulations promulgated thereunder, 22 Cal. Code

26   Regs. § 98100, *et seq.*

27   201.   It is a "discriminatory practice" for a recipient of state financial assistance, "in

28   carrying out any program or activity," on the basis of disability, "(a) to deny a person the

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  opportunity to participate in, or benefit from an aid, benefit or service; (b) to afford a person the

2  opportunity to participate in or benefit from an aid, benefit or service that is not equal to that

3  afforded others; (c) to provide a person with an aid, benefit or service that is not as effective in

4  affording an equal opportunity to obtain the same result, to gain the same benefit, or to reach the

5  same level of achievement as that provided to others . . . [or] (g) to otherwise limit a person in

6  the enjoyment of any right, privilege, advantage or opportunity enjoyed by others receiving any

7  aid, benefit or service resulting from the program or activity." 22 Cal. Code Regs. § 98101 (a),

8  (b), (c), (g).

9  　　　202.　When Plaintiffs and members of the Plaintiff Class are placed in Main Jail Special

10 Housing, Main Jail Infirmary, and/or Elmwood Special Housing, Defendants exclude them from

11 participating in and deny them the benefits of Defendants' educational and rehabilitative

12 programs, services, and activities solely by reason of their disabilities. Inmates who use

13 wheelchairs segregated in the Main Jail Infirmary and Main Jail Special Housing are housed in

14 highly restrictive units, where they are routinely locked in their cells for 23 hours per day, due

15 solely to their disability. Additionally, inmates who use wheelchairs and are classified as

16 medium security are not able to be housed at Elmwood even if they would otherwise be eligible

17 and are thus denied access to the additional programs and activities available at Elmwood.

18 Defendants' actions and omissions deny Plaintiffs and the Plaintiff Class the opportunity to

19 participate in services, programs or activities that are not separate and different from those

20 offered to their nondisabled peers.

21 　　　203.　Defendants also deny inmates with mobility disabilities access to programs and

22 activities due to the physical inaccessibility of the Main Jail and Elmwood. Due to physical

23 barriers at the Main Jail inmates with mobility disabilities are frequently housed in inaccessible

24 cells and without access to accessible showers. Inmates with mobility disabilities at Elmwood

25 are denied access to programs and activities due to barriers in the path of travel throughout

26 Elmwood and due to physical barriers including steps and insufficient clearance space in some

27 classrooms and other facilities where programs are offered.

28 　　　204.　It is also a "discriminatory practice" for a recipient of state financial assistance "to

**CIVIL CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF          53**

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    utilize criteria or methods of administration that: (1) have the purpose or effect of subjecting a

2    person to discrimination on the basis of disability; (2) have the purpose or effect of defeating or

3    substantially impairing the accomplishment of the objectives of the recipient's program with

4    respect to a person with a disability." 22 Cal. Code Regs. § 98101(i).

5         205.    By denying individuals with disabilities access to wheelchairs and other needed

6    modifications to Defendants' policies and procedures outside of the Main Jail Infirmary and

7    Main Jail Special Housing units, Defendants deny inmates with mobility disabilities who require

8    wheelchairs access to programs and services and lock them in a cell for 23 or more hours per

9    day.  As such, Defendants utilize methods of administration that have the effect of subjecting

10   Plaintiffs and members of the Plaintiff Class to discrimination by reason of their disabilities.  .

11   These methods of administration also have the purpose and effect of defeating or substantially

12   impairing accomplishments of the objectives of Defendants' educational and rehabilitative

13   programs, services, and activities with respect to Plaintiffs and members of the Plaintiff Class.

14        206.    Section 11135 of the California Government Code further requires that the

15   programs and activities that receive financial assistance from the state "shall meet the protections

16   and prohibitions contained in Section 202 of the federal Americans with Disabilities Act . . .

17   except that if the laws of this state prescribe stronger protections and prohibitions, the programs

18   and activities subject to subdivision (a) shall be subject to the stronger protections and

19   prohibitions." Cal. Gov't Code § 11135(b).  Because Defendants are violating Title II of the

20   ADA, they also are violating section 11135 of the California Government Code.

21        207.    Defendants have further violated California Government Code § 11135 by failing

22   to prepare and maintain a compliant Self-Evaluation and a compliant Transition Plan pursuant to

23   the requirements of Cal. Code Regs. Tit. 22 §§ 98251 and 98258.

