GAY C. GRUNFELD – 121944
LISA ELLS – 243657
KARA JANSSEN – 274762
MARC SHINN KRANTZ – 312968
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:    (415) 433-6830
Facsimile:    (415) 433-7104

MICHELLE IORIO – 298252
DISABILITY RIGHTS ADVOCATES
2001 Center Street, Fourth Floor
Berkeley, California  94704
Telephone:    (510) 665-8644
Facsimile:    (510) 665-8511
TTY:            (510) 665-8716

*Attorneys for Plaintiffs*

JAMES R. WILLIAMS – 271253
  County Counsel
DOUGLAS M. PRESS – 168740
  Assistant County Counsel
ARYN PAIGE HARRIS – 208590
  Deputy County Counsel
EMILY L. FELDMAN – 271200
  Deputy County Counsel
OFFICE OF THE COUNTY COUNSEL
70 West Hedding Street
East Wing, Ninth Floor
San Jose, California  95110-1770
Telephone:    (408) 299-5900
Facsimile:    (408) 292-7240

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

DAVID COLE, LEROY BENJAMIN, ERASMO FLORES, JR., ROBERT PHILLIPS and BRANDON WILLIAMS, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

COUNTY OF SANTA CLARA, a public entity, COUNTY OF SANTA CLARA DEPARTMENT OF CORRECTION, a public entity under the control of the County of Santa Clara, the COUNTY OF SANTA CLARA OFFICE OF THE SHERIFF, a public entity under the control of the County of Santa Clara, and DOES 1 to 20, inclusive,

Defendants.

Case No. 5:16-cv-06594-LHK

**JOINT NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

Judge: Hon. Lucy H. Koh
Date: December 6, 2018
Time: 1:30 p.m.
Trial Date: None Set

[3212510.11]

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION.................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................... 1

I.      INTRODUCTION .................................................................................. 1

II.     BACKGROUND ..................................................................................... 2

III.    SUMMARY OF PROPOSED SETTLEMENT ....................................... 4

    A.      Class Definition ........................................................................... 4

    B.      Policies and Procedures ............................................................... 4

        1.      Intake Process .................................................................. 4

        2.      Verification of Mobility Disability and Need for Reasonable Modifications.......................................................... 5

        3.      Issuance, Retention, Maintenance and Denial of Mobility Device(s) ........................................................... 5

        4.      Classification and Housing of Mobility-Disabled Inmates ................. 6

        5.      Tracking Inmates with Mobility Disabilities ....................................... 6

        6.      Programs and Services ..................................................... 6

        7.      Policy Review and Revisions ........................................... 7

        8.      ADA Coordinator ............................................................ 7

        9.      Training ............................................................................ 8

        10.     Facility Modifications and Adjustments ........................... 8

        11.     Self-Monitoring ............................................................... 9

        12.     Grievance and ADA Request System ............................... 9

    C.      Monitoring ................................................................................... 9

        1.      Monitoring by Plaintiffs ................................................... 9

        2.      Monitoring by Neutral Operational and Architectural Monitors ....... 10

    D.      Term of Consent Decree.............................................................. 10

    E.      Dispute Resolution and Reservation of Jurisdiction and Enforcement......... 11

    F.      The Release of Claims and Dismissal of Actions ....................... 11

i

[3212510.11]

| | G. | Attorneys' Fees, Costs, and Expenses | 11 |
| IV. | | LEGAL ARGUMENT | 12 |
| | A. | Class Certification Has Already Been Granted and Remains Appropriate. | 12 |
| | B. | The Consent Decree Is Fair and Reasonable and Should Be Granted Preliminary Approval. | 13 |
| | C. | The Proposed Notice Satisfies Due Process and Should Be Approved. | 16 |
| | D. | The Court Should Approve the Proposed Scheduling Order, Including Setting a Date for the Fairness Hearing. | 17 |
| V. | | CONCLUSION | 19 |

Case No. 5:16-cv-06594-LHK

JOINT NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

[3212510.11]

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Class Plaintiffs v. City of Seattle,*
955 F.2d 1268 (9th Cir. 1992) .............................................................................. 13

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ......................................................................... 13, 14

*In re Celera Corp. Sec. Litig.,*
No. 5:10-cv-02604-EJD, 2015 WL 1482303 (N.D. Cal. Mar. 31, 2015) ............... 13

*In re Google Referrer Header Privacy Litig.,*
87 F. Supp. 3d 1122 (N.D. Cal. 2015), *aff'd*, 869 F.3d 737 (9th Cir. 2017)........... 13

*In re High-Tech Employee Antitrust Litig.,*
No. 11-CV-2509-LHK, 2013 WL 6328811 (N.D. Cal. Oct. 30, 2013) ................... 14

*In re Syncor ERISA Litig.,*
516 F.3d 1095 (9th Cir. 2008) .............................................................................. 13

*In re: Volkswagen "Clean Diesel" Mktg, Sales Practices, and Prod. Liab. Litig.,*
No. 2672 CRB (JSC), 2016 WL 6091259 (N.D. Cal. Oct. 18, 2016) ..................... 14

*Lane v. Facebook, Inc.,*
696 F.3d 811 (9th Cir. 2012) ........................................................................... 13, 16

