GAY C. GRUNFELD – 121944
LISA ELLS – 243657
KARA JANSSEN – 274762
MARC SHINN KRANTZ – 312968
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone:   (415) 433-6830
Facsimile:   (415) 433-7104

MICHELLE IORIO – 298252
DISABILITY RIGHTS ADVOCATES
2001 Center Street, Fourth Floor
Berkeley, California 94704
Telephone:   (510) 665-8644
Facsimile:   (510) 665-8511
TTY:  (510) 665-8716

*Attorneys for Plaintiffs*

JAMES R. WILLIAMS – 271253
  County Counsel
DOUGLAS M. PRESS – 168740
  Assistant County Counsel
ARYN PAIGE HARRIS – 208590
  Deputy County Counsel
EMILY L. FEDMAN – 264973
  Deputy County Counsel
OFFICE OF THE COUNTY COUNSEL
70 West Hedding Street
East Wing, Ninth Floor
San Jose, California 95110-1770
Telephone: (408) 299-5900
Facsimile: (408) 292-7240

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| DAVID COLE, LEROY BENJAMIN, ERASMO FLORES, JR., ROBERT PHILLIPS and BRANDON WILLIAMS, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>COUNTY OF SANTA CLARA, a public entity, COUNTY OF SANTA CLARA DEPARTMENT OF CORRECTION, a public entity under the control of the County of Santa Clara, the COUNTY OF SANTA CLARA OFFICE OF THE SHERIFF, a public entity under the control of the County of Santa Clara, and DOES 1 to 20, inclusive,<br><br>    Defendants. | Case No. 5:16-cv-06594-LHK<br><br>**JOINT NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:  Hon. Lucy H. Koh<br>Date:   March 21, 2019<br>Time:   1:30<br>Crtrm.: 8, 4th Floor<br><br>Trial Date:   None Set |

[3335740.7]

Case No. 5:16-cv-06594-LHK
JOINT NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

I. INTRODUCTION ........................................................................................................ 1

II. STATEMENT OF FACTS ........................................................................................... 2

    A. Procedural Background ................................................................................... 2

    B. Summary of Proposed Consent Decree. .......................................................... 5

        1. Greater Identification, Tracking, and Accommodation of Inmates with Mobility Disabilities. .................................................... 5

        2. Improved Access to Programs and Services for Inmates with Mobility Disabilities and Structural Changes to Jail Facilities. ........... 6

        3. Enhanced ADA Training, Staffing, and Response to ADA-Related Grievances or Requests. ........................................................ 6

        4. Enforcement, Monitoring and Dispute Resolution for Term of Consent Decree. ............................................................................... 7

        5. Releases. ................................................................................................ 8

        6. Attorneys' Fees. .................................................................................... 8

III. LEGAL ARGUMENT .................................................................................................. 9

    A. Legal Standard for Settlement of a Class Action. ........................................... 9

    B. The Consent Decree Is Fair, Reasonable, and Adequate, and Should Be Granted Final Approval. ............................................................................ 10

        1. The Benefits to the Class are Significant in Light of the Strength of the Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Future Litigation. ..................... 10

        2. The Settlement is Fair, Adequate, and Reasonable in Light of the Discovery Completed and the Stage of the Proceedings. ............. 12

        3. Experienced Counsel Endorse the Consent Decree. .......................... 13

        4. The Consent Decree Is the Product of Good Faith, Arms-Length Negotiations. .......................................................................... 13

IV. CONCLUSION ........................................................................................................... 15

i                                         Case No. 5:16-cv-06594-LHK
JOINT NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

[3335740.7]

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Chun-Hoon v. McKee Foods Corp.*,
716 F. Supp. 2d 848 (N.D. Cal. 2010) ............................................................... 12, 14

*Churchill Vill. L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ..................................................................................... 10

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ................................................................................... 10

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)) ............................................................................. 9, 10

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018) ........................................................................ 10, 14

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ..................................................................................... 13

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000 ....................................................................................... 12

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................... 10

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ....................................................................................... 13

