GAY CROSTHWAIT GRUNFELD – 121944
LISA ELLS – 243657
KARA J. JANSSEN – 274762
MARC J. SHINN-KRANTZ – 312968
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:     (415) 433-6830
Facsimile:     (415) 433-7104
Email: lells@rbgg.com

MICHELLE IORIO – 298252
DISABILITY RIGHTS ADVOCATES
2001 Center Street, Fourth Floor
Berkeley, California  94704
Telephone:     (510) 665-8644
Facsimile:     (510) 665-8511
TTY:          (510) 665-8716
Email:        miorio@dralegal.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| DAVID COLE, LEROY BENJAMIN, ERASMO FLORES, JR., ROBERT PHILLIPS and BRANDON WILLIAMS, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>COUNTY OF SANTA CLARA, a public entity, COUNTY OF SANTA CLARA DEPARTMENT OF CORRECTION, a public entity under the control of the County of Santa Clara, the COUNTY OF SANTA CLARA OFFICE OF THE SHERIFF, a public entity under the control of the County of Santa Clara, and DOES 1 to 20, inclusive,<br><br>                    Defendants. | Case No. 5:16-cv-06594-LHK<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FEES AND COSTS**<br><br>Judge:   Hon. Lucy H. Koh<br>Date:    March 21, 2019<br>Time:    1:30<br>Crtrm.:  8, 4th Floor<br><br>Trial Date:      None Set |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ...................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .........................................................1

INTRODUCTION ...................................................................................................................1

ARGUMENT ..........................................................................................................................3

I.     PLAINTIFFS ARE ENTITLED TO ATTORNEYS' FEES AND EXPENSES UNDER FEDERAL AND STATE LAW AND PURSUANT TO THE CONSENT DECREE ......................................................................................................................3

II.    THE REQUESTED AWARD IS WARRANTED BY PLAINTIFFS' COUNSEL'S SUBSTANTIAL EFFORT AND THE EXCEPTIONAL RESULTS EMBODIED IN THE CONSENT DECREE .....................................................................................6

     A.    The Time Spent By Plaintiffs' Counsel Was Reasonable and Plaintiffs Have Exercised Appropriate Billing Judgment .................................................8

     B.    Plaintiffs' Counsel Efficiently Staffed This Matter .................................................10

     C.    Plaintiffs' Requested Rates are Reasonable ............................................................10

          1.    Plaintiffs' Counsel are Highly Skilled and Experienced .............................11

          2.    Plaintiffs' Counsel are Entitled to Recover At Their Current Rates, Which are Commensurate With the Prevailing Market Rates in The Bay Area .......................................................................................................14

               (a)    Plaintiffs' Counsel are Entitled to Compensation at Current Rates ...............................................................................................14

               (b)    Plaintiffs' Counsel's Rates Are Commensurate with the Prevailing Market Rates in the Bay Area .......................................15

               (c)    The Paralegal Timekeepers are Similarly Entitled to Compensation at The Rates Claimed Here .......................................17

     D.    The Requested Fee is Reasonable and Appropriate Under the *Kerr* Factors ...........17

III.   PLAINTIFFS ARE ENTITLED TO FEES AND EXPENSES FOR COMPLIANCE MONITORING, AND THE NEGOTIATED SUM IS REASONABLE COMPENSATION FOR THE ROBUST MONITORING REQUIRED UNDER THE CONSENT DECREE .............................................................19

IV.   PLAINTIFFS' COUNSEL ARE ENTITLED TO RECOVER COSTS AND EXPENSES ADVANCED TO PROSECUTE THIS MATTER .......................................24

CONCLUSION ......................................................................................................................24

[3335818.7]

1

**TABLE OF AUTHORITIES**

2

**Page**

3

<u>**CASES**</u>

4

*Armstrong v. Brown,*
   732 F.3d 955 (9th Cir. 2013), *cert denied*, 134 S. Ct. 2725 (2014) ................................... 12

*Armstrong v. Brown,*
   805 F. Supp. 2d 918 (N.D. Cal. 2011) ........................................................................ 16, 17

*Armstrong v. Davis,*
   318 F.3d 965 (9th Cir. 2003) ........................................................................................... 11

*Balla v. Idaho,*
   677 F.3d 910 (9th Cir. 2012) ........................................................................................... 19

*Barrios v. Cal. Interscholastic Fed'n,*
   277 F.3d 1128 (9th Cir. 2002) ........................................................................................... 4

*Blackwell v. Foley,*
   724 F. Supp. 2d 1068 (N.D. Cal. 2010) ......................................................................... 4, 5

*Bouman v. Block,*
   940 F.2d 1211 (9th Cir. 1991) ......................................................................................... 15

*Brown v. Plata,*
   131 S. Ct. 1910 (2011) ..................................................................................................... 12

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,*
   532 U.S. 598 (2001) ........................................................................................................... 4

*Chalmers v. City of Los Angeles,*
   796 F.2d 1205 (9th Cir. 1986) ......................................................................................... 15

*Cody v. Hillard,*
   304 F.3d 767 (8th Cir. 2002) ........................................................................................... 19

*Coleman v. Brown,*
   28 F. Supp. 3d 1068 (E.D. Cal. 2014) ............................................................................ 12

*Collins v. City of Los Angeles,*
   205 Cal. App. 4th 140 (2012) ............................................................................................ 5

*Cunningham v. County of Los Angeles,*
   879 F.2d 481 (9th Cir. 1988) ........................................................................................... 18

*Davis v. City and County of San Francisco,*
   976 F.2d 1536 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th
   Cir. 1993) ................................................................................................................... 15, 18

*Gates v. Deukmejian,*
   987 F.2d 1392 (9th Cir. 1992) ......................................................................................... 15

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

[3335818.7]

*Gracie v. Gracie,*
    217 F.3d 1060 (9th Cir. 2000) ............................................................................. 6

*Harris v. Marhoefer,*
    24 F.3d 16 (9th Cir. 1994) ................................................................................. 24

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) ........................................................................................... 18

*Johnson v. City of Tulsa,*
    489 F.3d 1089 (10th Cir. 2007) ......................................................................... 19

*Keith v. Volpe*
    833 F.2d 850 (9th Cir. 1987) ............................................................................. 19

*Kerr v. Screen Extras Guild, Inc.,*
    526 F.2d 67 (9th Cir. 1975) ..................................................................... 6, 17, 18

*Ketchum v. Moses,*
    24 Cal. 4th 1122 (2001) ....................................................................................... 8

*La Asociacion Trabajadores v. City of Lake Forest,*
    624 F.3d 1083 (9th Cir. 2010) ............................................................................. 4

*Lovell v. Chandler,*
    303 F.3d 1039 (9th Cir. 2002) ........................................................................... 24

*Lucas v. White,*
    63 F. Supp. 2d 1046 (N.D. Cal. 1999) ............................................................... 20

*Missouri v. Jenkins,*
    491 U.S. 274 (1989) ........................................................................................... 17

*Moore v. James H. Matthews & Co.,*
    682 F.2d 830 (9th Cir. 1982) ............................................................................... 7

*Morales v. City of San Rafael,*
    96 F.3d 359 (9th Cir. 1996), *amended*, 108 F.3d 981 (9th Cir. 1997) ......... 6, 18

*Moreno v. City of Sacramento,*
    534 F.3d 1106 (9th Cir. 2008) ............................................................................. 6

*Norman v. Hous. Auth. of the City of Montgomery,*
    836 F.2d 1292 (11th Cir. 1988) ........................................................................... 7

*Partington v. Broyhill Furniture Indus., Inc.,*
    999 F.2d 269 (7th Cir. 1993) ............................................................................... 6

*Perdue v. Kenny A. ex rel. Winn,*
    559 U.S. 542 (2010) ......................................................................................... 6, 8

*Prison Legal News v. Schwarzenegger,*
    561 F. Supp. 2d 1095 (N.D. Cal. 2008), *aff'd* 608 F.3d 446 (9th Cir. 2010) ..... 20

[3335818.7]

*Prison Legal News v. Schwarzenegger*,
     608 F.3d 446 (9th Cir. 2010).............................................................................. 16, 19

*Richard S. v. Dep't of Developmental Servs. of State of Cal.*,
     317 F.3d 1080 (9th Cir. 2003).............................................................................. 4

*S.F. N.A.A.C.P. v. S.F. Unified Sch. Dist.*,
     284 F.3d 1163 (9th Cir. 2002).............................................................................. 19

*Sharkey v. O'Neal*,
     778 F.3d 767 (9th Cir. 2015).............................................................................. 12

*Stetson v. Grissom*,
     821 F.3d 1157 (9th Cir. 2016).............................................................................. 15