24        208.    Defendants  have also discriminated on the basis of disability in violation of

25   Government  Code § 11135 by constructing, altering, or repairing parts of the Jail in a manner

26   that violates the accessibility requirements of Title 24 of the California Building Standards Code

27   and California Government Code § 4450.

28        209.    Defendants and their agents and employees have violated and continue to violate

**CIVIL CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**     54

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   California Government Code § 11135 by unlawfully denying Plaintiffs and members of the

2   Plaintiff Class the benefits of, and unlawfully subjecting Plaintiffs and members of the Plaintiff

3   Class to discrimination under, the County's programs and activities and for the reasons set forth

4   above.

5         210.   Because Defendants' discriminatory and wrongful conduct is ongoing,

6   declaratory and injunctive relief are appropriate remedies.  Further, as a direct result of

7   Defendants' actions, Plaintiffs and members of the Plaintiff Class are suffering irreparable harm,

8   including lost education and rehabilitative opportunities.  Therefore, speedy and immediate relief

9   is appropriate.

10         211.   Pursuant to section 1021.5 of the California Code of Civil Procedure, Plaintiffs

11   are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs

12   incurred in bringing this action.

### FOURTH CAUSE OF ACTION

### *Declaratory Relief*

### *28 U.S.C. § 2201*

### *Cal. Code Civ. Proc. § 1060 et seq.*

17         212.   Plaintiffs incorporate by reference each and every allegation contained in the

18   foregoing paragraphs as if specifically alleged herein.

19         213.   Plaintiffs contend that Defendants have failed and are failing to comply with

20   applicable laws prohibiting discrimination against persons with disabilities in violation of

21   Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*, Title II of the ADA, 42 U.S.C. §

22   12131, *et seq.*, and California Government Code § 11135, *et seq.*

23         214.   Defendants dispute Plaintiffs' contention, therefore, a judicial declaration is

24   necessary and appropriate at this time in order that each of the parties may know their respective

25   rights and duties and act accordingly.

26         215.   Pursuant to 28 U.S.C. § 2201 and Cal. Code Civ. Proc. § 1060, *et seq.*, Plaintiffs

27   are entitled to declaratory relief.

28         216.   WHEREFORE, Plaintiffs pray for relief as set forth below.

**CIVIL CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF          55**

1

**REQUEST FOR RELIEF**

2 WHEREFORE, Plaintiffs pray for the following relief:

3      217.    An order certifying that this action may be maintained as a class action pursuant

4 to Federal Rule of Civil Procedure 23(a) and 23(b)(1)-(2);

5      218.    An order and declaration that the Defendants' conduct as alleged herein has

6 violated, and continues to violate, the ADA, 42 U.S.C. §§ 12101 *et seq.*, and accompanying

7 regulations, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and accompanying

8 regulations, and California Government Code § 11135, *et seq.* and accompanying regulations.;

9      219.    An order permanently enjoining Defendants from violating the ADA, 42 U.S.C.

10 §§ 12101 *et seq.*, and accompanying regulations, Section 504 of the Rehabilitation Act, 29

11 U.S.C. § 794, and accompanying regulations, and California Government Code § 11135, *et seq.*

12 and accompanying regulations;

13      220.    An order requiring Defendants and their agents, employees, officials, and all

14 persons acting in concert with them under color of state law or otherwise to develop and

15 implement, as soon as practical, a plan to eliminate the substantial risk of harm, discrimination,

16 and statutory violations that Plaintiffs and members of the class they represent suffer due to the

17 unlawful acts, omissions, conditions and practices described in this Complaint;

18      221.    An order requiring Defendants to ensure that Plaintiffs and the Plaintiff Class are

19 not denied the benefits of, or participation in, programs, services, and activities at the Jail;

20      222.    Retain jurisdiction of this case until Defendants have complied with the orders of

21 this Court, and there is a reasonable assurance that Defendants will continue to comply in the

22 future, absent continuing jurisdiction;

23      223.    Award Plaintiffs' attorneys' fees and costs, as provided by statute and law; and

24      224.    Any such other relief as the Court finds just and proper.

25 //

26 //

27 //

28 //

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1 | DATED:  November 14, 2016          Respectfully submitted,

2

3                                                DISABILITY RIGHTS ADVOCATES
                                                ROSEN BIEN GALVAN & GRUNFELD LLP

4

5

6                                                _____
                                                Mary-Lee K. Smith

7                                                Attorneys for Plaintiffs

8

9                                                /s/ Lisa Ells_____
                                                Lisa Ells

10                                               Attorneys for Plaintiffs

11

12

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CIVIL CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**          57