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco,*
688 F.2d 615 (9th Cir. 1982) ................................................................................. 17

*Rodriguez v. West Publ'g Corp.*
563 F.3d 948 (9th Cir. 2009) ................................................................................. 16

*Ruch v. AM Retail Grp., Inc.,*
No. 14-CV-05352-MEJ, 2016 WL 1161453 (N.D. Cal. Mar. 24, 2016) ................ 14

*Spann v. J.C. Penney Corp.,*
314 F.R.D. 312 (C.D. Cal. 2016)............................................................................ 17

*Tadepalli v. Uber Techs., Inc.,*
No. 15-CV-04348-MEJ, 2015 WL 9196054 (N.D. Cal. Dec. 17, 2015) ................ 14

*Van Bronkhorst v. Safeco Corp.,*
529 F.2d 943 (9th Cir. 1976) ................................................................................. 13

<u>Statutes</u>

28 U.S.C. § 1715(b) ....................................................................................................... 18

29 U.S.C. § 794................................................................................................................. 3

JOINT NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

[3212510.11]

42 U.S.C. § 12101 ............................................................................................................. 3

California Government Code § 11135 ........................................................................... 3, 8

<u>Rules</u>

Fed. R. Civ. P. 23 ..................................................................................................... passim

<u>Miscellaneous</u>

Newberg on Class Actions, § 13.15 (5th ed. 2016) ......................................................... 13

Case No. 5:16-cv-06594-LHK
JOINT NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

[3212510.11]

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on December 6, 2018 or as soon thereafter as the matter may be heard, Plaintiffs David Cole, Leroy Benjamin, Erasmo Flores, Jr., Robert Phillips, and Brandon Williams ("Plaintiffs") and Defendants County of Santa Clara ("Defendant" erroneously sued herein as County of Santa Clara Department of Correction, and the County of Santa Clara Office of the Sheriff) will and hereby do jointly move the Court for entry of an Order:  (1) granting preliminary approval of the proposed class settlement agreement ("the Consent Decree") submitted herewith as Exhibit 1 to the Declaration of Lisa Ells in Support of Joint Motion for Preliminary Approval of Class Settlement ("Ells Decl."); (2) approving the manner and form of giving notice of the settlement to the class members; (3) scheduling deadlines for objections; and (4) scheduling a fairness hearing regarding final approval of the settlement.

In support of this motion, the parties state that the Consent Decree:  (1) represents a comprehensive settlement of the issues raised in the above-captioned case; (2) offers a fair and equitable result to those affected by it; and (3) will result in significant long-term benefits both for individuals who are members of the class and for Defendant.

The motion is based upon this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the attached declaration  and exhibits; all pleadings and papers on file in this action; and any oral argument this Court permits.

Rule 23 of the Federal Rules of Civil Procedure does not require a hearing on a motion seeking preliminary approval of a class action settlement and the parties agree to forgo a hearing unless the Court concludes that a hearing is necessary.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The proposed settlement (the "Consent Decree") [1] provides injunctive relief to the

---

[1] The Consent Decree is attached as Exhibit 1 to the Declaration of Lisa Ells in Support of Joint Motion for Preliminary Approval of Settlement ("Ells Decl.").

[3212510.11]

certified class of all inmates with mobility disabilities who are now, or will be in the future, incarcerated at the Santa Clara County Jails, while eliminating the risk of duplicative litigation. The Consent Decree requires the County of Santa Clara (the "County") to modify its policies, procedures, and facilities to accommodate the needs of inmates with mobility disabilities. It includes effective mechanisms for reporting, monitoring, and dispute resolution. Plaintiffs will monitor the County's compliance throughout the Term of the Consent Decree, which will terminate, unless the parties jointly agree to extend, twelve (12) months after the certificate of occupancy has been issued for the County's planned New Jail[2] and the County has begun placement of inmates in the New Jail.

The parties agreed upon the Consent Decree after extensive arm's-length negotiations over several years, including eleven (11) formal mediation sessions under the supervision of Honorable Magistrate Judge Nathanael Cousins, two additional mediation sessions before Mr. Martin Quinn of JAMS, and numerous in-person and telephonic negotiations among counsel.

The proposed Consent Decree is fair, adequate, and reasonable, and is the product of serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel. It satisfies all the criteria for preliminary approval under Rule 23 of the Federal Rules of Civil Procedure. Additionally, the parties' proposed notice and schedule for a fairness hearing will allow class members an adequate opportunity to review and comment on the Consent Decree and is consistent with the parties' desire for prompt implementation of the Consent Decree. Accordingly, the parties ask that the Court: (i) preliminarily approve the Consent Decree; (ii) approve the proposed form of the class notice and distribution plan; and (iii) set a fairness hearing.

## II.    BACKGROUND

Plaintiffs, on behalf of themselves and all others similarly situated, filed this action

---

[2] Unless defined herein, all capitalized terms have the definition given to them in the Consent Decree.

on November 14, 2016, alleging claims for injunctive and declaratory relief under the
Americans with Disabilities Act (42 U.S.C. § 12101, *et seq.*) ("ADA"); Section 504 of the
Rehabilitation Act of 1973 (29 U.S.C. § 794, *et seq.*) ("Rehabilitation Act"); and California
Government Code § 11135, *et seq.* (ECF No. 1.) Prior to the initiation of this lawsuit, the
parties engaged in extensive formal negotiations for approximately 18 months in an
ultimately unsuccessful effort to resolve the issues without litigation. After filing of the
complaint, the parties continued settlement efforts through the Court's General Order 56
process, which governs suits, including this one, alleging claims under the ADA. General
Order 56 also stays all discovery and motion practice through conclusion of the Order's
mandatory settlement process, absent relief via administrative motion.