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) ................................................................................... 10

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ....................................................................................... 9

*Officers for Justice v. Civil Serv. Comm'n of S.F.*,
688 F.2d 615 (9th Cir. 1982) ..................................................................................... 10

*Rodriguez v. West Publ'g. Corp.*,
563 F.3d 948 (9th Cir. 2009) ..................................................................................... 10

*Satchell v. Fed. Express Corp.*,
No. C 03 2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ........................... 14

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976) ..................................................................................... 10

OTHER AUTHORITIES

28 United States Code § 3626 .................................................................................................. 4

ii  Case No. 5:16-cv-06594-LHK
JOINT NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

[3335740.7]

1 | 29 United States Code. § 794 ............................................................................................. 2, 6
2 | 42 United States Code § 12101 ........................................................................................ passim
3 | California Government Code § 11135 ..................................................................................... 2
4 | Class Action Fairness Act of 2005 ............................................................................................ 4
5 | Federal Rule of Civil Procedure 23(a) ...................................................................................... 3
6 | Federal Rule of Civil Procedure 23(b)(2) ................................................................................. 3
7 | Federal Rule of Civil Procedure 23(e) ........................................................................... 9, 10, 15
8 | Manual on Complex Litigation § 21.632 (4th ed. 2004) .......................................................... 9
9 | Manual on Complex Litigation § 21.633 (4th ed. 2004) .......................................................... 9
10 | Manual on Complex Litigation § 21.634 (4th ed. 2004) .......................................................... 9
11 | Newberg on Class Actions § 13:39 (5th ed.) ............................................................................ 9

iii   Case No. 5:16-cv-06594-LHK
JOINT NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

[3335740.7]

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on March 21, 2019, at 1:30 p.m., or as soon thereafter as the matter may be heard, Plaintiffs David Cole, Leroy Benjamin, Erasmo Flores, Jr., Robert Phillips, and Brandon Williams ("Plaintiffs") and Defendant County of Santa Clara ("Defendant" erroneously sued herein as County of Santa Clara Department of Correction, and the County of Santa Clara Office of the Sheriff) (collectively, "the Parties") do jointly move the Court for entry of an Order granting final approval of the proposed class settlement agreement ("the Consent Decree") submitted herewith as Exhibit 1 to the Declaration of Lisa Ells In Support of Joint Motion for Final Approval ("Ells Decl.").

Plaintiffs respectfully request that the Court enter the attached proposed order (1) finding the proposed Consent Decree's terms and conditions are fair, adequate, and reasonable; and (2) approving the Consent Decree.

This Motion is based on this Notice of Motion; the Memorandum of Points and Authorities filed herewith; the supporting declaration of Lisa Ells and the exhibits thereto; the pleadings and orders on file in this matter; and any oral argument or evidence permitted at any hearings on this Motion.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The proposed settlement (the "Consent Decree") provides injunctive relief to the certified class of all inmates with Mobility Disabilities[1] who are now, or will be in the future, incarcerated at the Santa Clara County Jails, while eliminating the risk of duplicative litigation. The Consent Decree requires the County of Santa Clara (the "County") to modify its policies, procedures, and facilities to accommodate the needs of inmates with Mobility Disabilities. It includes effective mechanisms for reporting,

---

[1] Unless defined herein, all capitalized terms have the definition given to them in the Consent Decree.

monitoring, and dispute resolution.  Plaintiffs will monitor the County's compliance throughout the Term of the Consent Decree, which will terminate, unless the Parties jointly agree to extend, twelve (12) months after the certificate of occupancy has been issued for the County's planned New Jail and the County has begun placement of inmates in the New Jail.

The Parties agreed upon the Consent Decree after extensive arm's-length negotiations over several years, including eleven (11) formal mediation sessions under the supervision of Honorable Magistrate Judge Nathanael Cousins, two additional mediation sessions before Mr. Martin Quinn of JAMS, and numerous in-person and telephonic negotiations among counsel.