*Wallace v. Consumers Co–op of Berkeley, Inc.*,
     170 Cal. App. 3d 836 (1985).............................................................................. 18

*Woods v. Carey*,
     722 F.3d 1177 (9th Cir. 2013).............................................................................. 24


**STATUTES**

28 U.S.C. § 1920 .............................................................................................. 24

29 U.S.C. § 794a .............................................................................................. 3, 11

42 U.S.C. § 12132 .............................................................................................. 10

42 U.S.C. § 12188 .............................................................................................. 10

42 U.S.C. § 12205 .............................................................................................. 3

Cal. Code Civ. Proc. § 1021.5 .............................................................................. 3, 4, 5, 11

Cal. Gov't Code § 11135 .............................................................................................. 11

Cal. Gov't Code § 19230.............................................................................................. 5

Case No. 5:16-cv-06594-LHK

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR FEES AND COSTS

[3335818.7]

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on March 21, 2019, at 1:30 p.m., or as soon thereafter as the matter may be heard, Plaintiffs David Cole, Leroy Benjamin, Erasmo Flores, Jr., Robert Phillips, and Brandon Williams ("Plaintiffs") move the Court pursuant to Federal Rules of Civil Procedure 23(h) and 54(d) for an award of Plaintiffs' reasonable attorneys' fees and expenses consistent with the amount and procedure agreed to in the parties' Consent Decree, attached to the Declaration of Lisa Ells in support of the parties' Joint Motion for Final Approval, concurrently filed with this motion.

As agreed to in the parties' Consent Decree, Plaintiffs request (1) an award of $1 million in attorneys' fees and costs for work performed up through the effective date of the Consent Decree, and (2) an award of $2.2 million in attorneys' fees and costs for work required of Plaintiffs' counsel to negotiate changes to the County's policies and procedures and to implement and monitor the County's compliance with the Consent Decree's extensive relief during its governing term.  Defendants do not oppose this motion.

This Motion is based on this Notice of Motion; the Memorandum of Points and Authorities filed herewith; the supporting declarations of Lisa Ells, Stuart Seaborn, and Richard Pearl and the exhibits thereto; the pleadings and orders on file in this matter; and any oral argument or evidence permitted at any hearings on this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiffs' counsel seek[1] an award of attorneys' fees and expenses for Plaintiffs' counsel's work on behalf of the certified class of inmates with Mobility Disabilities[2] who are now, or will be in the future, incarcerated at the Santa Clara County Jails.  Following over three years of investiga-

---

[1] Defendant County does not oppose this motion because the Parties reached an agreement on a total settlement of $3.2 million for all attorney fees in this case.  Because the Parties reached this agreement on the total settlement sum, the County takes no position on the factual and legal representations in this motion

[2] Unless defined herein, all capitalized terms have the definition given to them in the Consent Decree.

[3335818.7]

1   tion, litigation, and extensive negotiation, including numerous formal mediations, the parties

2   reached agreement on a comprehensive Consent Decree that provides for extensive injunctive

3   relief, including significant construction to remedy physical barriers at the Jails, changes to

4   policies and procedures, and ongoing training for staff.  In compliance with the Northern District's

5   Procedural Guidance for Class Action Settlements, Plaintiffs refer the Court to the concurrently

6   filed Joint Motion for Final Approval of Class Action Settlement for a history of the litigation and

7   negotiations, and for a detailed summary of the relief contained in the Consent Decree.  Joint

8   Motion for Final Approval of Class Settlement (Dkt 74) pp. 2-9.

9          In the Consent Decree, the parties agreed that the County will pay Plaintiffs the fixed sum

10  of $1 million to cover and fully resolve any and all of Plaintiffs' claims against the County for

11  attorneys' fees and costs incurred or attributable to any and all work from any time prior to the

12  filing of the action, up through and including the Effective Date of this Consent Decree ("past

13  fees").  Dkt. No. 74-1, Ex. 1 ("Consent Decree") § VI(A).  As set forth below, Plaintiffs' lodestar

14  plus expenses for this period - $1,444,604.03 - already far exceeds the agreed-upon amount of

15  compensation for work performed through that date even without including the additional work

16  Plaintiffs' counsel will be required to perform through the Consent Decree's final approval date.

17         The parties further agreed that the County will pay the fixed sum of $2.2 million to cover

18  and fully resolve any and all of Plaintiffs' claims against the County for attorneys' fees and costs

19  incurred or attributable to any and all work[3] performed by anyone from the Effective Date of this

20  Consent Decree up through and including the end of the Term, which will last a minimum of five

21  and a half years, as defined in the Consent Decree ("future fees").  Consent Decree § VI(B).  As

22  detailed below, this amount is reasonable given the length of the term, the extensive nature of the

23  negotiated relief, the importance of monitoring in the context of a class action settlement, and

24  Plaintiffs' counsel's role in implementation and monitoring as required by the Consent Decree.

25         The attorneys' fees and expenses sought here merit this Court's approval.  Plaintiffs'

26

27  [3] The only exception to this is a narrow carve-out agreed to by the parties for certain categories of
    enforcement work that are unlikely to occur.  *See* Consent Decree §VI(B)(2).

28

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR FEES AND COSTS

[3335818.7]

counsel relied upon their specialized expertise in disability and prisoner rights class action litigation to obtain substantial and comprehensive relief for the Plaintiff Class.  The time Plaintiffs' counsel expended on this case was appropriate given the length, intensity, and nature of the litigation and negotiations.  Plaintiffs' attorneys worked on a contingent basis, receiving no compensation for years and fronting significant litigation expenses.  Had Plaintiffs not agreed to limit their recovery of fees and expenses in the Consent Decree, counsel would have sought a larger award based on their actual lodestar as well as possibly an enhancement based upon superior performance and results obtained.  Instead, Plaintiffs' counsel agreed to the fixed sum of $1 million for work performed through execution of the Consent Decree and a fixed sum of $2.2 million for work required going forward to monitor and, if necessary, enforce the County's implementation of and compliance with the Consent Decree over the course of the minimum five and a half year term.

Ultimately, Plaintiffs reached agreement on the proposed attorneys' fees award after arm's-length negotiations with a sophisticated defendant, under the supervision of a skilled JAMS mediator.  As detailed below, the negotiated amounts are reasonable and should be awarded in full.

## ARGUMENT

### I.  PLAINTIFFS ARE ENTITLED TO ATTORNEYS' FEES AND EXPENSES UNDER FEDERAL AND STATE LAW AND PURSUANT TO THE CONSENT DECREE

Plaintiffs who prevail on federal or California state disability claims, including claims under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 ("Rehabilitation Act"), may recover attorneys' fees.  42 U.S.C. § 12205; 29 U.S.C. § 794a(b); Cal. Code Civ. Proc. § 1021.5 (prevailing plaintiffs may recover attorneys' fees if case enforced an "important right affecting the public interest" and if, among other things, it resulted in a "significant benefit" to the "general public or a large class of persons").  Here, the parties have executed a legally enforceable Consent Decree that provides Plaintiffs with the relief sought.  As discussed below, this is sufficient to establish Plaintiffs' entitlement to fees and costs under either the state or federal fee shifting provisions.  Additionally, the Consent Decree itself provides that

[3335818.7]

1   Plaintiffs are entitled to attorneys' fees and costs.  Consent Decree § VI.

2        Plaintiffs are prevailing parties under the ADA and the Rehabilitation Act by virtue of the

3   Consent Decree, which constitutes a "court-ordered 'chang[e] [in] the legal relationship between

4   [the plaintiff] and the defendant.'"  *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health*

5   *& Human Res.*, 532 U.S. 598, 604 (2001) (alterations in original, citation omitted); *see Barrios v.*

6   *Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002) ("Under applicable Ninth Circuit

7   law, a plaintiff 'prevails' when he or she enters into a legally enforceable settlement agreement

8   against the defendant."); *Richard S. v. Dep't of Developmental Servs. of State of Cal.*, 317 F.3d

9   1080, 1087-88 (9th Cir. 2003) (holding that a plaintiff "prevails" within meaning of ADA attorney

10  fee provision by entering into a legally enforceable settlement agreement with defendant).  This

11  fact alone conclusively establishes Plaintiffs' prevailing party status.  Plaintiffs have secured the

12  relief that they sought in filing this action, far above the legal threshold given that an "extremely

13  small amount of relief is necessary to confer prevailing party status."  *La Asociacion Trabajadores*

14  *v. City of Lake Forest*, 624 F.3d 1083, 1089-90 (9th Cir. 2010) (reversing denial of fees because

15  plaintiffs received actual relief where, although settlement was couched in terms of existing

16  policies, parties' relationship was materially altered because city subjected itself to federal

17  jurisdiction to enforce policies and plaintiffs would not have to file new action to enforce them).