The parties jointly filed an administrative motion for relief from General Order 56
on January 23, 2018, in order to permit filing of the parties' joint stipulated motion for
class certification pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil
Procedure, which the Court granted on February 6, 2018. (ECF No. 38.) In granting the
parties' motion, the Court certified a class consisting of "All individuals with mobility
disabilities who are now, or will be in the future, incarcerated in the Santa Clara County
Jails, which consist of three facilities: (1) the Santa Clara County Main Jail Complex
('Main Jail'), consisting of Main Jail North and Main Jail South, in San Jose, California;
(2) facilities for male inmates at the Elmwood Correctional Complex in Milpitas,
California ('Elmwood'); and (3) the Elmwood Complex Women's Facility in Milpitas,
California."

As part of the General Order 56 process, the parties completed early site tours of the
County Jails and participated in extensive good-faith settlement negotiations, commencing
in August 2017, under the supervision of the Honorable Magistrate Judge Nathanael
Cousins. In total, the parties conducted eleven (11) settlement conferences before
Magistrate Judge Cousins, and multiple face-to-face and telephonic negotiation meetings.
The parties further participated in two additional in-person mediations before Mr. Martin
Quinn of JAMS to resolve the issues of attorney's fees and costs, including for work

JOINT NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

1  performed to date and for work required to implement and monitor the Consent Decree.

2  These negotiations were time- and resource-intensive for both parties, but were necessary

3  to the parties' ultimately successful resolution of this action.

4  **III.    SUMMARY OF PROPOSED SETTLEMENT**

5       The Consent Decree, attached in full as Exhibit 1 to the Declaration of Lisa Ells,

6  covers the following negotiated and agreed-upon terms:[3]

7       **A.    Class Definition**

8       The parties define the "Plaintiff Class" for purposes of the Consent Decree as "all

9  individuals with a Mobility Disability who are now, or will be in the future, for the Term

10  of this Consent Decree incarcerated in the County Jails."  *See* Ells Decl. Ex. 1 ("Consent

11  Decree") § II(S).  The Consent Decree further defines the term "Mobility Disability" as

12  "an impairment that affects an inmate's ability to move physically and which substantially

13  limits the inmate's ability to perform one or more major life activities, including but not

14  limited to standing, lifting, stooping, and/or ambulating."  Consent Decree § II(R).  This

15  definition does not expand the class membership or legal claims that this Court has

16  previously certified.

17       **B.    Policies and Procedures**

18            **1.    Intake Process**

19       Under the Consent Decree, the County will require, as part of the County Jails'

20  intake process, that a licensed registered nurse or medical provider:  (1) screens each

21  inmate for a Mobility Disability using an agreed-upon screening tool; (2) provides

22  reasonable modifications that are necessary and available and/or Mobility Devices to the

23  inmate, subject to some limitations; (3) documents the results of the screening in the ADA

24  Tracking System; and (4) informs inmates of their right to request a physical examination

25

26  [3] This summary of the proposed terms of the settlement is qualified in its entirety by the references to the terms provisions in the proposed Consent Decree (which includes a

27  Remedial Plan).  In the event of any inconsistencies between the terms and provisions of the Consent Decree and the summary set forth herein, the terms and provisions of the

28  Consent Decree shall govern.

[3212510.11]

by a Medical Provider to the extent that the inmate disagrees with the results of his screening and/or reasonable modifications provided.  Consent Decree, Ex. A ("Remedial Plan") § II.

### 2.    Verification of Mobility Disability and Need for Reasonable Modifications

Pursuant to the Consent Decree, the ADA Unit will review and document whether an inmate has a Mobility Disability and/or what reasonable modifications or Mobility Devices are necessary within seven (7) days of a triggering event, which are outlined in the Remedial Plan.  Remedial Plan § III(D).  In some cases, the ADA Unit may refer the inmate to a Medical Provider, who shall also review and document whether an inmate has a Mobility Disability and requires a reasonable modification or Mobility Device.  *Id.* § III(E).  The County will generally issue County-owned Mobility Devices, though in some instances the inmate may keep his/her Personal Mobility Device, subject to a safety inspection.  *Id.* § III(A)-(C).

### 3.    Issuance, Retention, Maintenance and Denial of Mobility Device(s)

The County agrees to maintain a reasonable supply of Standard Mobility Devices and to inspect them on a quarterly basis.  Remedial Plan § IV(B).  Motorized Mobility Devices are generally prohibited in the Jails, but may be issued in exceptional circumstances.  *Id.* § IV(C).  Mobility Devices shall generally be issued within four (4) hours of request, absent extenuating circumstances.  *Id.* § IV(C).  The County will provide the inmate with a temporary reasonable modification to the extent necessary.  *Id.* § IV(C)(2).  The County also generally agrees to maintain, repair or replace an inmate's Mobility Device if necessary.  *Id.* § IV(E).  The County shall permit inmates to keep a Mobility Device unless a Captain or Watch Commander determines and documents, based on a Safety-Security Assessment, that a Mobility Device constitutes an immediate risk of bodily harm to inmates or staff, or threatens the security of the Jail facility, in which case the County will reevaluate the inmate on an ongoing basis to determine when they may

[3212510.11]

safely possess the Mobility Device.  *Id.* § IV(F).