The proposed Consent Decree is fair, adequate, and reasonable, and is the product of serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel.  It satisfies all the criteria for final approval under Rule 23 of the Federal Rules of Civil Procedure.  Accordingly, the Parties ask that the Court find the Consent Decree to be fair, adequate, and reasonable, and grant final approval.

## II.     STATEMENT OF FACTS

### A.     Procedural Background

Plaintiffs, on behalf of themselves and all others similarly situated, filed this action on November 14, 2016, alleging claims for injunctive and declaratory relief under the Americans with Disabilities Act (42 U.S.C. § 12101, *et seq.*) ("ADA"); Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794, *et seq.*) ("Rehabilitation Act"); and California Government Code § 11135, *et seq.*  (Dkt. No. 1).  The Plaintiffs and the Class are represented by Disability Rights Advocates ("DRA") and Rosen Bien Galvan & Grunfeld LLP ("RBGG") (collectively, "Class Counsel" or "Plaintiffs' Counsel").

Prior to the initiation of this lawsuit, the Parties engaged in extensive formal negotiations for approximately 18 months in an ultimately unsuccessful effort to resolve the issues without litigation.  Declaration of Lisa Ells In Support of Joint Motion for Final Approval ("Ells Decl.") ¶ 3.  After filing of the complaint, the Parties continued settlement

2   Case No. 5:16-cv-06594-LHK
JOINT NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

[3335740.7]

efforts through the Court's General Order 56 process, which governs suits, including this one, alleging claims under the ADA. Ells Decl. ¶¶ 4-6. General Order 56 also stays all discovery and motion practice through conclusion of the Order's mandatory settlement process, absent relief via administrative motion.

      The Parties jointly filed an administrative motion for relief from General Order 56 on January 23, 2018, in order to permit filing of the Parties' joint stipulated motion for class certification pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, which the Court granted on February 6, 2018. (Dkt. Nos. 34, 37, 38). In granting the Parties' motion, the Court certified a class consisting of "All individuals with mobility disabilities who are now, or will be in the future, incarcerated in the Santa Clara County Jails, which consist of three facilities: (1) the Santa Clara County Main Jail Complex ('Main Jail'), consisting of Main Jail North and Main Jail South, in San Jose, California; (2) facilities for male inmates at the Elmwood Correctional Complex in Milpitas, California ('Elmwood'); and (3) the Elmwood Complex Women's Facility in Milpitas, California" (the "Plaintiff Class" or "the Class"). (Dkt. No. 38).

      As part of the General Order 56 process, the Parties completed early site tours of the County Jails and participated in extensive good-faith settlement negotiations, commencing in August 2017, under the supervision of the Honorable Magistrate Judge Nathanael Cousins. Ells Decl. ¶¶ 4-5. In total, the Parties conducted eleven (11) settlement conferences before Judge Cousins, in addition to multiple face-to-face and telephonic negotiation meetings. *Id.* ¶ 5. The Parties further participated in two additional in-person mediations before Mr. Martin Quinn of JAMS to resolve the issue of attorneys' fees and costs, including attorneys' fees and costs for work performed to date and for work required to implement and monitor the Consent Decree. *Id.* ¶ 6. These negotiations were time- and resource-intensive for both Parties, but were necessary to the Parties' ultimately successful resolution of this action. *Id.* ¶¶ 5-6.

      The Parties filed their Joint Motion for Preliminary Approval of Class Settlement on November 13, 2018, and appeared for a Preliminary Approval hearing on December 6,

3   Case No. 5:16-cv-06594-LHK
JOINT NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

[3335740.7]

2018. (Dkt. No. 70). During the hearing, the Court ordered the Parties to (1) file a declaration affirming that the County complied with the notice requirements of the Class Action Fairness Act ("CAFA") of 2005; (2) file a corrected Consent Decree that fixed a typographical error that resulted in the Consent Decree § VIII citing to 28 U.S.C. § 3626 instead of 18 U.S.C. § 3626; and (3) file a revised Notice that stated that objectors must also include their name, address, and signature in any objections. (Dkt. No. 73). In addition, the Parties stated that they wished to add language from the Northern District of California's Procedural Guidance for Class Action Settlements stating that the Court could only approve or reject the settlement, but could not change the settlement's terms. *Id.*