18  Here, the County will be subject to the continuing jurisdiction of this Court through the term of the

19  Consent Decree.  Plaintiffs also obtained extensive relief, including millions of dollars of

20  construction efforts to ensure the Jails are physically accessible to inmates with Mobility

21  Disabilities and robust changes to policies and procedures covering all aspects of the Jails'

22  operations.[4]

23        Separate from their entitlement to fees under the ADA and Rehabilitation Act, Plaintiffs

24  are entitled to fees under California's private attorney general statute, Section 1021.5.  *See*

25  *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1074 (N.D. Cal. 2010) (holding prevailing plaintiff was

26

27  [4] This does not include funds for Defendants' New Jail, the construction of which was already planned.

28

[3335818.7]

1    entitled to award of attorneys' fees under the ADA and Cal. Code Civ. Proc. § 1021.5).  Under

2    state law, in any action that results "in the enforcement of a an important right affecting the public

3    interest," Plaintiffs are entitled to recover fees if: "(a) a significant benefit, whether pecuniary or

4    nonpecuniary, has been conferred on the general public or a large class of persons, (b) the

5    necessity and financial burden of private enforcement, or of enforcement by one public entity

6    against another public entity, are such as to make the award appropriate, and (c) such fees should

7    not in the interest of justice be paid out of the recovery, if any."  Cal. Code Civ. Proc. § 1021.5.

8         There is no question that this case meets the threshold of Section 1021.5's applicability, as

9    enforcing the rights of inmates with Mobility Disabilities to meaningful access to the Jails'

10   programs, services, and activities is an "important right affecting the public interest."  *See*

11   *Blackwell*, 724 F. Supp. 2d at 1074 ("Maximizing the rights of disabled persons is designated as

12   an important public interest by Government Code § 19230.").  Moreover, Plaintiffs have met all

13   three prongs of Section 1021.5.  The first prong is met because the Consent Decree will confer

14   significant benefits to all current and future inmates with Mobility Disabilities in Santa Clara

15   County's Jails.  The benefits contained in the Consent Decree are extensive and include a

16   construction plan that will ensure physical access throughout the Jails and significant

17   modifications to countless policies, practices, and procedures to ensure inmates with Mobility

18   Disabilities can access the Jail's programs, services, and activities.

19        The second and third prongs of Section 1021.5 are also met.  Private enforcement was

20   necessary under Section 1021.5 and Plaintiffs bore the financial burden of enforcement in

21   furtherance of the public interest.  After conducting a thorough investigation of the claims,

22   Plaintiffs sent a detailed demand to Defendants in January 2015, and only filed suit after eighteen

23   months of unsuccessful efforts to negotiate a remedy to the ongoing violations.  Declaration of

24   Lisa Ells in support of Plaintiffs' Motion for Fees and Costs ("Ells Fees Decl.") ¶ 19.  Plaintiffs'

25   counsel conducted their work on a contingent fee basis, meaning Plaintiffs' counsel assumed the

26   financial burden of enforcement, including advancing significant expenses and costs since July

27   2016.  Finally, Plaintiffs neither sought nor secured any monetary relief, meeting the final prong

28   of Section 1021.5.  *See Collins v. City of Los Angeles*, 205 Cal. App. 4th 140, 154 (2012) ("An

5

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR FEES AND COSTS

[3335818.7]

1   attorney fee award under section 1021.5 is proper unless the plaintiff's reasonably expected

2   financial benefits exceed by a substantial margin the plaintiff's actual litigation costs.").

3       For the forgoing reasons, Plaintiffs are entitled to attorneys' fees and costs not only under

4   the language negotiated by the parties in the Consent Decree but also as the prevailing party under

5   Federal law as well as under State law due to the significant benefits the Consent Decree confers

6   on the class, the need for private enforcement, and the financial burden of such enforcement.

7   **II.   THE REQUESTED AWARD IS WARRANTED BY PLAINTIFFS' COUNSEL'S
        SUBSTANTIAL EFFORT AND THE EXCEPTIONAL RESULTS EMBODIED IN
8       THE CONSENT DECREE**

9       Where, as here, fees are warranted, courts assess whether the amount of attorneys' fees

10  requested is reasonable.  The calculation of the fee award is performed using the lodestar method.

11  *See Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996), *amended*, 108 F.3d 981 (9th

12  Cir. 1997) (noting that "'[t]he lodestar determination has emerged as the predominate element of

13  the analysis' in determining a reasonable attorneys' fee award" (internal citation omitted)).  The

14  lodestar is calculated by multiplying the number of hours the prevailing party reasonably expend-

15  ed on the litigation by a reasonable hourly rate.  *Id.*  The lodestar is presumed to be the reasonable

16  fee.  *See, e.g.*, *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).  Where appropriate, the

17  court should "adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in

18  *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), that have not been

19  subsumed in the lodestar calculation."  *Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000).

20      Factors demonstrating the reasonableness of a prevailing plaintiffs' hours expended

21  include the importance of the relief achieved, the difficulty involved, and the contingent nature of

22  the litigation.  *See Morales*, 96 F.3d at 364-65 (importance of rights vindicated is important factor

23  affecting the amount of the fee award); *see also Partington v. Broyhill Furniture Indus., Inc.*, 999

24  F.2d 269, 273 (7th Cir. 1993) (reasonableness of hours is related to the difficulty and stakes);

25  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (emphasizing the absence of

26  any incentive to spend unnecessary hours in contingency cases).  Prevailing plaintiffs are entitled

27  to be compensated for "every item of service which, at the time rendered, would have been

28  undertaken by a reasonable and prudent lawyer to advance or protect his client's interest."  *Moore*

[3335818.7]

*v. James H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982); *Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1306 (11th Cir. 1988) ("[T]he measure of reasonable hours is determined by the profession's judgment of the time that may be consciably billed and not the least time in which it might theoretically have been done.").

As set forth more fully in the accompanying Declaration of Lisa Ells in support of Plaintiffs' Motion for Fees and Costs ("Ells Fee Decl."), Plaintiffs' counsel's current[5] lodestar, from July 1, 2016 through January 13, 2019, is as follows:

| July 1, 2016 to January 13, 2019 | | | | |
|---|---|---|---|---|
| | **Graduation Year** | **Rate** | **Claimed Hours** | **Total** |
| **RBGG** | | | | |
| Lisa Ells | 2005 | $650 | 619 | $402,350.00 |
| Kara Janssen | 2010 | $525 | 813.4 | $427,035.00 |
| Marc Shinn-Krantz | 2016 | $375 | 135.4 | $50,775.00 |
| Senior Paralegal[6] | N/A | $340 | 19 | $6,460.00 |
| Paralegals[7] | N/A | $225 | 106.5 | $23,962.50 |
| **DRA** | | | | |
| Mary-Lee Smith | 2005 | $655 | 181.5 | $118,882.50 |
| Stuart Seaborn | 1998 | $775 | 12.3 | $9,532.50 |
| Michelle Iorio | 2013 | $425 | 899 | $382,075.00 |
| Paralegals[8] | N/A | $230 | 37.7 | $8,671.00 |
| **Total** | | | **2823.8** | **$1,429,743.50** |

[5] The Consent Decree provides that the $1 million in attorneys' fees and costs compensates Plaintiffs for work performed up through the effective date of the Consent Decree, defined therein as the date the Court grants approval of the Consent Decree. Consent Decree §§ II(K) (definition of Effective Date), VI(A) (Attorneys' Fees and Costs). The lodestar information contained herein is current up to the filing of this motion, through January 13, 2019. Plaintiffs include in this Motion projections for the additional work needed through the period of January 14, 2019 through March 13, 2019, but intend to actually include their updated lodestar information covering this period with Plaintiffs' reply in support of this Motion, which per the Court's Order must be filed on March 14, 2019. (Dkt. No. 73).

[6] Karen Stilber is a Senior Paralegal at RBGG and was briefly assigned to this matter.

[7] RBGG primarily utilized two paralegals, Sara Long and Hanna Wallace, on this matter. Their hours are combined here for brevity, but are listed separately in Exhibit B to the Ells Fees Declaration for purposes of completeness.

[8] Carly Shaaf, Jacqueline U, and Jessica Flores are paralegals at DRA. Their hours are combined here for brevity, but are listed separately in Exhibit B to the Declaration of Stuart Seaborn, filed herewith, for purposes of completeness.