### 4. Classification and Housing of Mobility-Disabled Inmates

The County further agrees to house inmates identified as having a Mobility Disability in housing that is consistent with their security classification and their accessibility needs.  Remedial Plan § V.  The need for a Mobility Device in a housing unit shall not be a basis for assignment to the infirmary, a medical unit, or a mental health housing unit.  *Id.* §V(B).  Whether an inmate has a Mobility Disability and/or requires reasonable modifications for his or her disability (including the provision of Mobility Devices) shall not be a factor in determining an inmate's security classification.  *Id.* § V(C).

### 5. Tracking Inmates with Mobility Disabilities

The County agrees to implement an ADA Tracking System to document and share internally information regarding inmates with a Mobility Disability.  Remedial Plan § VI(A).  The ADA Tracking System shall identify and track all inmates with a Mobility Disability.  *Id.* § VI(B).  It will also track all programs, services, and reasonable modifica-tions offered to an inmate with a Mobility Disability throughout his/her incarceration.  *Id.* § VI(C).  The County will designate and train staff who shall be responsible for using the ADA Tracking System.  *Id.* §§ VI(D), (I).  The County shall, at least once a week, provide housing unit, education, and program office staff with a written report listing all inmates with a Mobility Disability in the relevant unit or program, as well as those inmates needing reasonable modifications for a Mobility Disability, and will also inform appropriate staff in writing whenever an inmate with a Mobility Disability is assigned to the unit or program.  *Id.* § VI(H).

### 6. Programs and Services

The County agrees to ensure that inmates with a Mobility Disability have equal access to all inmate programs and services for which an inmate would be eligible but for his or her Mobility Disability on a space-available basis, consistent with the inmate's security classification.  Remedial Plan § VII(B).  The County agrees to provide reasonable

[3212510.11]

modifications to allow the participation of an inmate with a Mobility Disability, subject to some limitations. *Id.* § VII(C)-(F). In order to address program accessibility, the County agrees to provide programming and services in the areas designated in the Construction Plan until the portions of the Construction Plan providing accessibility to programs and services are completed. *Id.* § VII(G)(2). As an alternative to providing programming and services in areas designated in the Construction Plan, the County may utilize nonstructural methods to provide accessibility to programs and services, as well as other interim measures. *Id.* § VII(G)(3)-(5). If an inmate with a Mobility Disability requires transportation in a vehicle—e.g., to court or a medical appointment at an outside facility—the vehicle used to transport the inmate must be ADA Accessible. *Id.* § VII(H). The County shall maintain ADA Accessible facilities in operable working condition. *Id.* § VII (G)(6).

### 7. Policy Review and Revisions

The County agrees to review and revise as needed all policies, procedures, Post Orders, and forms, including those for Adult Custody Health Services, and the Inmate Orientation book, consistent with the provisions in the Remedial Plan and shall train relevant Staff on new or revised policies. Remedial Plan § VIII. Plaintiffs' Counsel shall be provided the opportunity to comment on these documents. *Id.* § VII(B).

### 8. ADA Coordinator

The County has appointed a full-time ADA Coordinator, a lieutenant who reports directly to the Assistant Sheriff and who oversees all issues related to inmates with a Mobility Disability. Remedial Plan § IX(A). As soon as practicable, but no more than ninety (90) days after an inmate has been identified as having a Mobility Disability, the ADA Coordinator and/or her or his staff will personally meet with each new inmate housed in the Jail who is identified as having a Mobility Disability and shall continue to meet with the inmate at least once every six (6) months until the inmate is released. *Id.* § IX(C). The ADA Coordinator is charged with facilitating ADA Mobility Disability-related training to Custody Staff and Adult Custody Health Services Staff, and with monitoring programs and work assignments to ensure meaningful access for all inmates

1  with a Mobility Disability.  *Id.* § IX(D).

2        **9.      Training**

3        Within six (6) months of the finalization of the revised policies and procedures, the

4  Parties will select a mutually agreed upon trainer to develop a curriculum and train

5  Custody and Adult Custody Health Services Staff on the revised policies and procedures.

6  Remedial Plan § X(B)(1).  The trainer shall train 90 percent of Custody and Custody

7  Health Services Staff within nine months of the trainer's preparedness to conduct the

8  training and shall prioritize critical staff, such as the ADA Coordinator, ADA Unit, Intake

9  Staff, and Medical Providers shall be prioritized for training during the first three months.

10  *Id.* § X(B)(2)

11        The County agrees to provide eight hours of ADA training to all DOC Academy

12  classes.  *Id.* § X(C)(1).  After completion of the training, the County will provide a biennial

13  training by a mutually agreed upon trainer to train Custody and Adult Custody Health

14  Services Staff.  *Id.* § X(C)(2).  The County may engage a consultant to provide one 24-

15  hour Train the Trainer ("T4T") ADA training to prepare the County to take over the