On December 6, 2018, the County filed a declaration affirming that it provided the requisite CAFA notice. (Dkt. No. 71). On December 7, 2018, Plaintiffs filed a declaration that attached as Exhibit 1 a corrected version of the Consent Decree that fixed the typographical error (the "corrected Consent Decree"). (Dkt. No. 72, Ex. 1). Additionally, the corrected Consent Decree included as Exhibit B the revised Notice that (1) updated the original proposed Notice to require that objectors include their name, address, and signature in any objections, and (2) added language that the Court may only approve or deny the Consent Decree, but cannot change the terms of the Consent Decree. (Dkt. No. 72, Ex. B to Ex. 1). The Court approved the corrected Consent Decree and the revised Notice, and granted preliminary approval on December 7, 2018. (Dkt. No. 73[2]).

In accordance with the Court's scheduling order filed December 7, 2018, the Parties have until January 22, 2019 to distribute the Notice to the Class. (Dkt. No. 73). Once Notice has been disseminated, Class members have until February 28, 2019 to submit objections. *Id*. The Parties must file a Reply to their Final Approval Motion, including a response to any Class members' objections, by March 14, 2019. *Id.*

---

[2] The corrected Consent Decree is attached as Exhibit 1 to the Declaration of Lisa Ells in Support of Joint Motion for Final Approval. The revised Notice is attached as Exhibit A to the corrected Consent Decree. To avoid confusion, the Parties refer to these exhibits hereafter throughout as simply the "Consent Decree" and the "Notice," respectively.

[3335740.7]

4                                              Case No. 5:16-cv-06594-LHK
JOINT NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

**B.     Summary of Proposed Consent Decree.**

The Consent Decree will provide relief to the Plaintiff Class through implementation of the following negotiated and agreed-upon terms.[3]

### 1.     Greater Identification, Tracking, and Accommodation of Inmates with Mobility Disabilities.

Under the Consent Decree, the County will require, as part of the County Jails' intake process, that a licensed registered nurse or medical provider: (1) screens each inmate for a Mobility Disability; (2) provides reasonable modifications and/or Mobility Devices to the inmate; (3) documents the results of the screening in the ADA Tracking System; and (4) informs inmates of their right to request a physical examination by a Medical Provider to the extent that the inmate disagrees with the results of his screening and/or reasonable modifications provided.  Ells Decl., Ex. 1 ("Consent Decree"), Ex. A ("Remedial Plan") § II.  The County agrees to implement the ADA Tracking System to document and share internally information regarding each inmate with a Mobility Disability, including all programs, services, and reasonable modifications offered throughout his/her incarceration.  Remedial Plan § VI(A)-(C).

The County will maintain a reasonable supply of Standard Mobility Devices, which it will inspect on a quarterly basis.  Remedial Plan § IV(B).  The County also generally agrees to maintain, repair, or replace Mobility Devices issued to inmates, if necessary.  *Id.* § IV(E).  The County shall permit inmates to keep a Mobility Device unless a Captain or Watch Commander determines and documents, based on a Safety-Security Assessment, that a Mobility Device constitutes an immediate risk of bodily harm to inmates or staff, or threatens the security of the Jail facility, in which case the County will reevaluate the inmates on an ongoing basis to determine when they may safely possess the Mobility Device.  *Id.* § IV(F).

---

[3] A detailed summary of the Consent Decree is included in the Parties' Joint Motion for Preliminary Approval of Class Settlement. (Dkt. No. 66, pp. 9-17).

### 2. Improved Access to Programs and Services for Inmates with Mobility Disabilities and Structural Changes to Jail Facilities.