[3335818.7]

The amount requested by Plaintiffs here represents a significant discount from the full amount to which Plaintiffs are entitled.  First the lodestar of $1,429,743.50 from July 2016 to the present far exceeds the fixed sum of $1 million that the parties agreed to in the Consent Decree. Additionally, Plaintiffs estimate that they will spend an additional 40 hours of work reviewing and responding to any objections, preparing Plaintiffs' reply in support of the parties' Motion for Final Approval addressing any objections, and attending the Final Approval hearing. Ells Decl. ¶ 43. Further, absent the cap, Plaintiffs would seek an enhancement of their lodestar under federal and California law for the superior results obtained under difficult circumstances.  *See Perdue*, 559 U.S. 542; *Ketchum v. Moses*, 24 Cal. 4th 1122, 1136 (2001).

### A.   The Time Spent By Plaintiffs' Counsel Was Reasonable and Plaintiffs Have Exercised Appropriate Billing Judgment

The time Plaintiffs' counsel expended on this case was appropriate given the intensity and nature of the litigation and settlement negotiations and for a case of this magnitude.  The work included extensive pre-filing negotiations[9], preparation and filing of the complaint, preparing for and filing of the joint motion for class certification, four tours of the Jails, eleven (11) settlement conferences before Magistrate Judge Cousins, two (2) formal mediation sessions before Mr. Martin Quinn of JAMS, review of numerous documents provided by the County for the purposes of settlement discussions, drafting and extensive negotiation of many dozens of versions of the construction and operational remedial plans and the overarching Consent Decree, ongoing visits,

---

[9] As detailed in the concurrently filed Joint Motion for Final Approval of Class Settlement, prior to initiating the lawsuit, Plaintiffs' counsel expended significant time engaged in extensive formal negotiations with the County for approximately eighteen months in an attempt to avoid litigation. While ultimately the parties were unable to resolve the issues without litigation, the parties' efforts during this time resulted in an expert assessment of the Jails that laid the groundwork for the ultimate relief negotiated in the Consent Decree.  During the pre-filing negotiations period, the parties agreed to a $15,000 per month cap on attorneys' fees and costs for work related to the negotiations. The parties subsequently agreed to a bi-annual billing process whereby Plaintiffs would submit invoices to the County, including detailed records of work performed, which the County would then pay up to the monthly cap.

Pursuant to the bi-annual billing process, the last invoice submitted by Plaintiffs pursuant to the pre-filing negotiation agreement was dated August 23, 2016 and only covered attorneys' fees and costs through June 30, 2016.  As a result, Plaintiffs have never received compensation for any work performed after July 1, 2016.

[3335818.7]

1    phone calls, and correspondence with clients at the Jails, preparing the motion for preliminary

2    approval and supporting documents, attending the hearing on preliminary approval, preparing the

3    motion for final approval and for fees plus supporting documents, and addressing a steady flow of

4    intake complaints from inmates through the entire process.  Ells Fees Decl. ¶¶ 19-40.  Plaintiffs'

5    counsel performed the work needed to fully protect Plaintiffs' interests as this case proceeded on

6    through the General Order 56 process, while also ensuring that Plaintiffs were prepared to litigate

7    should settlement talks fail.  In total, from July 1, 2016 until January 13, 2019, Plaintiffs' counsel

8    have expended a total of 2,823.8 hours advocating on behalf of Plaintiffs and the Plaintiff Class.

9    Ells Fee Decl. ¶ 17; Seaborn Fees Decl. ¶ 15.  A detailed breakdown of the work performed in

10   each phase of the negotiations and litigation can be found in the Declaration of Lisa Ells filed in

11   support of this motion.[10]  Ells Fee Decl. ¶¶ 19-43.

12        All of the work claimed was necessary, and was performed by skilled and able counsel

13   who appropriately organized the work so that most was performed by lower-billing associates and

14   paralegals.  Ells Fees Decl ¶ 15; Seaborn Fees Decl ¶ 13.  In calculating the lodestar, Plaintiffs'

15   counsel also made appropriate billing judgment reductions in the time for which they seek

16   compensation.  Time written down included, inter alia, time spent on tasks that were

17   predominantly clerical in nature, time that was deemed excessive or unnecessarily duplicative for

18   a given task, and all time associated with billers who contributed less than 10 hours of work to the

19   case.  Ells Fees Decl ¶ 16; Seaborn Fees Decl ¶ 14.   In total, Plaintiffs' counsel has written off

20   more than 305.3 hours, or approximately 10% of Plaintiffs' counsel's billable hours.  Ells Fees

21   Decl ¶ 16; Seaborn Fees Decl ¶ 14.  Charts depicting the hours, rates, and billing adjustments for

22   each RBGG and DRA timekeeper during this time period are attached, respectively, as **Exhibits B**

23   to the declarations of Lisa Ells and Stuart Seaborn in support of this motion.  Ells Fees Decl ¶ 16,

24   Ex. B; Seaborn Fees Decl ¶ 14, Ex. B.

25

26   _____

27   [10] Given the voluminous nature of Plaintiffs' counsel's billing records, which have not been fully
     vetted for work product or other confidential information, Plaintiffs have not submitted them with
     this motion, although Plaintiffs are happy to provide them to the Court upon request.

28

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR FEES AND COSTS

[3335818.7]

**B.      Plaintiffs' Counsel Efficiently Staffed This Matter**

Plaintiffs' counsel worked to prosecute this case efficiently, including dividing up work to minimize duplication of effort.  DRA brought extensive experience in litigating precedent-setting disability rights class actions while RBGG contributed extensive experience in litigating precedent-setting prisoner rights class actions, including in the disability context.  Such co-counsel arrangements are commonly used to prosecute important public interest cases.  Nonprofits such as DRA regularly co-counsel with private firms to expand their impact, increase litigation resources, and spread the risk of taking on precedent-setting cases.  By dividing tasks among the firms, class counsel minimized duplication of effort, ensured that resources necessary for the successful prosecution of this case were available throughout the litigation, and leveraged each firm's relative strengths and efficiencies.  Over 80% of the time billed to this matter was billed by just three attorneys, Lisa Ells and Kara Janssen for RBGG, and Michelle Iorio for DRA.[11]  Attorneys Kara Janssen and Michelle Iorio, counsel with the lowest rates, performed the majority of the legal research, drafting, and day-to-day management of the case, and accordingly billed the majority—over 60%—of time claimed.  Ms. Janssen and Ms. Iorio were also primarily responsible for updating the named Plaintiffs regarding developments in the case and negotiations, and handled visits to, and individual advocacy on behalf of, class members at the Jails.  Marc Shinn-Krantz also performed work on this matter while Ms. Janssen was out on maternity leave, and during that time assisted Ms. Ells with research needs, attended mediations and provided input on drafts of settlement documents, and handled client and class member visits in coordination with Ms. Iorio.  Additionally, whenever possible and appropriate, tasks were performed by paralegals, including phone calls and correspondence with clients, as well as fact research.

**C.      Plaintiffs' Requested Rates are Reasonable**

Plaintiffs are entitled to attorney fee compensation at full market rates for prevailing on claims brought under sections 12132 and 12188 of the ADA , section 794 of the Rehabilitation

---

[11] Mary-Lee Kimber Smith also performed significant work on the case prior to her departure from DRA in November 2017.

[3335818.7]

Act, California Government Cal. Gov't Code § 11135, and California Code of Civil Procedure
§ 1021.5.  *Armstrong v. Davis*, 318 F.3d 965, 974 (9th Cir. 2003) (concluding that the PLRA does
not apply to rates for work on ADA cases brought on behalf of prisoners).  Plaintiffs' claimed
lodestar is based on Plaintiffs' counsel's 2018 rates, in effect at the time the parties executed the
Consent Decree and the Court issued its order granting preliminary approval.   Plaintiffs'
counsels' 2018 rates range from $775 to $375 for attorneys who graduated from law school from
1998 to 2016.  Ells Fees Decl. ¶ 17; Seaborn Fees Decl. ¶ 15.  Plaintiffs' paralegals' 2018 rates
range from $225 to $230, and Plaintiffs seek compensation for a small number of hours of work
for a Senior Paralegal at the 2018 rate of $340.  Ells Fees Decl. ¶ 17; Seaborn Fees Decl. ¶ 15.
Richard Pearl, a preeminent expert on attorneys' fees in California, has opined that "[t]he 2018
rates being requested by Plaintiffs' counsel based in the San Francisco Bay Area are eminently
reasonable" and that "based on [his] knowledge of counsel's backgrounds and experience levels
and the information about hourly rates [he] has gathered…the rates requested by Plaintiffs'
counsel in this matter are well within the range of, but lower than many of, the non-contingent
market rates charged by San Francisco Bay Area attorneys of reasonably comparable experience,
skill, and expertise for reasonable comparable services."  Declaration of Richard Pearl in support
of Plaintiffs' Motion for Fees and Costs ("Pearl Decl.") ¶ 11.  As discussed further below,
Plaintiffs' requested rates are reasonable, reflect Plaintiffs' counsel's high level of skill and
experience, and are commensurate with the prevailing market rates in San Francisco for similar
work.