16  responsibility of providing ongoing ADA training and the responsibility of providing

17  biennial refresher training.  *Id.* § X(D).  The appropriate length, format, and method of the

18  training for Staff, including different types of Staff, will be developed in consultation with

19  Plaintiffs' counsel.  *Id.* § X(E).  Plaintiffs' Counsel shall have the right to comment on all

20  the above-listed training modules in advance of their roll-out and to observe any of the

21  aforementioned trainings upon request. *Id.*

22        **10.     Facility Modifications and Adjustments**

23        The County agrees to make specific locations and fixtures of the County Jails,

24  including the Main Jail, Elmwood, and Elmwood Women's facilities, ADA Accessible as

25  outlined in detail in Section XI of the Remedial Plan.  The County intends to build a new

26  jail, which will be constructed in accordance with all applicable construction requirements

27  under the ADA, Rehabilitation Act, and California Government Code Section 11135.

28  Remedial Plan § XI(B).  If the County determines it will not build the new jail, the parties

will meet and confer within thirty (30) days of such determination to discuss any additional construction that may be necessary at the County Jails to meet the needs of inmates with Mobility Disabilities. *Id.* § XI(A)(2).

### 11.   Self-Monitoring

The County agrees to develop a Monitoring Plan to ensure effective internal oversight and accountability procedures to comply with the non-construction related portions of this Consent Decree and Plaintiffs' Counsel will be provided the opportunity to comment on the internal Monitoring Plan. Remedial Plan, § XII(A). The County will develop a construction schedule for the Construction Plan and Plaintiffs' Counsel will be provided with an opportunity to comment on the plan. *Id.* § XII(B).

### 12.   Grievance and ADA Request System

The County agrees to provide and maintain an inmate grievance system that provides for prompt and equitable resolution of complaints by inmates with a Mobility Disability alleging disability-related violations. Remedial Plan § XIII(B)(1). The County will also provide and maintain a readily available mechanism for inmates to make a request for reasonable modifications independent of the grievance system ("ADA Request"). *Id.* § XIII(A)(1). The County agrees to conduct an expedited review of urgent ADA Requests and grievances that, if true, would subject the inmate to a substantial risk of injury or other harm. *Id.* § XIII(C).

### C.   Monitoring

#### 1.   Monitoring by Plaintiffs

The County will permit Plaintiffs' Counsel reasonable access to tour the Jail facilities, interview staff and inmates, and observe practices related to the County's compliance with the provisions of the Consent Decree. Consent Decree § V(A)(1)(a). Plaintiffs' Counsel's tours will not exceed more than three (3) tours annually and Plaintiffs' Counsel will provide Defendants with a written report after each tour. *Id.* § V(A)(1)(b)-(c).

Throughout the term of the settlement, the County shall provide Plaintiffs' Counsel

9

with access to records, reports, and documents that the parties agree are necessary to evaluate the County's ongoing compliance with the Remedial Plan. *Id.* § V(A)(2). The County will also provide to Plaintiffs' Counsel monthly reporting from the ADA Tracking System, triannual reporting of all ADA-related grievances, and triannual reporting of all ADA-related Inmate Request Forms. *Id.* § V(A)(3).

### 2.    Monitoring by Neutral Operational and Architectural Monitors

The parties will jointly agree upon an Operational Monitor, who will monitor the County's compliance with the operational aspects of the Remedial Plan for the Term of the Consent Decree. Consent Decree § V(B)(1)-(3). The Operational Monitor will conduct two tours within the first year of the Execution Date of the Consent Decree and thereafter conduct biannual tours and program reviews, except that the Operational Monitor may conduct up to three tours of the New Jail, when it is built. *Id.* §§ V(B)(4), (8). Following each tour, the Operational Monitor will prepare a written report for review and comment. *Id.* § V(B)(6)-(7). Plaintiffs' Counsel may accompany the Operational Monitor on these tours. *Id.* § V(B)(4).

The parties will jointly agree upon an Architectural Monitor who will monitor the County's compliance with the physical access portion of the Remedial Plan in the context of construction and/or alterations to the Jails for the duration of the Term of the Consent Decree. *Id.* § V(C)(1)-(3). The Architectural Monitor will conduct periodic site visits to review completed architectural projects, including the New Jail, and will produce a written report for review and comment after each visit. *Id.* § V(C)(8)-(9). Plaintiffs' Counsel may accompany the Architectural Monitor on these visits. *Id.* § V(C)(8).

### D.    Term of Consent Decree

The Parties agree that this Consent Decree, and all of its terms, will expire, and will no longer be enforced or enforceable in any court, twelve (12) months after the certificate of occupancy for the New Jail has been issued. Consent Decree § VIII(A). Defendants have agreed to not seek to terminate the Consent Decree before the completion of the Term and Plaintiffs have agreed not to seek to extend the Term. *Id.* § VIII(B). The Term shall

10

1   not be extended unless both parties jointly agree that ongoing violations remain at the end

2   of the Term and that extension of the Term is the most efficient means to address such

3   violations.  *Id.* § VIII(C).