The County will provide reasonable modifications to ensure that inmates with a Mobility Disability have equal access to all inmate programs and services for which an inmate would be eligible but for his or her Mobility Disability on a space-available basis, consistent with the inmate's security classification. Remedial Plan § VII. The County further agrees to house inmates identified as having a Mobility Disability in housing that is consistent with their security classification and accessibility needs. *Id.* § V. Whether an inmate has a Mobility Disability and/or requires reasonable modifications for his or her disability (including the provision of Mobility Devices) shall not be a factor in determining an inmate's security classification and shall not be a basis for assignment to the infirmary, a medical unit, or a mental health housing unit. *Id.* § V(B)-(C).

Further, the County will make specific locations and fixtures of the County Jails ADA Accessible as outlined in detail in Section XI of the Remedial Plan. The County plans to build a new jail (the "New Jail"), which will be constructed in accordance with all applicable construction requirements under the ADA, Rehabilitation Act, and California Government Code section 11135. Remedial Plan § XI(B).

### 3. Enhanced ADA Training, Staffing, and Response to ADA-Related Grievances or Requests.

The County has appointed a full-time ADA Coordinator, a lieutenant who reports directly to the Assistant Sheriff and who oversees all issues related to inmates with a Mobility Disability. Remedial Plan § IX(A). As soon as practicable, but no more than ninety (90) days after an inmate has been identified as having a Mobility Disability, the ADA Coordinator and/or her or his staff will personally meet with each new inmate housed in the Jail who is identified as having a Mobility Disability and shall continue to meet with the inmate at least once every six (6) months until the inmate is released. *Id.* § IX(C).

[3335740.7]

6   Case No. 5:16-cv-06594-LHK
JOINT NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES

Further, the Parties will select a mutually agreed upon trainer to develop a curriculum and train Custody and Adult Custody Health Services Staff on the policies and procedures revised as per the provisions in the Remedial Plan. Remedial Plan §§ VIII, X(B). The County will also provide eight hours of ADA training to all DOC Academy classes. *Id.* § X(C)(1). After completion of the training, the County will provide a biennial training by a mutually agreed-upon trainer to train Custody and Adult Custody Health Services Staff. *Id.* § X(C)(2).

Additionally, the County will provide and maintain (1) an inmate grievance system that delivers a prompt and equitable resolution of complaints by inmates with a Mobility Disability alleging disability-related violations, and (2) a readily available mechanism for inmates to make a request for reasonable modifications independent of the grievance system ("ADA Request"). Remedial Plan § XIII(A)-(B). The County will also conduct an expedited review of urgent ADA Requests and grievances that, if true, would subject the inmate to a substantial risk of injury or other harm. *Id.* § XIII(C).

### 4. Enforcement, Monitoring and Dispute Resolution for Term of Consent Decree.

Enforcement of the proposed Consent Decree will be subject to the continuing jurisdiction of this Court throughout the Term of the Consent Decree. Consent Decree § IX. This Consent Decree, and all of its terms, will expire, and will no longer be enforced or enforceable in any court, twelve (12) months after the certificate of occupancy for the New Jail has been issued. *Id.* § VIII.

Throughout the term of the Consent Decree, the County will permit Plaintiffs' Counsel reasonable access to tour the Jail facilities, interview staff and inmates, and observe practices related to the County's compliance with the provisions of the Consent Decree. Consent Decree § V(A)(1). Further, the County shall provide Plaintiffs' Counsel with access to records, reports, and documents – including ADA-related grievances and requests – that the Parties have agreed are necessary to evaluate the County's ongoing compliance with the Remedial Plan. *Id.* § V(A)(2)-(3).

7                                Case No. 5:16-cv-06594-LHK
JOINT NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

[3335740.7]

The Parties will also jointly agree upon an Operational Monitor, who will monitor the County's compliance with the operational aspects of the Remedial Plan for the Term of the Consent Decree, as well as on an Architectural Monitor, who will monitor the County's compliance with the physical access portion of the Remedial Plan in the context of construction and/or alterations to the Jails for the duration of the Term of the Consent Decree.  Consent Decree § V(B)-(C).  The Parties have agreed to a detailed dispute resolution process that requires the Parties to meet and confer in good faith to attempt to resolve disputes and allows for the involvement of experts and a mediation before Judge Cousins, if necessary.  *Id.* § VII.