### 1.      Plaintiffs' Counsel are Highly Skilled and Experienced

Plaintiffs' counsel possess significant experience litigating disability access, prisoner's
rights, and other civil rights claims.  From its formation in 1990, RBGG has been a nationally
recognized leader in civil rights, employment, consumer, and antitrust class action litigation.  Ells
Fee Decl. ¶ 3.  The firm specializes in large class action lawsuits seeking to improve conditions in
correctional systems, including conditions related to disability access.  *Id.*  DRA has served as lead
counsel in over 100 disability civil rights class action cases across the United States and has
specialized expertise in class action litigation concerning access for persons with disabilities.

Case No. 5:16-cv-06594-LHK

[3335818.7]

Seaborn Fees Decl. ¶¶ 2, 5.   This matter was primarily staffed by three attorneys—Lisa Ells and Kara Janssen from RBGG, and Michelle Iorio from DRA—all of whom have extensive experience litigating civil rights class actions.  Ells Fees Decl. ¶¶ 4-9; Seaborn Fees Decl. ¶¶ 7, 9.

Lisa Ells is a partner at RBGG and a 2005 graduate from Columbia Law School in 2005. Ells Fee Decl. ¶ 5.  Upon graduation from law school, Ms. Ells clerked for federal judges in the Central District of California and on the Ninth Circuit Court of Appeals.  *Id.*  For the last twelve years, Ms. Ells has served as counsel in *Coleman v. Brown* (E.D. Cal. No. C 94-2307-KJM-DB P), a class action against the California Department of Corrections and Rehabilitation ("CDCR") on behalf of the approximately 38,000 CDCR prisoners with psychiatric disabilities.  *Id.* ¶¶ 5-6.  In that matter, Ms. Ells was a key member of the trial and appellate team that secured a landmark decision by the United States Supreme Court holding that overcrowding in California's prisons resulted in ongoing constitutional violations, and requiring California to reduce its population dramatically.  *See Brown v. Plata*, 131 S. Ct. 1910 (2011).  *Id.* ¶ 5.  On behalf of the same class, Ms. Ells was one of the attorneys who successfully tried a challenge to California's solitary confinement practices as they relate to prisoners with mental health disabilities, which resulted in significant reform.  *Coleman v. Brown*, 28 F. Supp. 3d 1068 (E.D. Cal. 2014).  *Id.*  Ms. Ells was also counsel of record and successfully argued two recent appeals in which the Ninth Circuit unanimously affirmed district court orders benefiting the *Coleman* class.  *Id.*  Additionally, Ms. Ells served for eight years as counsel in *Armstrong v. Brown* (N.D. Cal. No. C 94-2307), a Title II class action against CDCR on behalf of over 10,000 prisoners and parolees with certain disabilities, including mobility impairments, in which Ms. Ells monitored compliance with the governing remedial plan in addition to successfully representing Plaintiffs on appeal.  *Armstrong v. Brown*, 732 F.3d 955 (9th Cir. 2013), *cert denied*, 134 S. Ct. 2725 (2014).  *Id.* ¶ 7.  She has also successfully represented numerous clients in disability disputes at the trial and appellate levels, including actions ensuring blind voters have equal access to absentee voting (*California Council of the Blind v. County of San Mateo* (N.D. Cal. No. 3:15-cv-05784-CRB)), establishing the statute of limitations for Title II damages claims (*Sharkey v. O'Neal*, 778 F.3d 767 (9th Cir. 2015)), and ensuring a major transportation provider's website and mobile apps are accessible to blind patrons

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR FEES AND COSTS

[3335818.7]

(*National Federation of the Blind v. Greyhound Lines*, *Inc.* (N.D. Cal No. 3:17-cv-03368-RS)). *Id.* Finally, Ms. Ells has significant experience with attorneys' fees, including successfully representing multiple clients in litigating fee petitions in both state and federal court, including on appeal in the California Court of Appeal and the Ninth Circuit Court of Appeals. *Id.* ¶ 8. Ms. Ells received the 2018 California Lawyer Attorney of the Year Award for her work on the San Mateo accessible absentee voting case, and was named a Northern California Super Lawyer in 2018 and a Rising Star every year from 2012 to 2016. *Id.*

Kara Janssen is an associate at RBGG and a 2010 graduate of New York University School of Law, where she was a Root-Tilden-Kern Scholar. Ells Fee Decl. ¶ 9. Ms. Janssen has substantial experience representing incarcerated individuals with disabilities in litigation involving access to county jail programs and services. *Id.* She represented prisoners with disabilities in *Jewett v. Shasta County* (E.D. Cal. No. 2:13-cv-0882 MCE AC (PC)) (class action on behalf of prisoners with mobility disabilities); *LSPC v. Ahern* (Alameda Cnty. Sup. Ct. No. RG12656266) (taxpayer action on behalf of prisoners with mobility disabilities); and in *G.F. v. Contra Costa County* (N.D. Cal. No. 3:13-cv-03667-MEJ) (class action on behalf of juveniles with psychiatric disabilities). *Id.* Ms. Janssen is currently counsel in *Sabata v. Nebraska* (D. Neb. No. 4:17-cv-03107-RFR-MDN), a class action on behalf of prisoners, including prisoners with disabilities, incarcerated in the Nebraska state prison system and *Babu v. Ahern,* N.D. Cal No. 5:18-cv-07677-NC, a class action on behalf of prisons, including prisoners with psychiatric disabilities, held at the Alameda County Jails. *Id.* Ms. Janssen was named a Rising Star by Northern California Super Lawyers in 2017 and 2018. *Id.*

Marc Shinn-Krantz is an associate at RBGG and a 2016 graduate of the University of Minnesota School of Law. Ells Fee Decl. ¶ 10. Prior to joining RBGG, Mr. Shinn-Krantz served as a law clerk to the Honorable Joseph R. Goodwin of the United States District Court for the Southern District of West Virginia. *Id.* In addition to assisting on this matter while Ms. Janssen was on maternity leave, Mr. Shinn-Krantz is counsel on the *Coleman* matter discussed above, and previously worked for three years as a paralegal on the *Coleman* and *Armstrong* class actions before attending law school. *Id.*

[3335818.7]

Mary-Lee Smith is a former Director of Litigation at DRA, a position she held until November 2017.  Seaborn Fees Decl. ¶ 8.   Ms. Smith graduated from the University of California, Berkeley Law School (Boalt Hall) in 2005.  *Id.*  At the time of her departure from DRA, she had over ten years of experience representing plaintiffs in disability rights class actions.  *Id.*  In 2010, Ms. Smith received the California Lawyer Attorney of the Year Award in the area of Disability Law for her work in *Californians for Disability Rights, Inc. et al. v. California Department of Transportation et al*., No. C 06-05125 SBA (MEJ) (N.D. Cal.), which resulted in a landmark settlement requiring the California Department of Transportation to spend $1.1 billion over the next 30 years to provide access to its sidewalks throughout the state.  *Id.*  In 2013, Ms. Smith received the California Lawyer Attorney of the Year Award for her work in *CALIF et. al. v. City of Los Angeles et. al.*, Case No. Cv-09-0287 CBM (RZx) (C.D. Cal.), which addressed the needs of people with disabilities in emergency planning for the City and County of Los Angeles.  *Id.*  Ms. Smith was also named a Top Woman Lawyer by the Daily Journal in 2014.  *Id.*

Michelle Iorio is a Staff Attorney at DRA and received her law degree from UC Berkeley School of Law (Boalt Hall) in 2013.  Seaborn Fees Decl. ¶ 9.   Since joining DRA in 2015, Ms. Iorio has been counsel in multiple class action lawsuits advancing the civil rights of persons with disabilities, including *Jahoda v. Redbox* (W.D. Pa. No. 2:14-cv-01278-LPL), a national class action challenging the inaccessibility of Redbox's video rental kiosks, and *Stokes v. TTI* (D. Ariz. No. 2:15-cv- 02363-DJH), a class action challenging an Arizona-based transportation conglomerate's policy of charging a $10 fee for accessible taxi service.  *Id.*  Prior to joining DRA, Ms. Iorio was a Berkeley Law Public Interest Fellow at the nonprofit UnCommon Law, where she worked on a federal class action lawsuit challenging the use of psychological evaluations in the parole hearings of California life-term prisoners.  *Id.*