4         **E.**     **Dispute Resolution and Reservation of Jurisdiction and Enforcement**

5         The parties have agreed to a detailed dispute resolution process that requires the

6   parties to meet and confer in good faith to attempt to resolve disputes and allows for the

7   involvement of experts and a mediation before Magistrate Judge Cousins, if necessary.

8   Consent Decree § VII.  If the dispute cannot be resolved through the meet and confer

9   process and/or the mediation process, the parties agree that remaining disputes will heard

10   and decided by Magistrate Judge Cousins, subject to the provisions of Federal Rule of

11   Civil Procedure 72, and that any relief arising from such disputes is bounded by and

12   subject to the limitations and terms of the Consent Decree.  *Id.* §§ VII(B), IX(B).  The

13   Consent Decree provides for an expedited dispute resolution process in case of an

14   emergency that poses an immediate and significant threat to the health and safety of

15   inmates and also provides for an expedited process during the last nine (9) months of the

16   Term.  *Id.* § VII(C)-(D).  Enforcement of the proposed Consent Decree will be subject to

17   the continuing jurisdiction of this Court throughout the Term of the Consent Decree.  *Id.*

18   § IX(A).

19         **F.**     **The Release of Claims and Dismissal of Actions**

20         In exchange for the injunctive relief proposed in the Consent Decree, Plaintiffs have

21   agreed to release any and all injunctive and declaratory relief claims raised in the action, or

22   that could have been raised in the action, relating to inmates with Mobility Disabilities.

23   Consent Decree § X.  However, the release does not apply to claims relating to

24   enforcement of the Consent Decree.  *Id.*  Additionally, nothing in the Consent Decree

25   releases any damages claims to which the Plaintiffs or other individual members of the

26   Plaintiff class may be entitled.  *Id.*

27         **G.**     **Attorneys' Fees, Costs, and Expenses**

28         The County has agreed to pay Plaintiffs' Counsel a fixed sum of $1 million to cover

[3212510.11]

1  and fully resolve any and all of Plaintiffs' and Plaintiffs' Counsels' claims against the

2  County for attorney's fees and costs incurred or attributable to any and all work from any

3  time prior to the filing of this action, up through and including the Effective Date of the

4  Consent Decree.  Consent Decree § VI(A).  This amount is less than Class Counsel's

5  lodestar, which included over 2800 hours of work, and includes payment of $12,894.23 in

6  costs and expenses.  The County has also agreed to pay a fixed sum of $2.2 million to

7  cover and fully resolve any and all of Plaintiffs' and Plaintiffs' Counsels' claims against

8  the County for attorney's fees and costs incurred or attributable to any and all work

9  performed by anyone from the Effective Date of this Consent Decree up through and

10  including the end of the Term of the Consent Decree.  *Id.* § VI(B).

11  **IV.    LEGAL ARGUMENT**

12       **A.    Class Certification Has Already Been Granted and Remains Appropriate.**

13

14       On February 6, 2018, the Court found the requirements of Rules 23(a) and 23(b)(2)

15  satisfied and certified a class consisting of "All individuals with mobility disabilities who

16  are now, or will be in the future, incarcerated in the Santa Clara County Jails, which

17  consist of three facilities:  (1) the Santa Clara County Main Jail Complex ("Main Jail"),

18  consisting of Main Jail North and Main Jail South, in San Jose, California; (2) facilities for

19  male inmates at the Elmwood Correctional Complex in Milpitas, California ("Elmwood");

20  and (3) the Elmwood Complex Women's Facility in Milpitas, California." (ECF No. 38.)

21       The class definition set forth in the Consent Decree has not changed in any way that

22  would impact the satisfaction of the Rule 23(a) and 23(b)(2) requirements.  The Consent

23  Decree defines the Plaintiff Class as the class of "all individuals with a Mobility Disability

24  who are now, or will be in the future, for the Term of this Consent Decree incarcerated in

25  the County Jails."  Consent Decree § II(S).  The Consent Decree further defines the term

26  "Mobility Disability" as "an impairment that affects an inmate's ability to move physically

27  and which substantially limits the inmate's ability to perform one or more major life

28  activities, including but not limited to standing, lifting, stooping, and/or ambulating."

1  Consent Decree § II(R).  This definition does not expand the class membership or legal

2  claims that this Court has previously certified.

3       The Class continues to meet the requirements of numerosity, commonality,

4  typicality, and adequacy of representation.  The Class is still comprised of thousands of

5  inmates with mobility disabilities who, like the Named Plaintiffs, have been similarly

6  subjected to the same conditions and who seek declaratory and injunctive relief consisting

7  of systemic improvements in the County Jails' programs and facilities.

8      **B.**      **The Consent Decree Is Fair and Reasonable and Should Be Granted**
         **Preliminary Approval.**

9

10       Federal Rule of Civil Procedure 23(e) conditions the settlement of any class action

11  on court approval.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998).  The

12  Ninth Circuit recognizes the "overriding public interest in settling and quieting litigation

13  … particularly … in class action suits …."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943,

14  950 (9th Cir. 1976); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.

15  1992); *see also In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("There is a

16  strong judicial policy that favors settlements, particularly where complex class action

17  litigation is concerned.").  A court may probe the parties' consensual agreement only "to

18  ensure that it is 'fair, adequate, and free from collusion.'"  *Lane v. Facebook, Inc.*, 696 F.3d

19  811, 819 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1027); *see* Fed. R. Civ. P. 23(e)(2)

20  (the court may approve settlement "only after a hearing and on finding that it is fair,

21  reasonable, and adequate.").