### 5. Releases.

In exchange for the injunctive relief proposed in the Consent Decree, Plaintiffs have agreed to release any and all injunctive and declaratory relief claims raised in the action, or that could have been raised in the action, relating to inmates with Mobility Disabilities.  Consent Decree § X.  However, the release does not apply to claims relating to enforcement of the Consent Decree.  *Id.*  Additionally, nothing in the Consent Decree releases any damages claims to which the Plaintiffs or other individual members of the Class may be entitled.  *Id.*

### 6. Attorneys' Fees.

The County has agreed to pay Plaintiffs' Counsel a fixed sum of $1 million to cover and fully resolve any and all of Plaintiffs' and Plaintiffs' Counsel's claims against the County for attorneys' fees and costs incurred or attributable to any and all work from any time prior to the filing of this action, up through and including the Effective Date of the Consent Decree.  Consent Decree § VI(A).  The County has also agreed to pay a fixed sum of $2.2 million to cover and fully resolve any and all of Plaintiffs' and Plaintiffs' Counsel's claims against the County for attorneys' fees and costs incurred or attributable to any and all work performed by anyone from the Effective Date of this Consent Decree

8   Case No. 5:16-cv-06594-LHK
JOINT NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

[3335740.7]

up through and including the end of the Term of the Consent Decree. *Id.* § VI(B).[4]

## III. LEGAL ARGUMENT

### A. Legal Standard for Settlement of a Class Action.

Judicial approval of a class action settlement under Rule 23 generally involves three steps. First, at the preliminary approval hearing, the Parties "submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation." Manual on Complex Litigation § 21.632 (4th ed. 2004). Second, if preliminary approval is granted, the class representatives must disseminate notice of the proposed settlement to affected class members. *See id.* § 21.633. Third, the court conducts a final approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning fairness, adequacy, and reasonableness of the settlement are presented. *See id.* § 21.634. This procedure safeguards class members' procedural due process rights and enables the court to fulfill its role as the guardian of class interests. *See* Newberg on Class Actions § 13:39 (5th ed.).

A district court's role in reviewing the substance of the settlement is solely to ensure that it is "fair, adequate, and free from collusion." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998)). The district court should consider the settlement as a whole, rather than looking at each separate part, to determine whether the settlement is fair. *Id.* at 818-19. Further, "the question whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court." *Id.*

In determining whether the settlement is fair, adequate, and reasonable, the Court must balance several factors, including the following "*Hanlon* factors":

> the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery

---

[4] Plaintiffs file their Motion for Attorneys' Fees and Costs concurrently with this Motion.

completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026.

Although the Court must "explore[ ] comprehensively all factors," it is not required to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Rodriguez v. West Publ'g. Corp.*, 563 F.3d 948, 964 (9th Cir. 2009) (quoting *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)).

Finally, "the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008); *see, e.g.*, *Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). The Ninth Circuit recognizes "that there is an overriding public interest in settling and quieting litigation … particularly true in class action suits …." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.").

**B.   The Consent Decree Is Fair, Reasonable, and Adequate, and Should Be Granted Final Approval.**

The Parties assert that the *Hanlon* factors support final approval of the proposed Consent Decree pursuant to Rule 23(e).

**1.   The Benefits to the Class are Significant in Light of the Strength of the Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Future Litigation.**

The significant benefits that the Class will enjoy under the Consent Decree, considered in light of the risks of litigation, support final approval. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) (final approval appropriate

where litigation "would have been costly and uncertain and would have detrimentally delayed any potential relief for the Class," and where relief is "timely, certain, and meaningful…"). Under the Consent Decree, the County will modify its policies and its facilities to ensure that inmates with a Mobility Disability are identified and tracked, provided reasonable modifications like Mobility Devices, housed in accessible units, and have equal access to programs and services. The County has and will continue to appoint a full-time ADA Coordinator to oversee all issues related to inmates with a Mobility Disability, and will train County staff on the Americans with Disabilities Act. The County has and will continue to create a grievance and request system, so that inmates with a Mobility Disability can expeditiously request reasonable modifications. Class Counsel are confident that these measures required by the Consent Decree are sufficient to provide for a Jail system that, when viewed in its entirety, will be readily accessible to persons with a Mobility Disability. Ells Decl. ¶ 8. Thus, the proposed Consent Decree will provide injunctive relief that is reasonably calculated to effectuate the modifications necessary to make the County's Jails readily accessible to persons with Mobility Disabilities.