    **2.**    **Plaintiffs' Counsel are Entitled to Recover At Their Current Rates, Which are Commensurate With the Prevailing Market Rates in The Bay Area**

        **(a)**    **Plaintiffs' Counsel are Entitled to Compensation at Current Rates**

It is appropriate to calculate the lodestar using RBGG's and DRA's 2018 rates.  Under

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FEES AND COSTS

[3335818.7]

both federal and state law, when a prevailing plaintiff has incurred attorneys' fees over a number of years without payment, the proper rate to use in calculating the lodestar is the current rate at the time of the award to compensate for the delay in payment. *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016) ("The lodestar should be computed either using an hourly rate that reflects the prevailing rate as of the date of the fee request, to compensate class counsel for delays in payment inherent in contingency-fee cases, or using historical rates and compensating for delays with a prime- rate enhancement."); *Bouman v. Block*, 940 F.2d 1211, 1235 (9th Cir. 1991) (approving of district court award of "current hourly rates to compensate for the delay in receiving payment"); *see also* Pearl Decl. ¶ 16.  Although it is now 2019, Plaintiffs' counsel seeks compensation at its 2018 rates in effect at the time the Consent Decree was executed and preliminarily approved by this Court.

> **(b)      Plaintiffs' Counsel's Rates Are Commensurate with the Prevailing Market Rates in the Bay Area**

Plaintiffs' counsel's rates are in line with the prevailing market rates in the Bay Area for work of similar complexity by lawyers of similar skill and experience.  Pearl Decl. ¶ 14; Ells Fees Decl. ¶¶ 45-49; Seaborn Fees Decl. ¶ 18.  "Reasonable fees are … 'to be calculated according to the prevailing market rates in the relevant community.'"  *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1545-46 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993).  The reasonable hourly rate is based on the prevailing market rate "for similar work performed by attorneys of comparable skill, experience, and reputation."  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986).  The "relevant community" is the forum district for the action in which fees are sought.  *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).  Here, the relevant community is the San Francisco Bay Area and the reasonableness of rates charged must be determined by reference to the rates charged by Bay Area attorneys with commensurate skill, experience, and reputation.

DRA and RBGG have regularly been awarded rates based on the rates charged by the major Bay Area law firms that handle complex litigation.  RBGG's rates are charged to its many fee-for-services clients and both RBGG's and DRA's rates have been upheld as reasonable by

15

[3335818.7]

multiple courts in multiple venues, including in this district.  Ells Fees Decl. ¶ 49; Seaborn Fees Decl. ¶ 19; *see also* Seaborn Fees Decl. ¶ 19, Ex. C (*Nat'l Fed'n of the Blind v. Uber Techs., Inc.*, 3:14-cv-04086 NC, Order Granting Final Approval and Attorneys' Fees at 2, ECF No. 139, and Order on Mtn. for Attorneys' Fees and Costs, ECF No. 144  (N.D. Cal. Dec. 6, 2016) (approving RBGG's and DRA's 2016 rates)); Ells Fees Decl. ¶ 49, Ex. D (*Hernandez v. Cnty. of Monterey*, 5:13-CV-2354-PSG (N.D. Cal.) (approving RBGG's requested lodestar based on RBGG's 2015 market rates)); *Id.*, Ex. C (*Armstrong v. Brown*, No. 4:94-cv-02307-CW, Stipulated Order Confirming Undisputed Attorneys' Fees and Costs for the Second Quarter of 2018 (Dkt No. 2772) (N.D. Cal. Sept. 12, 2018) (approving RBGG's 2018 rates)); *Armstrong v. Brown*, 805 F. Supp. 2d 918, 922 (N.D. Cal. 2011) (compelling defendants to pay RBGG's "reasonable 2010 hourly rates" including $360 for Lisa Ells)); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (affirming RBGG's requested 2008 rates); Seaborn Fees Decl. ¶ 19, Ex. D (*G.F. v. Contra Costa County*, No. 3:13-cv-03667, Order Granting Final Approval of Settlement Agreements and Granting Motion for Reasonable Attorneys' Fees and Costs (Dkt. No. 307) (N.D. Cal. Nov. 25, 2015) (approving settlement fees based on DRA's 2014 rates)); *Id.*, Ex. E (*Cmtys. Actively Living Indep. and Free v. City and Cnty. of Los Angeles*, No. 09-cv-00287-CBM-RZ, Order Granting Plaintiffs' Application for Reasonable Attorneys' Fees and Costs (Dkt. No. 255) (C.D. Cal. Jun. 10, 2013) (finding DRA's 2012 rates reasonable)); *Id.*, Ex. F (*Californians for Disability Rights v. California Dep't of Transp.*, No. C 06-5125 SBA, Report and Recommendation re: Plaintiffs' Motion Attorney's Fees (Dkt. No. 528) (N.D. Cal. Dec. 13, 2010) (finding DRA's 2010 rates reasonable), *accepted by* Order Accepting Report and Recommendation (Dkt. No. 529) (N.D. Cal. Feb. 2, 2011)); *Id.*, Ex. G (*Nat'l Fed'n of the Blind v. Target Corp.*, No. C 06-01802 MHP, 2009 WL 2390261 (N.D. Cal. Aug. 3, 2009) (finding DRA's 2008 rates reasonable)).

In *National Federation of the Blind v. Uber Technologies, Inc.*, 3:14-cv-04086 NC, a court in this district awarded both sets of Plaintiffs' counsel their requested 2016 rates after a heavily contested motion.  Plaintiffs' counsel's 2018 rates incorporate only modest increases above their approved 2016 rates to account for counsels' additional two years of experience, and are consistent with the overall increase in rates at Bay Area law firms.  Ells Fees Decl. ¶ 47; Seaborn

16

Fees Decl. ¶ 18; Pearl Decl. ¶14.  A court in this district has previously rejected a challenge to

similarly modest increases in Plaintiffs' rates over a two-year period.  *See Armstrong*, 805 F.

Supp. 2d at 922 (rejecting challenge to increase in RBGG's rates between 2008 and 2010, and

awarding RBGG's requested 2010 rates).

> **(c)     The Paralegal Timekeepers are Similarly Entitled to Compensation at The Rates Claimed Here**

The rates that Plaintiffs' counsel seek for paralegal and law clerk work – $225-230 for

paralegals and $340 for a Senior Paralegal[12]- are also reasonable and commensurate with

prevailing market rates in the Bay Area.  *See Missouri v. Jenkins*, 491 U.S. 274, 287 (1989)

("reject[ing] the argument that compensation for paralegals at rates above 'cost' would yield a

'windfall' for the prevailing attorney"); Pearl Decl. ¶¶ 11-14.  Courts have previously awarded

Plaintiffs' counsel their requested rates for paralegal work.  *See, e.g.*, Seaborn Fees Decl. ¶ 19, Ex.

C (*Nat'l Fed'n of the Blind v. Uber Techs., Inc.*, 3:14-cv-04086 NC, Order Granting Final

Approval and Attorneys' Fees at 2, ECF No. 139, and Order on Mtn. for Attorneys' Fees and

Costs, ECF No. 144 (N.D. Cal. Dec. 6, 2016) (awarding RBGG and DRA requested 2016

paralegal rate of $275)); Ells Fees Decl. ¶ 49, Ex. D (*Hernandez v. County of Monterey*, 5:13-CV-

2354-PSG (N.D. Cal.) (approving RBGG's claimed lodestar based in part on 2015 rates for

paralegals up to $295)); *Armstrong*, 805 F. Supp. 2d at 922 (compelling defendants to pay

RBGG's paralegals at 2010 rates up to $240 per hour).

> **D.     The Requested Fee is Reasonable and Appropriate Under the *Kerr* Factors**

After making the lodestar computation, court assess whether it is necessary to adjust the

presumptively reasonable lodestar figure on the basis of factors announced in *Kerr v. Screen*

*Actors Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogation in part recognized in Davis v. City*

---

[12] Approximately nineteen hours of work were performed by a senior paralegal at a rate of $340 per hour as a short-term transition after the departure of the junior paralegal working on this case. Ells Fees Decl. ¶ 15.  The matter was promptly reassigned back to a more junior paralegal upon hiring.  *Id.*  These types of staffing adjustments are reasonable and to be expected in multi-year litigation.