22       At the preliminary approval stage, the Court need only find that the proposed

23  settlement is within the range of reasonableness such that it is appropriate to disseminate

24  notice to the class and schedule a fairness hearing.  *See* Newberg on Class Actions, § 13.15

25  (5th ed. 2016) ("Newberg"); *In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d

26  1122, 1133 (N.D. Cal. 2015), *aff'd*, 869 F.3d 737 (9th Cir. 2017); *In re Celera Corp. Sec.*

27  *Litig.*, No. 5:10-cv-02604-EJD, 2015 WL 1482303, at *3 (N.D. Cal. Mar. 31, 2015).  "At

28  this point, the court's role is to determine whether the settlement terms fall within a

[3212510.11]

1  reasonable range of possible settlements, with 'proper deference to the private consensual

2  decision of the parties' to reach an agreement rather than to continue litigating." *Tadepalli*

3  *v. Uber Techs., Inc.*, No. 15-CV-04348-MEJ, 2015 WL 9196054, at *8 (N.D. Cal. Dec. 17,

4  2015) (quoting *Hanlon*, 150 F.3d at 1027).

5         To determine whether an agreement is fundamentally fair, adequate, and

6  reasonable, the Court may preview the factors that ultimately inform final approval:

7  (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of

8  further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the

9  amount offered in settlement; (5) the extent of discovery completed, and the stage of the

10 proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

11 participant; and (8) the reaction of the class members to the proposed settlement.

12 *Tadepalli*, 2015 WL 9196054 at *11.  Nevertheless, where a settlement is the product of

13 arms-length negotiations conducted by experienced class counsel, the Court begins its

14 analysis with a presumption that the settlement is fair and reasonable.  *See* 5 Newberg

15 § 13.45; *In re: Volkswagen "Clean Diesel" Mktg, Sales Practices, and Prod. Liab. Litig.*,

16 No. 2672 CRB (JSC), 2016 WL 6091259, at *10 (N.D. Cal. Oct. 18, 2016); *In re High-*

17 *Tech Employee Antitrust Litig.*, No. 11-CV-2509-LHK, 2013 WL 6328811, at *1 (N.D.

18 Cal. Oct. 30, 2013); *Tadepalli*, 2015 WL 9196054 *9.  Courts have further found an

19 absence of collusion when settlement negotiations are conducted by a third-party mediator.

20 *Ruch v. AM Retail Grp., Inc.*, No. 14-CV-05352-MEJ, 2016 WL 1161453, at *11 (N.D.

21 Cal. Mar. 24, 2016).  Thus, at this stage, so long as the settlement falls into the range of

22 possible approval—giving deference to the result of the parties' arms-length negotiations

23 and the judgment of experienced counsel following sufficient investigation—the

24 presumption applies and the settlement should be preliminarily approved.

25         Here, the Consent Decree is fundamentally fair, adequate, and reasonable.  The

26 parties reached the Consent Decree after eleven (11) formal settlement conference sessions

27 under the supervision of the Honorable Nathanael Cousins, two (2) formal mediations

28 sessions before Mr. Martin Quinn of JAMS, and numerous in-person and telephonic

1   negotiations between counsel.  Class Counsel collectively have extensive expertise in

2   complex civil litigation, in class action cases, and in litigation regarding the rights of

3   persons with disabilities and conditions of detention.  *See* ECF No. 35-2 (Declaration of

4   Lisa Ells In Support of Joint Motion for Class Certification) ¶ 9.  They have investigated

5   the factual and legal issues raised in this action and diligently negotiated Plaintiffs' claims

6   for close to three and a half years.  Declaration of Lisa Ells In Support of Preliminary

7   Approval of Class Settlement ("Ells Decl.") ¶ 3.  Counsel for the County also possesses

8   substantial experience defending their client against class actions.  Counsel on both sides

9   view this agreement as a successful compromise that will resolve class members' claims in

10   a fair and efficient manner.  *Id.*  Thus, the fact that qualified, well-informed counsel

11   endorse the Consent Decree as being fair, reasonable, and adequate weighs in favor of

12   preliminary approval.  That the Parties negotiated an agreement on the injunctive relief for

13   the benefit of the certified class, while leaving determination of Plaintiffs' claims for

14   attorney's fees and costs for later negotiation, further demonstrates the absence of any

15   collusion.

16          Further, the significant benefits that the class will enjoy under the Consent Decree,

17   considered in light of the risks of litigation, support preliminary approval.  Under the

18   Consent Decree, the County will modify its policies and its facilities to ensure that inmates

19   with a Mobility Disability are identified and tracked, provided reasonable modifications

20   like Mobility Devices, housed in accessible units, and have equal access to programs and

21   services.  The County will further appoint a full-time ADA Coordinator to oversee all

22   issues related to inmates with a Mobility Disability, and will train County staff on the

23   Americans with Disabilities Act.  The County will also create a grievance and request

24   system so that inmates with a Mobility Disability can expeditiously request reasonable

25   modifications.  Class Counsel are confident that these measures required by the Consent

26   Decree are sufficient to provide for a Jail system that, when viewed in its entirety, will be

27   readily accessible to persons with mobility impairments.  Ells Decl. ¶ 3.