This is an excellent result for the Class. It is unlikely that pursuing additional litigation would result in greater relief, and additional litigation would involve uncertainty and delay for all parties. Ells Decl. ¶ 8. Here, proceeding to trial, along with possible appeals, could delay resolution of this matter by several years. *Id.* Moreover, the extensive factual issues and novel legal issues in the case would involve extensive resources at trial, including the use of experts. *Id.* Given the importance of the accessibility of the County's Jails to Class members' lives, the difference between the possibly long delay involved in continued litigation and the immediate improvements promised by the Consent Decree is an important consideration. The risks of continued litigation therefore weigh in favor of final approval.

/ / /

/ / /

/ / /

### 2. The Settlement is Fair, Adequate, and Reasonable in Light of the Discovery Completed and the Stage of the Proceedings.

When class counsel, as in this case, "possess a sufficient understanding of the issues involved and the strengths and weaknesses of the case," this factor weighs in favor of settlement approval. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010). "[I]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the Parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) (internal quotation marks omitted).

Here, the Parties had a strong grasp of the merits of this case before reaching agreement on the Consent Decree. Although the Parties did not conduct formal discovery or depositions, Class Counsel conducted significant factual and legal research and the Parties voluntarily exchanged pivotal information during their extensive pre- and post-suit settlement negotiations. Ells Decl. ¶¶ 2, 4. Much of Plaintiffs' case rested on allegations of affirmative evidence of discriminatory treatment, which Class Counsel collected for more than three years while closely investigating and litigating the case. *Id.* ¶ 2. Class Counsel routinely visited, spoke to, and corresponded with numerous inmates with Mobility Disabilities at the Jails who alleged discrimination, and also consulted with an architectural expert. *Id.* Additionally, throughout the course of settlement negotiations, County Counsel provided informal discovery, including documents related to Jail: (1) architectural features, (2) internal policies and practices, (3) programming and services, (4) housing arrangements, (5) daily population counts, (6) grievance procedures, and (7) inmate information and records that assisted Plaintiffs in determining proper relief to end the alleged discrimination. *Id.* ¶¶ 2, 4. As part of settlement negotiations, Class Counsel also toured each relevant Jail facility twice. *Id.* ¶ 4. These investigations and exchanges provided the Parties with sufficient facts to make an informed decision about settlement, which weighs in favor of the Court's finding that the Consent Decree is fair, reasonable, and adequate.

### 3. Experienced Counsel Endorse the Consent Decree.

The Ninth Circuit has recognized that "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Class Counsel collectively have extensive expertise in complex civil litigation, in class action cases, and in litigation regarding the rights of persons with disabilities and conditions of detention. Ells Decl. ¶¶ 8-11. Indeed, Class Counsel have successfully represented classes of persons with disabilities in several class settlements and consent decrees involving prison and jail systems. *Id.* ¶¶ 10-11. Class Counsel brought this experience to bear on developing strategy, assessing the viability of Plaintiffs' claims and pursuit of a class action, and negotiating and drafting the Consent Decree in this case. They have investigated the factual and legal issues raised in this action and diligently negotiated Plaintiffs' claims for close to three and a half years. *Id.* ¶¶ 2-7. The significant experience of Class Counsel led to an effective and comprehensive Consent Decree, and Class Counsel are well positioned to assess the adequacy and efficacy of the Consent Decree. Thus, Class Counsel's endorsement of the Consent Decree weighs in favor of a finding that it is fair, reasonable, and adequate.