1 & County of San Francisco, 976 F.2d 1536, 1546 n.4 (9th Cir. 1992).[13]  However, as the Ninth

2 Circuit has noted, many of the Kerr factors are subsumed as a matter of law under the lodestar

3 approach's analysis of reasonableness.  See Cunningham v. County of Los Angeles, 879 F.2d 481,

4 487 (9th Cir. 1988); Morales, 96 F.3d at 364 n.9.

5 　　　　Analysis of the Kerr factors further demonstrates the reasonableness of Plaintiffs' fee

6 award request.  Plaintiffs' counsel obtained an exceptional result for the class in the form of a

7 comprehensive Consent Decree that will benefit class members for years to come.  Wallace v.

8 Consumers Co–op of Berkeley, Inc., 170 Cal. App. 3d 836, 850 (1985) ("Where plaintiff has

9 obtained 'excellent results,' his or her attorney should recover a fully compensatory fee." (quoting

10 Hensley v. Eckerhart, 461 U.S. 424, 434-435 (1983)); Ells Fees Decl. ¶ 51; Plaintiffs' Motion for

11 Final Approval (Dkt. No. 74) pp. 10-12.  Plaintiffs' counsel exercised special skill and utilized

12 their significant experience litigating prisoners' and disability rights cases.  Ells Fees Decl. ¶¶ 3-

13 10, 50-51; Seaborn Fees Decl. ¶¶ 2, 5, 8-10.  The legal and factual issues in this case were

14 complex, requiring additional time and skill of Plaintiffs' counsel.  Ells Fees Decl. ¶¶ 19-38, 50-

15 51.  Plaintiffs' counsel assumed significant risk of nonpayment in seeking further relief on behalf

16 of the class.  Ells Fees Decl. ¶ 50; Seaborn Fees Decl. ¶¶ 20-21.  By agreeing to represent the

17 class, Plaintiffs' counsel were precluded from accepting other employment.  Ells Fees Decl. ¶ 50;

18 Seaborn Fees Decl. ¶ 6.  Plaintiffs' counsel devoted significant amounts of time communicating

19 with prisoners in the Jail, investigating the conditions in the Jail, and communicating with defense

20 counsel regarding urgent needs of prisoners in the Jail.  Ells Fees Decl. ¶¶ 19-42.  Litigation on

21 behalf of prisoners regarding correctional conditions is also often unattractive to the bar.  Ells Fees

22 Decl. ¶ 50.  Plaintiffs' counsel has maintained relationships with various prisoners at the Jail, and

23 in particular with the named Plaintiffs.  Ells Fees Decl. ¶¶ 19-42.  And the award here, which is

24 ───────────────

[13] The Kerr factors are: "(1) the time and labor required, (2) the novelty and difficulty of the ques-

25 tions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of
other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether

26 the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8)
the amount involved and the results obtained, (9) the experience, reputation, and ability of the

27 attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional
relationship with the client, and (12) awards in similar cases." Kerr, 526 F.2d at 70.

28

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR FEES AND COSTS

[3335818.7]

1   fixed at $1 million by the parties' agreement in the Consent Decree (and is well below the actual

2   loadstar), is consistent with awards made in similar litigation within this Circuit.  Ells Fees Decl. ¶

3   49; Seaborn Fees Decl. ¶ 19.

4   **III.    PLAINTIFFS ARE ENTITLED TO FEES AND EXPENSES FOR COMPLIANCE
            MONITORING, AND THE NEGOTIATED SUM IS REASONABLE
5           COMPENSATION FOR THE ROBUST MONITORING REQUIRED UNDER THE
            CONSENT DECREE**

6

7           Plaintiffs are entitled to attorneys' fees and costs for implementation and monitoring of the

8   Consent Decree.  In the Ninth Circuit and beyond, attorneys are entitled to recover fees for time

9   spent monitoring and enforcing compliance with settlement agreements in civil rights lawsuits.

10  *See, e.g.*, *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 452 (9th Cir. 2010) (plaintiffs'

11  counsel entitled to fees "for monitoring [defendants'] compliance with the parties' settlement

12  agreement"); *Balla v. Idaho*, 677 F.3d 910, 920-21 (9th Cir. 2012) (affirming fee award for time

13  spent "bringing about … conformity with the injunction"); *S.F. N.A.A.C.P. v. S.F. Unified Sch.*

14  *Dist.*, 284 F.3d 1163, 1166 (9th Cir. 2002) ("It is settled law in this circuit that a district court has

15  discretion to award fees to a prevailing party in consent decree litigation for work reasonably spent

16  to monitor and enforce compliance with the decree, even as to matters in which it did not

17  prevail."); *Keith v. Volpe*, 833 F.2d 850, 860 (9th Cir. 1987) (awarding attorneys' fees "for

18  services rendered in monitoring the implementation of the consent decree"); *Johnson v. City of*

19  *Tulsa*, 489 F.3d 1089, 1108 (10th Cir. 2007) (finding that "attorneys' fees incurred for reasonable

20  efforts to enforce [the consent decree] …are compensable"); *Cody v. Hillard*, 304 F.3d 767, 774

21  (8th Cir. 2002) ("A district court may award fees to a prevailing party for reasonable post-

22  judgment monitoring.").

23          Monitoring work is compensable even if it does not result in additional judicial relief.

24  *Prison Legal News*, 608 F.3d at 452-53; *Balla*, 677 F.3d at 916-17 ("[P]revailing party status has

25  been obtained and remains in effect when a party has obtained an enforceable settlement

26  agreement or consent decree." (internal quotation marks omitted)).  Compensable monitoring

27  work includes a broad array of tasks, including those contemplated here.  *Prison Legal News v.*

28  *Schwarzenegger*, 561 F. Supp. 2d 1095, 1101, 1104 (N.D. Cal. 2008), *aff'd* 608 F.3d 446 (9th Cir.

1   2010) (awarding monitoring fees for work communicating with prisoners impacted by settlement

2   regarding settlement compliance, conducting legal research, drafting press releases, and

3   responding to press inquiries); *Lucas v. White*, 63 F. Supp. 2d 1046, 1059 (N.D. Cal. 1999)

4   (awarding fees for settlement monitoring work, including communicating with class members and

5   law school clinic advocates, because communications were "related to plaintiffs' monitoring

6   functions").

7        The agreed-upon monitoring process for this case is appropriate and necessarily robust,

8   and is similar to work Plaintiffs' counsel has performed in other correctional class actions for

9   decades.  Ells Fees Decl. ¶¶ 56-62.  As outlined in detail in the Consent Decree, and in the

10  concurrently filed Motion for Final Approval of Class Settlement, Plaintiffs' counsel has a

11  significant role in monitoring to ensure the County's compliance.  In addition to attending the

12  biannual tours conducted by the parties' joint operational monitor and the separate periodic tours

13  conducted by the joint architectural monitor, the County must provide Plaintiffs' counsel with

14  reasonable access to tour the Jails, review relevant compliance documents, interview staff and

15  inmates, and observe practices related to the County's compliance with the Consent Decree.

16  Consent Decree, § V.A.  In addition to the joint monitor tours, Plaintiffs' counsel will separately

17  conduct triannual Jail tours, lasting two days each, including additional review of documents in

18  preparation for the tours.  After each of their tours, Plaintiffs' counsel will conduct an oral exit and

19  write a report documenting their findings, and will also review and comment on the reports issued

20  by the operational and architectural monitors after their tours.  Additionally, Defendants have

21  committed to providing Plaintiffs' counsel with various monthly and triannual reports, which

22  Plaintiffs must review and which may trigger the need for additional follow-up to address any

23  issues raised by the reports.  Moreover, Plaintiffs' counsel has a duty to address concerns from

24  class members, including by conducting good-faith reviews of their claims regarding disability

25  discrimination and advocating on their behalf to the County as necessary.

26        Finally, the parties also agreed to delay review and revision of the County's written

27  policies until after the execution of the Consent Decree.  Consent Decree at Ex. A, Section

28  VIII.B.1.  In the Consent Decree, the parties agreed to meet and confer to designate the policies

that require revision, coordinate review of and negotiate revisions to the draft policies, and finalize and implement the relevant policies within one year of the execution of the Consent Decree.  As outlined above, these activities are compensable as a key aspect of the relief provided to the class and as implementation of the Consent Decree.  *See, e.g.*, *Ellis v. Costco Wholesale Corp.*, No. C04-3341 EMC, 2014 WL 12641574, at *3 (N.D. Cal. May 27, 2014) (compensable monitoring work included "developing programmatic relief and reviewing draft proposals").

Assuming a five and a half year term[14], Plaintiffs estimate that implementing policies and monitoring related activities will require approximately 723 hours of work annually with 893 hours required in the first year due to the added task of reviewing, negotiating, and implementing revised policies and procedures.  Plaintiffs have broken out the estimated time for each category of work in the chart below.  These estimates are based on Plaintiffs' counsels' extensive experience monitoring other correctional class action cases, in which Plaintiffs' counsel expends between a thousand to tens of thousands of hours per year on compliance monitoring.  Ells Fees Decl. ¶¶ 56-62.

| Task | Work Involved | Estimated Hours Per Year |
|------|---------------|--------------------------|
| **Implementation of Policies[15]** | Meeting and conferring re: policies to review and revise, reviewing and revising draft policies and finalizing same, observing and commenting on training. | **170 hours for first year only.** |

---

[14] The Consent Decree provides that it will expire twelve (12) months after the certificate of occupancy for the New Jail has been issued and the County has begun placement of inmates in the New Jail (the "Term"). Consent Decree § VIII(A).  Although the County currently plans to have the New Jail built in mid-2023, the Consent Decree recognizes that "Construction of the New Jail is highly dependent on third-party contractors, and this time estimate is not binding." *Id.* § V(D)(1).  Additionally, in Plaintiffs' experience, there is a strong possibility that the New Jail completion date will be delayed past its current estimate of Spring 2023, which would extend the length of the Term.  Ells Fees Decl. ¶ 62.

[15] Plaintiffs' estimated total monitoring hours reflect that this work will only be required for the first year of monitoring.

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR FEES AND COSTS

[3335818.7]

| Plaintiffs' Counsels' Tours and Reports | Preparing for and conducting triannual tours lasting two days each, preparing for and conducting oral exit and drafting a report after each tour | Six 12-hour days of touring (3 tours of 2 days each, including travel), plus, for each tour, 4 hours of preparation, 2 hours to prepare and deliver oral exit, and 25 hours to draft report after each tour = **165 hours annually** |
|---|---|---|
| **Architectural Monitor's Tours and Reports** | Attending periodic site visits to review completed work, addressing any disputes over plans or alterations at the Jails. Reviewing and responding to reports. | Two 12-hour days of touring (including travel), 5 hours of review and drafting of comments per report = **58 hours annually** |
| **Operational Monitor's Tours and Reports** | Attending two tours per year, reviewing and commenting on reports, addressing any issues with County. Reviewing and responding to reports. | Four 12-hours days of touring (including travel), 16 hours of review and drafting of comments per report = **80 hours annually** |
| **Defendants' Monitoring Reports** | Reviewing and commenting on Defendants' monthly tracking reports and triannual reports with all ADA-related inmate grievances and requests. | 10 hours per month = **120 hours annually** |
| **Communications with Class Members** | Handling calls, reviewing and responding to letters, periodic visits to class members at the Jails. | 15 hours per month = **180 hours annually** |
| **Individual advocacy on behalf of Class Members** | Raising any issues with the County and needed follow-up | 10 hours per month = **120 hours annually** |

RBGG expects to take the lead on monitoring of the Consent Decree with assistance from and consultation with co-counsel DRA. Ells Fees Decl. ¶ 61. Based on the total estimated hours listed above, which are reasonable and consistent with Plaintiffs' experiences closely monitoring other correctional systems, Plaintiffs' counsel conservatively expects that the total lodestar for implementation and monitoring of the entire term of the Consent Decree will be approximately $2,384,237.40. *See* Ells Decl. ¶ 61. This figure assumes a five and a half-year Term for the Consent Decree, even though in Plaintiffs' counsel's experience there is a strong possibility the Term will be longer given that the Consent Decree's end date is triggered by the completion of construction on the New Jail, which is in the early stages of planning and is likely to suffer the

1    types of delays that are typical of large public works projects.  *Id.*  Furthermore, this figure

2    assumes a blended rate of $575 based on Plaintiffs' counsels' current rates, although the actual

3    work performed will be at the current rate of the attorney performing the work, which will vary

4    and increase each year to reflect the attorneys' increasing experience and in accordance with

5    prevailing market practice.  Ells Fees Decl. ¶ 61; *see generally* Pearl Decl. ¶14 (documenting

6    increases in Bay Area rates awarded over time).  For example, the billing rate of Lisa Ells has

7    increased $250 per hour since 2013, an average increase of just over $40 per year.  Ells. Decl. ¶

8    47.  The billing rate of Kara Janssen has similarly increased by $185 since 2013, an average

9    increase of just over $30 per year.  *Id.*.  Given these typical annual increases in market rates, the

10   value of the monitoring work performed will increase as the monitoring period progresses.

11          Additionally, the $2.2 million in future fees also includes any work that is necessary to

12   resolve disputes through the extensive dispute resolution process outlined in the Consent Decree,

13   which includes a formal letter detailing the basis for the dispute, good faith negotiations to attempt

14   informal resolution, a mediation if necessary, and, if this process fails to result in an agreement,

15   submission of the matter to the Court for resolution.  The lump-sum amount further includes any

16   litigation work necessary to enforce the Consent Decree, with extremely narrow exceptions that

17   are unlikely to occur.  If Plaintiffs' counsel ultimately need to move to enforce part or all of the

18   Consent Decree, based on Plaintiffs' counsels' extensive experience, such enforcement work can

19   easily reach into the hundreds of thousands of dollars even if no evidentiary hearing is required.

20   Ells Decl. ¶¶ 56-62.   Plaintiffs will receive no additional compensation for such enforcement

21   work beyond the $2.2 million the County has pledged to pay for all monitoring and enforcement

22   work during the Term.  Nonetheless, Plaintiffs' counsel are committed to enforcing the rights of

23   class members even in the absence of full compensation for their work, and have done so

24   successfully in other matters even when they received compensation for only a portion of the time

25   spent.  *Id.*  Finally, as detailed in the Consent Decree at Section VI.B., Plaintiffs have established a

26   duly constructed and authorized qualified settlement fund, or QSF, with Eastern Point Trust

27   Company that will directly receive and hold the $2.2 million payment from the County for future

28   fees upon this Court's final approval of the settlement.  Ells Fees Decl. ¶ 63.  Plaintiffs' counsel

Case No. 5:16-cv-06594-LHK

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR FEES AND COSTS

[3335818.7]

1   will not seek payment out of the QSF until monitoring and enforcement work is actually

2   performed, and will substantiate any such request for disbursement from the QSF with records

3   detailing the fees and costs incurred for which compensation is being sought. *Id.*

4   **IV.   PLAINTIFFS' COUNSEL ARE ENTITLED TO RECOVER COSTS AND**
    **EXPENSES ADVANCED TO PROSECUTE THIS MATTER**

5

6         Prevailing federal litigants are entitled to recover statutory costs under 28 U.S.C. § 1920,

7   and all "out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v.*

8   *Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citations omitted); *Woods*

9   *v. Carey*, 722 F.3d 1177, 1180, n.1 (9th Cir. 2013). The requested costs in ADA cases properly

10  include expert witness fees. *Lovell v. Chandler*, 303 F.3d 1039, 1058-59 (9th Cir. 2002).

11        In addition to their fees, Plaintiffs have incurred costs and expenses of $14,860.53 from

12  July 1, 2016 until January 13, 2019. Those expenses and costs relate to the following categories:

13  copying, expert consultant witness fees, legal research, telephone calls, postage, service of

14  process, and limited travel. These costs are reasonable and compensable and have been included

15  as part of the agreed-upon $1 million for past fees in the parties' Consent Decree.

16                                **CONCLUSION**

17        Plaintiffs' counsel's total lodestar plus fees and costs from July 1, 2016 through

18  January 13, 2019 is $1,444,604.03 and an award at this amount would be wholly justified under

19  the law. However, pursuant to the Consent Decree, Plaintiffs seek only a total of $1 million for

20  past fees in addition to the $2.2 million for future fees relating to implementation and monitoring,

21  which are well-supported and reasonable. Further, Plaintiffs reached agreement on the proposed

22  attorneys' fees award after arm's-length negotiations with a sophisticated defendant, conducted

23  over two sessions overseen by a skilled JAMS mediator. For the aforementioned reasons,

24  Plaintiffs respectfully request that the Court (a) grant the Motion for Attorneys' Fees and Costs;

25  (b) award Plaintiffs $1 million in attorneys' fees and costs for the period from July 1, 2016

26  through final approval; and (c) award Plaintiffs $2.2 million in attorneys' fees and costs for work

27  performed after final approval and through the end of the Term as defined in the Consent Decree.

28

[3335818.7]

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DATED:  January 14, 2019

Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By:   */s/ Lisa Ells*
       Lisa Ells

Attorneys for Plaintiffs

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR FEES AND COSTS

[3335818.7]