28          Thus, the proposed Consent Decree will provide injunctive relief that is reasonably

calculated to effectuate the modifications necessary to make the County's Jails accessible to persons with mobility disabilities.  This is an excellent result for the class, and it is unlikely that this Court would order greater relief.  In contrast, additional litigation would involve uncertainty and delay for all parties.  Ells Decl. ¶ 3.  The extensive factual issues and novel legal issues in the case would involve extensive resources at trial, including the use of experts.  Both parties agree that the litigation risks presented by this case are significant.  Here, proceeding to trial, along with possible appeals, could delay resolution of this matter by several years.  Given the importance of the accessibility of the County's Jails to class members' lives, the difference between the possibly long delay involved in continued litigation and the immediate improvements promised by the Consent Decree is an important consideration.  The risks of continued litigation therefore weigh in favor of preliminary approval.

## C.   The Proposed Notice Satisfies Due Process and Should Be Approved.

Notice provided under Rule 23(e) must "generally describe[ ] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Lane*, 696 F.3d at 826 (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)).

The notice standard is satisfied here.  First, the proposed notice informs members of the class of the relevant aspects of the litigation and the settlement, including:  (i) a brief statement of this action, the settlement embodied and the claims released by the class; (ii) the date and time of the hearing on final approval; (iii) the deadline and process for submitting objections to the proposed Consent Decree; and (iv) the web page and mailing addresses that may be used to obtain a copy of the Consent Decree.  (*See* Ells Decl.¶ 2, Ex. 1 (Consent Decree), Exhibit B (Proposed Notice).)

Additionally, the parties have agreed to the following distribution plan, as set forth in the Consent Decree at Section IV(C):

> 1,   Within twenty-one (21) days after the Court has issued the Preliminary Approval Order, the County will cause notice of the settlement to be posted for thirty (30)

16

JOINT NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES

consecutive days in the following locations:  (1) all intake, housing, and programming units of the Jails and (2) on the television-notification system inside the Jails.

2.  Within twenty-one (21) days after the Court has issued the Preliminary Approval Order, Plaintiffs' Counsel shall post notice of the settlement on their website for thirty (30) days.

3.  All postings will be in accessible formats, and the parties will provide alternate format copies of the notice upon request.

The parties have developed this proposed distribution plan taking into account the breadth and magnitude of the class.  The notice will be translated and posted in English, Spanish, and Vietnamese. Copies of the Consent Decree will be made available in English in all intake, housing, and programming units of the Jails and will be made available upon request in Spanish and Vietnamese.  Distribution of the notice and Consent Decree through posting in English, Spanish, and Vietnamese throughout the Jails will ensure that the notice reaches the maximum number of members of the class in the most efficient and cost-effective manner.  The proposed form of notice and the proposed distribution plan will fairly apprise members of the class of the settlement and their options with respect thereto, and fully satisfy due process requirements for a Rule 23(b)(2) class with no opt-out rights.  The Court should approve the proposed notice and direct that it be distributed.

**D.  The Court Should Approve the Proposed Scheduling Order, Including Setting a Date for the Fairness Hearing.**

Once a court grants preliminary approval and notice is provided, the court conducts a "fairness hearing," at which all interested parties have an opportunity to be heard.  At such a hearing, the court conducts a substantive evaluation of the proposed settlement to determine whether it is "fundamentally fair, adequate, and reasonable." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016).

/ / /

/ / /

1    The parties propose the following schedule:

| Event | Date |
|-------|------|
| County to provide notice as per CAFA requirements (28 U.S.C. § 1715(b)) | Within 10 days after filing of preliminary approval |
| Posting of Settlement Notice in English, Spanish, and Vietnamese and Consent Decree in English in a binder in all intake, housing, and programming units of the Jails | Within 21 days after entry of order granting preliminary approval |
| Creation of webpage by Class Counsel electronically publishing notice | Within 21 days after entry of order granting preliminary approval |
| Deadline for objections by class members | Within 45 days after posting notice at Jails and on Class Counsel webpage |
| Deadline for Class Counsel and/or the County to respond to any timely-filed objections | 5 days before Final Approval Hearing |
| Final Approval Hearing | To be determined by the Court |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

JOINT NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

[3212510.11]

1

## V.   CONCLUSION

For the foregoing reasons, the parties respectfully request that this Court:  (1) grant preliminary approval of the Consent Decree; (2) approve and direct the publication of the class notice proposed by the parties; and (3) schedule a fairness hearing for final approval of the Consent Decree.  Pursuant to Local Rule 5-1(i)(3) concurrence in the filing of this document has been obtained from each of the signatories below.

DATED: November 13, 2018          Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By:  */s/ Lisa Ells*
     Lisa Ells

DATED: November 13, 2018          DISABILITY RIGHTS ADVOCATES

By:  */s/ Michelle Iorio*
     Michelle Iorio

Attorneys for Plaintiffs

DATED:  November 13, 2018         JAMES R. WILLIAMS
                                  County Counsel

By:  */s/ Aryn Paige Harris*
     Aryn Paige Harris
     Deputy County Counsel

Attorneys for Defendant

[3212510.11]