Counsel for the County also possess substantial experience defending their client against class actions, and Counsel on both sides view this agreement as a successful compromise that will resolve Class members' claims in a fair and efficient manner.

Thus, the fact that qualified, well-informed counsel for both sides endorse the Consent Decree as being fair, reasonable, and adequate weighs in favor of final approval.

### 4. The Consent Decree Is the Product of Good Faith, Arms-Length Negotiations.

The Consent Decree is the result of protracted good faith, non-collusive, arms-length negotiations, and no indicia of collusion are present in this case. *See, e.g., In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (signs of

collusion include payment of excessive attorneys' fees when compared with the scope of relief and reversion of fees to defendants).

Here, after Plaintiffs' Counsel conducted a thorough investigation and sent a formal demand letter, the Parties began negotiations in April 2015 and diligently continued negotiations through September 2018. Ells Decl. ¶¶ 2-7. The Parties held multiple in-person and telephonic negotiations, and exchanged numerous redlines of the Consent Decree and the Remedial Plan, which include a detailed Jail facility modification plan and comprehensive Jail policy changes. *Id*. ¶¶ 4-5. The Parties also fully negotiated the injunctive relief for the Class outlined in the Consent Decree and Remedial Plan in its entirety prior to negotiating any aspect of attorneys' fees and costs. *Id*. ¶ 6.

Because the Consent Decree does not provide damages to the Class, and Class members do not release their damages claims, there are no concerns about improper distribution or reversion of funds. That the Parties negotiated an agreement on the injunctive relief for the benefit of the certified Class and only addressed Plaintiffs' claims for attorneys' fees and costs in separate negotiations after the injunctive relief was agreed upon further demonstrates the absence of any collusion.

Moreover, courts in this district have found an absence of collusion when settlement negotiations are conducted by a third-party mediator. *See, e.g., Anthem,* 327 F.R.D. at 327 ("Courts in this district have recognized that the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (internal quotation marks omitted); *Satchell v. Fed. Express Corp.*, No. C 03 2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.); *see also Chun-Hoon*, 716 F. Supp. 2d at 852. Here, the Parties developed much of the framework for the Consent Decree with the assistance of Honorable Magistrate Judge Nathanael Cousins. Ells Decl. ¶¶ 4-5. The Parties reached agreement on the non-monetary terms of the Consent Decree over eleven (11) formal settlement conference sessions overseen by Judge Cousins; after the non-monetary portions of the Consent Decree were finalized, the parties then engaged in

14   Case No. 5:16-cv-06594-LHK
JOINT NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

[3335740.7]

two (2) additional formal mediation sessions before Mr. Martin Quinn of JAMS to settle the attorneys' fees and costs, resulting in the holistic settlement before the Court. *Id*. ¶¶ 5-6. The arms'-length, non-collusive negotiations, facilitated by experienced mediators, weigh in favor of the Court's finding that the Consent Decree is fair, reasonable, and adequate.

## IV.  CONCLUSION

For the foregoing reasons, the Parties respectfully request that this Court enter an order granting final approval of the Consent Decree pursuant to Federal Rule of Civil Procedure 23(e). Pursuant to Local Rule 5-1(i)(3), concurrence in the filing of this document has been obtained from each of the signatories below.

DATED: January 14, 2019           Respectfully submitted,

                                  ROSEN BIEN GALVAN & GRUNFELD LLP

                                  By: */s/ Lisa Ells*
                                      Lisa Ells

DATED: January 14, 2019           DISABILITY RIGHTS ADVOCATES

                                  By: */s/ Michelle Iorio*
                                      Michelle Iorio

                                  Attorneys for Plaintiffs

DATED:  January 14, 2019          JAMES R. WILLIAMS
                                  County Counsel

                                  By: */s/ Aryn Paige Harris*
                                      Aryn Paige Harris
                                      Assistant County Counsel

                                  Attorneys for Defendant

[3335740.7]

15                                     Case No. 5:16-cv-06594-LHK
JOINT NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES