GAY CROSTHWAIT GRUNFELD – 121944
LISA ELLS – 243657
KARA J. JANSSEN – 274762
MARC J. SHINN-KRANTZ – 312968
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:    (415) 433-6830
Facsimile:     (415) 433-7104
Email: lells@rbgg.com

MICHELLE IORIO – 298252
DISABILITY RIGHTS ADVOCATES
2001 Center Street, Fourth Floor
Berkeley, California  94704
Telephone:    (510) 665-8644
Facsimile:    (510) 665-8511
TTY:          (510) 665-8716
Email:        miorio@dralegal.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| DAVID COLE, LEROY BENJAMIN, ERASMO FLORES, JR., ROBERT PHILLIPS and BRANDON WILLIAMS, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>        v.<br><br>COUNTY OF SANTA CLARA, a public entity, COUNTY OF SANTA CLARA DEPARTMENT OF CORRECTION, a public entity under the control of the County of Santa Clara, the COUNTY OF SANTA CLARA OFFICE OF THE SHERIFF, a public entity under the control of the County of Santa Clara, and DOES 1 to 20, inclusive,<br><br>                Defendants. | Case No. 5:16-cv-06594-LHK<br><br>**CLASS ACTION**<br><br>**DECLARATION OF LISA ELLS IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Judge:   Hon. Lucy H. Koh<br>Date:    March 21, 2019<br>Time:    1:30 pm<br>Crtrm.:  8, 4th Floor<br><br>Trial Date:        None Set |

1

DECLARATION OF LISA ELLS

2

I, Lisa Ells, declare:

3     1.     I am an attorney duly admitted to practice before this Court.  I am a partner in the

4  law firm of Rosen Bien Galvan & Grunfeld LLP, counsel of record for Plaintiffs.  I have personal

5  knowledge of the facts set forth herein, and if called as a witness, I could competently so testify.  I

6  make this declaration in support of Plaintiffs' Motion For Attorneys' Fees And Costs.

7     2.     A true and correct copy of the Consent Decree is attached as Exhibit 1 to my

8  concurrently filed declaration in support of the Joint Motion for Final Approval.  On March 21,

9  2019, the Court will conduct a hearing to, *inter alia*, consider granting final approval to the

10  Consent Decree and to address Plaintiffs' Motion for Attorneys' Fees and Costs.

11     **BACKGROUND AND RELEVANT EXPERIENCE OF RBGG ATTORNEYS**

12     3.     From its formation in 1990, RBGG has been a nationally recognized leader in civil

13  rights, employment, consumer, and antitrust class action litigation. The firm has specialized in

14  large class action lawsuits seeking to improve conditions in correctional systems.  For example,

15  the firm is currently lead or co-lead class counsel in the following correctional class actions:

16  *Armstrong v. Brown* (N.D. Cal. No. C 94-2307 CW), a class action on behalf of prisoners and

17  parolees with disabilities incarcerated in the California state prison and parole systems; *Coleman*

18  *v. Brown* (E.D. Cal. No. S 90-0520 LKK-JFM P), a class action on behalf of prisoners with

19  psychiatric disabilities incarcerated in the California state prison system; *Hernandez v. County of*

20  *Monterey* (N.D. Cal. No. 13-cv-2534 PSG), a class action on behalf of prisoners, including

21  prisoners with disabilities, held at the Monterey County Jail; *Hedrick v. Grant* (E.D. Cal. No.

22  2:76-cv-00162-GEB-EFB), a class action on behalf of prisoners and detainees held at the Yuba

23  County Jail; *Sabata v. Nebraska Dep't of Corr. Svs.* (D. Neb. No. 4:17-cv-03107-RFR-MDN), a

24  class action on behalf of prisoners, including prisoners with disabilities, incarcerated in the

25  Nebraska state prison system; and *Babu v. Ahern* (N.D. Cal No. 5:18-cv-07677-NC), a class action

26  on behalf of prisoners, including prisoners with psychiatric disabilities, held at the Alameda

27  County Jails.

28

4.      This matter was primarily staffed by two RBGG attorneys—me and Kara Janssen—both of whom have extensive experience litigating civil rights class actions. This matter was also staffed for a period of time by another RBGG associate, Marc Shinn-Krantz, who assisted while Ms. Janssen was on maternity leave.

5.      I am a partner at RBGG and a 2005 graduate from Columbia Law School. Upon graduation from law school, I clerked for federal judges in the United States District Court for the Central District of California and on the Ninth Circuit Court of Appeals. For the last twelve years, I have served as counsel in *Coleman v. Brown* (E.D. Cal. No. C 94-2307-KJM-DB P), a class action against the California Department of Corrections and Rehabilitation ("CDCR") on behalf of the approximately 38,000 CDCR prisoners with psychiatric disabilities. In that matter, I was a key member of the trial and appellate team that secured a landmark decision by the United States Supreme Court holding that overcrowding in California's prisons resulted in ongoing constitutional violations, and requiring California to reduce its population dramatically. *See Brown v. Plata*, 131 S. Ct. 1910 (2011). On behalf of the same class, I was one of the attorneys who successfully tried a challenge to California's solitary confinement practices as they relate to prisoners with mental health disabilities, which resulted in significant reform. *Coleman v. Brown*, 28 F. Supp. 3d 1068 (E.D. Cal. 2014). I was also counsel of record and successfully argued two recent appeals in which the Ninth Circuit unanimously ruled for the Plaintiff class. *See Coleman v. Brown*, Ninth Circuit Case No. 17-17328 (Nov. 28, 2018 unpublished memorandum disposition affirming October 10, 2017 remedial order benefiting Plaintiff class); *Coleman v. Brown*, Ninth Circuit Case No. 17-16080 (Nov. 28, 2018 unpublished memorandum disposition dismissing appeal of April 19, 2017 remedial order for lack of jurisdiction).

6.      Additionally, in our role as Plaintiffs' counsel, RBGG and our co-counsel, in conjunction with the *Coleman* Special Master, have conducted significant ongoing monitoring of Defendants' compliance with the governing *Coleman* remedial plan and court orders on a routine basis. We have also brought successful enforcement motions on multiple occasions throughout the history of the case, including a series of motions in 2013 addressing CDCR's overreliance on

DECLARATION OF LISA ELLS IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

segregation, inadequate protections against use of force, and inadequate access to inpatient psychiatric care.

7.     Additionally, I served for eight years as counsel in *Armstrong v. Brown* (N.D. Cal. No. C 94-2307), a Title II class action against CDCR on behalf of over 10,000 prisoners and parolees with certain disabilities, including mobility impairments, in which I monitored compliance with the governing remedial plan in addition to successfully representing Plaintiffs on appeal of an order securing additional affirmative relief on behalf of the Plaintiff class.  *Armstrong v. Brown*, 732 F.3d 955 (9th Cir. 2013), *cert denied*, 134 S. Ct. 2725 (2014).  I have also successfully represented numerous clients in disability disputes at the trial and appellate levels, including actions ensuring blind voters have equal access to absentee voting (*California Council of the Blind v. County of San Mateo* (N.D. Cal. No. 3:15-cv-05784-CRB)), establishing the statute of limitations for Title II damages claims (*Sharkey v. O'Neal*, 778 F.3d 767 (9th Cir. 2015)), and ensuring a major transportation provider's website and mobile apps are accessible to blind patrons (*National Federation of the Blind v. Greyhound Lines*, *Inc*. (N.D. Cal No. 3:17-cv-03368-RS)).

8.     Finally, I have significant experience with attorneys' fees, including successfully representing multiple clients in litigating fee petitions in both state and federal court, including on appeal in the California Court of Appeal and the Ninth Circuit Court of Appeals.  I received the 2018 California Lawyer Attorney of the Year Award for my work on the San Mateo accessible absentee voting case, and was named a Northern California Super Lawyer in 2018 and a Rising Star every year from 2012 to 2016.

9.     Kara Janssen is an associate at RBGG and a 2010 graduate of New York University School of Law, where she was a Root-Tilden-Kern Scholar.  Ms. Janssen has substantial experience representing incarcerated individuals with disabilities in litigation involving access to county jail programs and services.  She represented prisoners with disabilities in *Jewett v. Shasta County* (E.D. Cal. No. 2:13-cv-0882 MCE AC (PC)) (class action on behalf of prisoners with mobility disabilities); *LSPC v. Ahern* (Alameda Cnty. Sup. Ct. No. RG12656266) (taxpayer action on behalf of prisoners with mobility disabilities); and in *G.F. v. Contra Costa County* (N.D. Cal. No. 3:13-cv-03667-MEJ) (class action on behalf of juveniles with psychiatric disabilities).

Ms. Janssen is currently counsel in *Sabata v. Nebraska Dep't of Corr. Svs.* (D. Neb. No. 4:17-cv-03107-RFR-MDN), a class action on behalf of prisoners, including prisoners with disabilities, incarcerated in the Nebraska state prison system and *Babu v. Ahern* (N.D. Cal No. 5:18-cv-07677-NC), a class action on behalf of prisoners, including prisoners with psychiatric disabilities, held at the Alameda County Jails. Ms. Janssen was named a Rising Star by Northern California Super Lawyers in 2017 and 2018.

10. Marc Shinn-Krantz is an associate at RBGG and a 2016 graduate of the University of Minnesota School of Law. Prior to joining RBGG, Mr. Shinn-Krantz served as a law clerk to the Honorable Joseph R. Goodwin of the United States District Court for the Southern District of West Virginia. In addition to assisting on this matter while Ms. Janssen was on maternity leave, Mr. Shinn-Krantz is counsel on the *Coleman* matter discussed above, and previously worked for three years as a paralegal on the *Coleman* and *Armstrong* class actions before attending law school.

11. True and correct copies of the RBGG firm and individual resumes detailing the relevant educational background and experience of the attorneys at RBGG who devoted more than 40 hours to this matter are attached hereto as **Exhibit A**.

### RBGG'S BILLING PRACTICES IN THIS CASE

12. I am familiar with the billing and timekeeping practices of RBGG. Timekeepers at our firm are required to make a record of the work they do at or near the time the work is done, and to either personally enter that information into the firm's timekeeping software or to direct a staff member to do so. The firm's timekeeping software maintains these records in the regular course of RBGG's business, and making these records is a regular practice of RBGG in furtherance of the practice of law.

13. In order to track our efforts on this matter we opened a specific matter number in our firm, 1269-1, solely devoted to this matter. Time recorded in that matter was kept contemporaneously.

14. I am familiar with the skill and experience of all of the timekeepers at RBGG who worked on this matter. I reviewed the time entries billed by these timekeepers in the firm's billing

1    records.  The hourly rate applied to all timekeepers for the 1269-1 matter is the firm's regular

2    hourly rate for 2018, which was the rate in effect at the time the parties executed the Consent

3    Decree and the Court issued its Order preliminarily approving the class settlement.

4        15.    Within my firm, I reasonably allocated responsibilities among different

5    timekeepers to assure coordinated and efficient management of the case.  This allocation was done

6    with particular attention to the past experiences and areas of expertise of each attorney and

7    paralegal.  I managed the case to avoid duplication of litigation chores, and to prevent over-

8    staffing of any activity associated with the case or engaging in repetitious, otherwise unnecessary,

9    time expenditures.  RBGG and co-counsel appropriately divided tasks amongst the firms to

10   minimize duplication of effort, ensure that resources necessary for the successful prosecution of

11   this case were available throughout the litigation, and to leverage each firm's relative strengths

12   and efficiencies.  Whenever possible tasks were performed by paralegals, including phone calls

13   and correspondence with clients, as well as fact research.  For a short period of time, I assigned

14   Senior Paralegal Karen Stilber to work on this case as a short-term transition after the departure of

15   the junior paralegal, Sara Long, assigned to the case.  The matter was promptly reassigned back to

16   a more junior paralegal, Hanna Wallace, upon her hiring.

17       16.    Although I believe that my office has performed work on this case efficiently,

18   effectively, with extreme diligence, and without unnecessary duplication, I have nevertheless

19   made billing judgment reductions for the purpose of eliminating any duplication, overstaffing, or

20   overwork.  I have personally carefully reviewed the time records of my firm for this purpose.  I

21   reduced our time entries to omit the time of any biller who spent less than 20 hours on the matter.

22   I also made discrete write-downs of time based upon the same careful review of billing records

23   that I typically conduct prior to sending the final bill to a fee-paying client.  Together, these

24   exercises in billing judgments reduced our lodestar by approximately 225 hours and $105,398.50.

25   Given the voluminous nature of Plaintiffs' counsel's billing records, which have not been fully

26   vetted for work product or other confidential information, Plaintiffs have not submitted them with

27   this motion, although Plaintiffs are happy to provide them to Court upon request.  A summary of

28

1   the hours billed by each biller, the hours no-charged for each biller, and the total hours billed is

2   attached as **Exhibit B.**

3       17.     For all work performed from July 1, 2016 to January 13, 2019, RBGG's lodestar

4   for 1,693.3 hours of work is $910,582.50 using the firm's standard hourly rates for 2018.  The

5   rates sought are:

| Timekeeper | Position | Class | 2018 Rate/Hour |
|---|---|---|---|
| Lisa Ells | Partner | 2005 | $650 |
| Kara Janssen | Associate | 2010 | $525 |
| Marc Shinn-Krantz | Associate | 2016 | $375 |
| Karen Stilber | Senior Paralegal | N/A | $340 |
| Hanna Wallace | Paralegal | N/A | $225 |
| Sara Long | Former Paralegal | N/A | $225 |

15      18.     RBGG's lodestar amount, standing alone and excluding any work performed by

16  DRA, is nearly as high as the total amount agreed to in the Consent Decree, which limits

17  Plaintiffs' total recovery of fees and costs for work performed up through the effective date of the

18  Consent Decree to $1 million.  In my professional opinion, with the billing judgments set forth

19  above, all of the claimed time was reasonable, appropriate, and necessary to the outcome achieved

20  in this case.

21      19.     Prior to initiating the lawsuit, Plaintiffs' counsel expended significant time engaged

22  in extensive formal negotiations with the County for approximately eighteen months in an attempt

23  to avoid litigation.  While ultimately the parties were unable to resolve the issues without

24  litigation, the parties' efforts during this time resulted in an expert assessment of the Jails that laid

25  the groundwork for the ultimate relief negotiated in the Consent Decree.  During the pre-filing

26  negotiations period, the parties agreed to a $15,000 per month cap on attorneys' fees and costs for

27  work related to the negotiations. The parties subsequently agreed to a bi-annual billing process

28  whereby Plaintiffs would submit invoices to the County, including detailed records of work

1  performed, which the County would then pay up to the monthly cap.  Pursuant to the bi-annual

2  billing process, the last invoice submitted by Plaintiffs pursuant to the pre-filing negotiation

3  agreement was dated August 23, 2016 and only covered attorneys' fees and costs through June 30,

4  2016.  As a result, Plaintiffs have never received compensation for any work performed after July

5  1, 2016.

6       20.   A summary of the key work performed by Plaintiffs' counsel at each stage of the

7  litigation, beginning July 1, 2016, is set forth below.

8
        **JULY 1, 2016 THROUGH NOVEMBER 13, 2016:**
        **PRE-FILING NEGOTIATIONS, COMMUNICATIONS WITH INMATES WITH**
9       **MOBILITY DISABILITIES, DRAFTING OF COMPLAINT**

10      21.   From July 1, 2016 to November 13, 2016, the parties continued to meet and confer

11  in an ultimately unsuccessful effort to resolve these issues without litigation.  As part of these

12  negotiations, Plaintiffs' counsel spent a significant amount of time meeting and conferring with

13  County Counsel by phone and through email, reviewed and commented on a significant number of

14  the County's policies and procedures, and negotiated language as part of a proposed Memorandum

15  of Understanding to address physical and programmatic access issues at the Jails.  During this

16  time Plaintiffs' counsel met with, and received and responded to correspondence from, inmates

17  with mobility disabilities at the Jails in order to fully understand the problems faced by inmates

18  and to keep Plaintiffs' retained clients informed of the status of negotiations.  When it became

19  clear, in our professional judgment, that Plaintiffs' counsel would need to file a lawsuit in order to

20  protect the rights of inmates with disabilities at the Jails and to prevent future harm, Plaintiffs'

21  counsel met with the retained clients as well as additional inmates with mobility disabilities, some

22  of whom retained Plaintiffs' counsel to pursue this litigation on their behalf.  Plaintiffs' counsel

23  also during this time period performed work related to assisting clients with ensuring exhaustion

24  of claims via County grievance processes, drafting and reviewing retainer agreements with clients,

25  requesting and reviewing clients' medical records for disability-related issues, and conducting

26  other legal and factual research antecedent to drafting the complaint, which was filed on

27  November 14, 2016.

28

DECLARATION OF LISA ELLS IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND
COSTS

**NOVEMBER 14, 2016 – APRIL 30, 2017:**
**FILING OF COMPLAINT AND INITIATION OF GENERAL ORDER 56 PROCESS**

22.     On November 14, 2016, Plaintiffs commenced this action on behalf of themselves and all others similarly situated and asserted claims under the ADA, Rehabilitation Act, and California Government Code § 11135.  During this time period, Plaintiffs negotiated and filed two protective orders with the Court (Dkt. Nos 12, 13), and reviewed and analyzed Defendants' answer to the Complaint, filed January 23, 2017 (Dkt. No. 18).

23.     This matter was subject to the Northern District of California's General Order 56 process, which governs suits alleging clams under the ADA.  General Order 56 requires the parties to engage in settlement negotiations and to exchange initial disclosures and conduct an early site visit to facilitate such negotiations.

24.     Pursuant to General Order 56, the parties conducted two full-day tours of the Jails, which were attended by Plaintiffs' counsel and County Counsel.  The parties toured Elmwood and the Elmwood Complex Women's Facility on February 7, 2017 and the Main Jail on February 15, 2017.  The parties exchanged disclosures on March 1, 2017 and continued to voluntarily exchange documents and information as needed to facilitate settlement discussions.  Following the tours, the parties met and conferred in person on March 13, 2017, held multiple conference calls, and exchanged numerous emails in an attempt to resolve this litigation.  The parties were unable to reach agreement and thus, per the process outlined in General Order 56, filed a Notice of Need for Mediation on April 10, 2017 jointly requesting assignment to the Honorable Nathanael Cousins for mediation purposes. (Dkt. No. 22).

25.     Throughout this time period, Plaintiffs' counsel continued to visit with inmates with mobility disabilities at the Jails, responded to letters and phone inquiries from inmates with mobility disabilities at the Jails, and reviewed records of such inmates as well as documents produced by the County intended to assist with the General Order 56 process.

/ / /

/ / /

/ / /

**MAY 1, 2017 – JULY 17, 2018: ONGOING NEGOTIATIONS PURSUANT TO GENERAL ORDER 56, INCLUDING ELEVEN FORMAL SETTLEMENT CONFERENCES, COMPLETION OF NEGOTIATIONS FOR NON-MONETARY COMPONENTS OF CONSENT DECREE AND CLASS CERTIFICATION**

26.     In compliance with General Order 56, on May 4, 2017 the Court set the first settlement conference with Magistrate Judge Cousins for August 17, 2017.  (Dkt. No. 24).  In preparation for the first settlement conference, Magistrate Judge Cousins requested a tour of the Jails, and the parties and Judge Cousins accordingly conducted an additional full-day tour of the Jails on June 23, 2017.  Following that tour, the Plaintiffs prepared and submitted confidential and non-confidential mediation statements and exhibits, and attended the full-day mediation on August 17, 2017.

27.     The focus of the initial mediations was on the construction-related relief.  In order to properly address construction-related issues, Plaintiffs met with and retained an independent architectural expert who attended the August 17, 2017 mediation.  The parties participated in an additional mediation before Magistrate Judge Cousins on September 25, 2017, held numerous conference calls, exchanged extensive drafts of the remediation proposal and countless emails and letters, and were able to reach an agreement in principle on the construction pieces in October 2017.

28.     The second phase of negotiations focused on operational issues, including the County's intake process, identification of inmates' mobility disabilities and disability-related needs, issuance of mobility devices, classification and housing of inmates with mobility disabilities pending completion of construction, tracking, programs and services, policy review and revision, training, the ADA Coordinator's role, and ADA-specific grievance and request processes.  The parties participated in four more mediations before Magistrate Judge Cousins on November 6, 2017, November 27, 2017, December 11, 2017, and January 26, 2018, held numerous conference calls, exchanged extensive drafts of the operational proposal and countless emails, and were able to reach an agreement in principle on the operational pieces in January 2018.  Each of these mediations required significant preparation and the parties continued

DECLARATION OF LISA ELLS IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

1   negotiations by phone and email in between formal mediation sessions, including exchanging

2   drafts of proposed remedial plan provisions.

3        29.    The third phase of negotiations began at the end of January 2018 and focused on

4   the terms of the Consent Decree, including monitoring, enforcement, dispute resolution, duration

5   of the agreement, release, and the settlement approval process.  Over the course of the next six

6   months, the parties held five more mediations before Magistrate Judge Cousins on March 29,

7   2018, April 27, 2018, May 7, 2018, May 31, 2018, and June 12, 2018, participated in numerous

8   conference calls, and exchanged extensive drafts of the consent decree terms and countless emails.

9   Each of these mediations required significant preparation and the parties continued negotiations by

10  phone and email between formal mediation sessions.  The parties did not discuss the monetary

11  aspects of the Consent Decree during this time period.

12       30.    In June of 2018, the parties also revisited the operational aspects of the settlement

13  at the County's request, as part of the process of finalizing the Consent Decree.  After exchanging

14  four additional drafts and holding two additional phone conferences, the parties reached final

15  agreement on all non-monetary aspects of the class settlement on July 16, 2018.  Plaintiffs also

16  began drafting the preliminary approval papers during this period, at the County's behest.

17       31.    In total, the parties engaged in eleven (11) mediation sessions, and numerous

18  additional conferences, either in-person or by phone.  These negotiations were time- and resource-

19  intensive for both parties and were ultimately successful in resolving all non-monetary

20  components of the Consent Decree

21       32.    While settlement efforts were ongoing, Plaintiffs' counsel continued to meet with

22  inmates with mobility disabilities at the Jails, respond to phone calls and letters from inmates with

23  mobility disabilities at the Jails, and review records produced by Defendants as part of settlement

24  efforts.

25       33.    During this time period, Plaintiffs' counsel also negotiated, drafted, and filed a

26  Joint Motion for Class Certification and supporting papers, along with a Motion for

27  Administrative Relief from General Order 56 to allow the parties to file the Joint Motion for Class

28

DECLARATION OF LISA ELLS IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

1   Certification. (Dkt Nos. 34, 35). The Court granted the Joint Motion for Class Certification on

2   February 8, 2018.  (Dkt. No. 38).

3           34.     Plaintiffs' counsel further prepared for and attended a Case Management

4   Conference, including preparation of a status conference statement, before the Court on June 22,

5   2018, where the Court made clear that the parties must conclude their lengthy settlement

6   discussions in the near term or move forward with litigation.  The Court ordered the parties to

7   complete negotiations on the merits by July 16, 2018 and to complete negotiations pertaining to

8   attorneys' fees and costs by August 15, 2018, with periodic reporting to the Court regarding the

9   status of each piece.  The parties were able to meet the July 16, 2018 deadline and filed a Joint

10  Status Report with the Court on July 17, 2018 (Dkt. No. 56) confirming that the parties had

11  resolved all non-monetary disputes related to the merits of the case and were scheduled to mediate

12  the issues of attorneys' fees and costs, including for monitoring and enforcement, before a private

13  mediator with JAMS on July 24, 2018.

14  **JULY 18, 2018 – OCTOBER 22, 2018: NEGOTIATION OF MONETARY COMPONENTS**
    **OF CONSENT DECREE AND FINALIZING OF CONSENT DECREE AND**
15  **ASSOCIATED DOCUMENTS**

16          35.     The parties participated in two formal mediations before Martin Quinn of JAMS in

17  order to attempt to resolve the issues of attorneys' fees and costs, including for enforcement and

18  monitoring of the Consent Decree.  Prior to the first mediation, Plaintiffs' filed a comprehensive

19  29-page mediation brief attaching 259 pages of supporting exhibits detailing the justification for

20  an award of attorneys' fees and costs.  Plaintiffs participated in a full day mediation at JAMS on

21  July 24, 2018 where the parties were unable to reach agreement on the monetary aspects of the

22  Consent Decree.  Following that mediation, the parties engaged in additional efforts over phone

23  and by email to resolve the monetary components of the Consent Decree, and Plaintiffs prepared

24  and sent Defendants copies of Plaintiffs' counsels' billing records for review, including extensive

25  review of the many hundreds of pages of records for reasonable billing judgments.

26          36.     The parties filed a Joint Mediation Status Report with the Court on August 22,

27  2018 (Dkt. No. 58) updating the Court on their settlement efforts and requesting an extension of

28  previously ordered deadlines to accommodate scheduling of a second mediation session before

1   JAMS on September 6, 2018.  The Court granted the parties' request for an extension on August

2   23, 2018.  (Dkt. No. 59).

3       37.     The parties participated in a second mediation on September 6, 2018, including

4   preparing additional mediation statements.  While the parties were unable to resolve the non-

5   monetary components of the Consent Decree at that mediation, the parties continued to meet and

6   confer with each other and the mediator and were able to reach agreement shortly thereafter.  On

7   September 10, 2018, the parties filed a Joint Status Update with the Court indicating that the

8   parties had reached agreement on all substantive components of the Consent Decree, and, subject

9   to finalizing the language of a few remaining terms, the County was on track to present the

10  settlement package to the County Board of Supervisors for approval and to file a joint motion for

11  preliminary approval with the Court.  (Dkt. No. 60).  Through additional exchanges of proposed

12  draft language and phone calls, the parties were able to negotiate and finalize all settlement-related

13  documents prior to October 22, 2018.  (Dkt. No. 63).

14      38.     During this time period, Plaintiffs' counsel continued to meet with inmates with

15  mobility disabilities at the Jails and respond to phone calls and letters from inmates with mobility

16  disabilities at the Jails.

17  **OCTOBER 23, 2018 – MARCH 21, 2019; PRELIMINARY APPROVAL MOTION, CLASS
    NOTICE, FEE MOTION, AND FAIRNESS HEARING**

18

19      39.     During this period, Plaintiffs negotiated, researched, and drafted the parties' Joint

20  Motion for Preliminary Approval of Class Settlement and supporting papers, which were filed on

21  November 12, 2018.  (Dkt. No. 66).  Plaintiffs' counsel prepared for and attended the preliminary

22  approval hearing on December 6, 2018.  During the hearing the Court ordered the parties to (1)

23  file a declaration affirming that Defendant complied with the notice requirements of the Class

24  Action Fairness Act ("CAFA") of 2005; (2) file a corrected Consent Decree that fixed a

25  typographical error that resulted in the Consent Decree § VIII citing to 28 U.S.C. § 3626 instead

26  of 18 U.S.C. § 3626; and (3) file a revised Notice that provided that objectors must also include

27  their name, address, and signature in any objections.  The parties also requested to add language

28  from the Northern District of California's Procedural Guidance for Class Action Settlements that

DECLARATION OF LISA ELLS IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND
COSTS

the Court could only approve or reject the settlement and could not change the terms of the settlement. On December 7, 2018, Plaintiff filed a corrected version of the Consent Decree that fixed the typographical error referenced by the Court and a revised Notice that updated the original proposed Notice to require that objectors include their name, address, and signature in any objections, and added language stating that the Court may only approve or deny the Consent Decree and cannot change the terms of the Consent Decree.  (Dkt. No. 72).  The Court issued its order preliminarily approving the class settlement and notice to the class on December 7, 2018. (Dkt. No. 73).

40.     Plaintiffs also drafted the parties' Joint Motion for Final Approval of Class Settlement and supporting papers.  Additionally, Plaintiffs drafted Plaintiffs' Motion for Attorneys' Fees and Costs and supporting papers, including additional review of time entries for further billing judgments, as required by the Court's Order setting the deadline for filing of both motions as January 14, 2019.  (Dkt No. 73).

41.     Between the date of this filing and the hearing for final approval slated for March 21, 2019, the parties have agreed to post notice in compliance with the Court's December 7, 2018 Order.  Plaintiffs' counsel anticipates we will receive and respond to numerous inquiries by class members regarding the Consent Decree once it is posted in the Jails.  Additionally, the parties have already started the process of negotiating appropriate revisions to the County's policies and procedures consistent with the Consent Decree's requirements; that process will remain ongoing between now and the final approval hearing and must be completed by November of this year. *See* Section VIII of Remedial Plan, filed as Exhibit A to the Consent Decree filed as Exhibit 1 to my concurrently filed declaration in support of the Joint Motion for Final Approval (requiring the parties to meet and confer within 30 days of the execution of the Consent Decree to designate policies that will require revision and review, revise, and finalize the proposed policies within one year of execution).

42.     As ordered by the Court, Plaintiffs will also need to prepare and file a reply motion and revised proposed order in support of the parties' joint motion for final approval responding to any objections made to the Consent Decree on March 14, 2019.  Plaintiffs will also file a reply

1    motion in support of this motion for attorneys' fees and costs at that time detailing Plaintiffs'

2    counsels' lodestar for work performed during this period.  Finally, Plaintiffs will prepare for and

3    argue at the final approval hearing on March 21, 2019.  We also expect to continue to

4    communicate with class members regarding conditions at the Jail.

5         43.     Accordingly, we estimate that we will expend an additional 40 hours on the above

6    tasks between now and March 21, 2019.

7                **COURTS HAVE REGULARLY APPROVED RBGG'S HOURLY RATES**

8         44.     Plaintiffs are entitled to attorney fee compensation at full market rates for

9    prevailing on the disability-related claims, pursuant to sections 12132 and 12188 of the ADA,

10   section 794 of the Rehabilitation Act, Article I, Sections 7 and 17 of California Constitution,

11   California Government Code § 11135, and California Code of Civil Procedure § 1021.5.

12   *Armstrong v. Davis*, 318 F.3d 965, 970-71 (9th Cir. 2003) (concluding that the PLRA does not

13   apply to work on ADA cases brought on behalf of prisoners).

14        45.     My firm's hourly billing rates are charged to and paid by our numerous clients who

15   pay by the hour on a monthly billing basis, in matters arising both inside and outside the State of

16   California.  In accordance with the prevailing market practice, my firm bills clients who pay for

17   past work at current hourly rates.

18        46.     As a partner of the firm, I participate in setting my firm's rates at least once per

19   year.  I also engage in discussions with fee paying clients about rates.  In order to help set rates for

20   my firm, I pay special attention to many sources of information regarding the legal marketplace.

21   The sources upon which my partners and I rely include, but are not limited to: (1) my own

22   involvement in attorneys' fees litigation; (2) discussing attorneys' fees, billing, and work practices

23   with other attorneys; (3) representing other attorneys seeking fees and/or providing expert

24   declarations regarding fees to other attorneys; (4) obtaining declarations from other attorneys

25   regarding market rates, attorneys' fees, billing and work practices; (5) reviewing surveys, legal

26   newspapers, reported decisions, and treatises regarding prevailing attorneys' rates, fees, billing

27   and work practices; (6) reviewing attorneys' fees applications and awards in other cases, as well as

28   unpublished decisions; and (7) reviewing rates charged by, and billing and work practices of, other

DECLARATION OF LISA ELLS IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND
COSTS

1    firms that my firm has retained or with whom it has associated.

2        47.      Every year, when my partners and I set rates for the firm, we consider the

3 information we are able to gather regarding other firms' rates, the work we are performing, and the

4 experience of our attorneys and staff and our ongoing communications with our fee-paying clients

5 and potential clients concerning our rates. This is a careful analysis we do each year by gathering

6 information from numerous law firms and reviewing articles and other public sources of

7 information, such as fee petitions and awards and the information listed above in paragraph 46, to

8 determine the range of prevailing rates in this area for attorneys with similar levels of experience

9 performing work of similar complexity. Traditionally, attorneys' billing rates increase each year to

10 reflect the increased experience level of the attorney and in accordance with prevailing market

11 practice. For example, my billing rate in 2013 was $450 an hour and my current billing rate in

12 2019 is $700. A 2010 law school graduate, similar to Ms. Janssen, would have had a billing rate

13 of $355 in 2013 and a billing rate of $540 in 2019, which is Ms. Janssen's current 2019 rate.

14        48.      My partners and I regularly bill clients our full hourly rates and the full hourly rates

15 for the senior counsel, associates, and paralegals with whom we work, and our firm is paid those

16 rates.

17        49.      My firm's hourly rates are comparable to those of other attorneys in the San

18 Francisco Bay Area, Los Angeles, and elsewhere in California. They are also the rates we claim in

19 our fee applications in all our fee-shifting cases, both inside and outside the San Francisco Bay

20 Area. They have been accepted consistently by courts in California, including the following:

21        a.      *Armstrong v. Brown*, No. 4:94-cv-02307-CW, Stipulated Order Confirming

22 Undisputed Attorneys' Fees and Costs for the Second Quarter of 2018 (Dkt No. 2772) (N.D. Cal.

23 September 12, 2018) (approving RBGG's 2018 rates, attached hereto as **Exhibit C**);

24        b.      *Nat'l Fed'n of the Blind v. Uber Tech.*, No. 14-cv-04086-NC, Order

25 Granting Final Approval and Attorneys' Fees (Dkt. No. 139) (N.D. Cal. Dec. 6, 2016) (approving

26 RBGG's and co-counsel DRA's attorneys' fees based on 2016 rates, attached as Exhibit C to the

27 concurrently filed Declaration of Stuart Seaborn in support of Plaintiffs' Motion for Attorneys'

28 Fees and Costs);

DECLARATION OF LISA ELLS IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

1    c.    *Hernandez v. Cnty. of Monterey*, No. 5:13–CV–2354–PSG, Order Granting

2  Attorneys' Fees and Expenses (Dkt. No. 510)  (N.D. Cal. November 9, 2015) (approving RBGG's

3  requested lodestar based on RBGG's 2015 rates, attached hereto as **Exhibit D**);

4    d.    *Armstrong v. Brown*, 805 F. Supp. 2d 918, 922 (N.D. Cal. 2011)

5  (compelling defendants to pay RBGG's "reasonable 2010 hourly rates" including $360 for Lisa

6  Ells);

7    e.    *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010)

8  (affirming RBGG's requested 2008 rates).

9    50.    There is but a small bar of attorneys available who have the specialized experience

10  and the willingness to take on complex prisoner rights cases.  Prisoner rights cases are generally

11  unattractive to the bar because of (a) the specialized knowledge necessary to competently conduct

12  such litigation, (b) the perception of danger from prisoner clients, (c) the time entailed in fighting

13  the government and the difficulty connected with client communications, (d) the delay in payment,

14  (e) the substantial disbursements that counsel must front, and (f) the uncertainty of payment.

15  During recent, the movement to restrict prisoner rights, to punish prisoners, and to take away

16  rights, privileges, and services from prisoners, has been popular and active.  Moreover, this case

17  required a significant expenditure of RBGG time and resources, due to the complexity of the legal

18  issues and the significant factual questions that had to be investigated and developed.  RBGG

19  agreed to represent Plaintiffs on a contingency basis.  My firm's expenditure of time on this case

20  precluded RBGG from taking on other engagements or matters for clients who may have been

21  able to pay market rates.  However, our firm was willing to forego those opportunities to help

22  secure a settlement that will provide meaningful and important relief to the prisoners in the Jails.

23  Over the past two-and-a-half years, RBGG has paid the salaries for the attorneys and staff who

24  worked on this case.

25    51.    Prison litigation demands a high level of expertise as it involves difficult

26  constitutional, legal, and factual questions.  This case involved novel and difficult issues of law

27  that a general practitioner would have had to spend a large amount of time to gain the background

28  preparation and specialized knowledge necessary to litigate this case.  Plaintiffs' counsels'

16    Case No. 5:16-cv-06594-LHK

understanding of the intricacies of prison and jail systems, including through cases filed to address conditions in the Sutter, Yuba, Alameda, and Monterey County Jails and the California and Nebraska prison systems, and our knowledge of the applicable laws and standards, including the ADA, all helped to streamline the litigation process.  As a result, Plaintiffs' counsel obtained exceptional results.

52.     As a result of my work in large prison and jail cases, I have become familiar with the small body of attorneys – both in California and nationwide – that practice in this area.  Based on this familiarity, I can state that RBGG is one of the only private law firms in California that I know of that devotes a significant portion of its practice to complex prison and jail conditions litigation.

**LITIGATION EXPENSES INCURRED**

53.     RBGG advanced costs and expenses to fund and further the litigation.  Attached hereto as **Exhibit B** is a document summarizing the categories of costs and expenses RBGG has incurred from July 1, 2016 to January 13, 2019.  RBGG's total costs and expenses to date are $9,800.60.

54.     I have reviewed the cost and expense ledgers and **Exhibit B** and determined that each of the costs and expenses—including amounts for legal research, experts, postage, and filing and service fees—was appropriately incurred in furtherance of the case.

55.     We anticipate incurring additional expenses through the date of final approval. Shortly before the motion for final approval, I will file a supplemental declaration describing the costs and expenses incurred from January 14, 2019 through final approval.

**Estimates of Work Required to Implement, Monitor, and Enforce the Consent Decree**

56.     RBGG has many decades of extensive experience as class counsel in monitoring and enforcing compliance with prison and jail judgments, settlements and consent decrees, as well as many non-correctional judgments, settlements and consent decrees, and takes these obligations very seriously.  I regularly engage in monitoring work on the *Coleman* case, which addresses access and conditions affecting prisoners with psychiatric disabilities at every California state prison.  I have also worked on monitoring in our *Armstrong* case, which addresses disability

17

DECLARATION OF LISA ELLS IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

discrimination in California's prison and parole systems.  RBGG also serves as class counsel monitoring compliance with the court-ordered consent decree in *Hernandez,* which addresses conditions affecting prisoners at Monterey County Jail, including prisoners with disabilities.  From 2005 through 2013, RBGG monitored the *Valdivia v. Schwarzenegger* consent decree which governed parole revocation proceedings throughout California.  *See Valdivia v. Schwarzenegger,* 599 F.3d 984 (9th Cir. 2010).  As part of this monitoring work, I and my RBGG colleagues regularly review compliance and other prison and jail documents, tour prisons and jails, negotiate remedial policies and procedures, and meet and correspond with prisoners, prison officials, court-appointed masters, and experts to ensure prisoners' needs are being met in light of the consent decrees and judgments entered by the Courts.

57.     I and my colleagues at RBGG also routinely advocate for our clients in these cases in both formal and informal ways, including where necessary by bringing enforcement motions and defending on appeal remedial orders we have secured on behalf of the class.  A few recent examples of enforcement actions I have worked on personally include:  *Brown v. Plata*, 131 S. Ct. 1910 (2011); *Armstrong v. Brown*, 732 F.3d 955 (9th Cir. 2013), *cert denied*, 134 S. Ct. 2725 (2014); *Coleman v. Brown*, 28 F. Supp. 3d 1068 (E.D. Cal. 2014); *Coleman v. Brown*, Ninth Circuit Case No. 17-17328 (Nov. 28, 2018 unpublished memorandum disposition affirming October 10, 2017 remedial order benefiting Plaintiff class); *Coleman v. Brown*, Ninth Circuit Case No. 17-16080 (Nov. 28, 2018 unpublished memorandum disposition dismissing appeal of April 19, 2017 remedial order for lack of jurisdiction).

58.     As class counsel in these matters, RBGG attorneys and paralegals spend many thousands of hours per year on monitoring and, where necessary, enforcement.  In *Coleman*, the statewide prison mental health case, Plaintiffs' counsel have expended over 10,000 hours in the past year in monitoring and enforcement work.  I review the billing entries for the *Coleman* matter and am intimately familiar with the monitoring and enforcement work performed in that case and the amount of time such tasks reasonably take to perform.

59.     Similarly, in *Armstrong*, the statewide prison disabilities case, Plaintiffs' counsel performed over 5,200 hours of monitoring work in the past year.

DECLARATION OF LISA ELLS IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

60.     In *Hernandez*, the Monterey County Jail case, RBGG attorneys have been monitoring compliance with the class settlement since 2016 and spend an average of 1,000 hours per year on monitoring activities.  In addition, during the past year, Plaintiffs' counsel in *Hernandez* spend over 650 hours litigating an enforcement motion.  The *Hernandez* settlement includes dollar caps on monitoring and enforcement.  Plaintiffs' counsel have spent many more hours monitoring and enforcing the *Hernandez* settlement than can be compensated due to the cap.

61.     RBGG expects to take the lead on monitoring of the instant Consent Decree with assistance from and consultation with co-counsel DRA.  My estimate of the work needed to implement, monitor compliance with, and, if needed, enforce the Consent Decree in this matter is based on my and my partners' extensive experience monitoring these types of cases.  In this case, Plaintiffs' counsel will be obliged to: respond to letters, phone calls, and other communications from class members; prepare for, travel to, and attend tours of facilities; draft reports following tours of facilities and confer with Defendants regarding same; review and respond to documents produced by Defendants; review and respond to reports issued by third-party monitors; attend tours conducted by third-party monitors; and address disputes through the dispute resolution process and, if necessary, by filing motions to enforce compliance.  The monitoring amount estimates contained in Plaintiffs' Motion for Attorneys' Fees and Costs assume a blended rate of $575 solely for purposes of estimation.  Actual work performed will be at the current rate of the attorney performing the work which, as explained in paragraph 47, will vary and will increase each year in accordance with the attorney's increasing level of experience.

62.     Finally, in my experience monitoring construction projects required by remedial orders in *Coleman*, and in my familiarity with remedial construction required in other correctional litigation, it is very common for large government construction projects to be delayed, sometimes by multiple years.  In this case, the County's planned construction projects to remedy various architectural barriers in its existing facilities have already suffered delays, and the New Jail construction project is still in the early stages of planning.  The County itself has recognized the possibility of delay, noting in the Consent Decree that its construction projections are highly dependent on third-party contractors.  Based on my experience, I believe there is a strong

DECLARATION OF LISA ELLS IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

possibility that the County's current projected completion date for the New Jail in Spring 2023 will be pushed back to a later date.  In that case, the term of the Consent Decree will extend beyond the 5.5 years currently projected.  Plaintiffs' counsel will continue to monitor and enforce the terms of the Consent Decree for a longer period if that is the case, but will not receive any additional compensation beyond the $2.2 million agreed to in the Consent Decree.

63.     In anticipation of the Court's final approval of the settlement, and as detailed in the Consent Decree at Section VI.B., RBGG has established a duly constructed and authorized qualified settlement fund, or QSF, with Eastern Point Trust Company that will directly receive and hold the $2.2 million payment from the County for future fees.  Plaintiffs' counsel will on a periodic basis request disbursements from the QSF as compensation for monitoring and enforcement work actually performed, including through the submission of documentation substantiating the fees and costs expended for which compensation is being sought, during the length of the Term.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed at San Francisco, California this 14th day of January, 2019.

*/s/ Lisa Ells*
Lisa Ells

DECLARATION OF LISA ELLS IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

# Exhibit A



**Lisa Ells**

101 Mission Street, Sixth Floor
San Francisco, California  94105-1738

T: (415) 433-6830
F: (415) 433-7104
E: lells@rbgg.com

## EXPERIENCE

Lisa Ells is a partner with Rosen Bien Galvan & Grunfeld in San Francisco, where she focuses on complex civil litigation with an emphasis on civil rights, First Amendment, and appellate law.

Lisa previously clerked for the Hon. James R. Browning on the Ninth Circuit Court of Appeals, and the Hon. David O. Carter in the Central District of California. She had a successful career as a business consultant and product manager at a technology start-up before entering the law.

## REPRESENTATIVE FEDERAL COURT MATTERS

- *Coleman v. Brown*:  For twelve years, Lisa has represented a class of over 37,000 prisoners with serious mental illness in this longstanding injunctive case concerning the constitutionally deficient mental health care system in California's prisons.  *See* 912 F. Supp. 1282 (E.D. Cal. 1995).  She was part of the trial and appellate team that secured the historic prison overcrowding ruling in *Brown v. Plata*, 131 S.Ct. 1910 (2011).  In recent years, Lisa and the RBGG team successfully defeated the State's efforts to terminate the case by establishing ongoing Eighth Amendment violations, *see* 938 F. Supp. 2d 955 (E.D. Cal. 2013), and secured numerous orders for systemic improvements, including reforms related to overuse of segregation, inappropriate use of force, and timely access to inpatient psychiatric hospitalization, *e.g.*, 28 F. Supp. 3d 1068 (E.D. Cal. 2014).  Lisa has also handled six appeals arising out of this matter to date, including two in which the Ninth Circuit unanimously ruled for Plaintiffs in November 2018 and an additional two that the State voluntarily dismissed after the completion of briefing.  The final two appeals remain pending in the Ninth Circuit.

- *Armstrong v. Brown*:  As class counsel for California prisoners and parolees with disabilities, Lisa served as a monitor for eight years and helped secure two Ninth Circuit decisions holding that the State is responsible for taking steps to ensure class members' disability needs are accommodated when the State houses them in third-party county jails.  *See* 732 F.3d 955 (9th Cir. 2013), *cert denied*, 134 S.Ct. 2725 (2014); 622 F.3d 1058 (9th Cir. 2010).

- *California Council of the Blind v. County of San Mateo*:  In a groundbreaking challenge to California's inaccessible system of paper absentee ballots, Lisa obtained a favorable settlement on behalf of two blind voters and an association of blind and low-vision individuals requiring the Secretary of State and San Mateo to offer technology permitting

[13622.9]



voters with vision impairments to read and mark absentee ballots privately and independently. She was awarded the 2018 *California Lawyer* Attorney of the Year award.

- *Sharkey v. O'Neal*: Lisa obtained a unanimous total reversal of an order dismissing her client's disability discrimination case by establishing that a three-year statute of limitations applies to ADA claims brought against public entities in California, rather than the previously assumed two years. *See* 778 F.3d 767 (9th Cir. 2015).

- *Cole v. County of Santa Clara*: Lisa represents current and future prisoners with mobility disabilities in a suit to remedy long-standing inaccessibility issues in the County's jails.

- *National Federation of the Blind v. Greyhound Lines, Inc.*: Lisa and her co-counsel secured a settlement agreement requiring Greyhound to ensure its website and mobile software applications are accessible to blind people who use screen-access technology.

- The Prison Legal News matters: Lisa has successfully represented this publisher client in numerous First and Fourteenth Amendment lawsuits concerning PLN's right to reach readers in prisons and jails in California, Nevada, and Arizona, including securing a preliminary injunction and multiple consent decrees.

## EDUCATION

**Columbia Law School**                                                     **J.D., May 2005**
James B. Kent and Harlan Fiske Stone Scholar
*Columbia Law Review*, Notes Editor
Research assistant to Professors Kent Greenawalt, Jeffrey Fagan, and James Liebman

**Duke University**          **B.A. in Political Science and History, *cum laude*, May 1997**
Pi Sigma Alpha and Phi Eta Sigma Honor Societies

## REPRESENTATIVE PRESENTATIONS AND PUBLICATIONS

Jacobus TenBroek Disability Law Conference, panelist, "Voting Rights and Disability" (2016)

California Counsel of the Blind Conference, presenter, "Accessible Absentee Voting" (2016)

Ninth Circuit Pro Se Conference, panelist, "Developments in Prisoner Medical and Mental Health Care Law" (2015)

Berkeley School of Law Symposium, panelist, "Caged and Forgotten: California Lockup and Mental Health Treatment" (2014)

"Court Should Affirm Ninth Circuit on Crisis Intervention Policing," Daily Journal (2014)

*Juvenile Psychopathy: The Hollow Promise of Prediction*, 105 Colum. L. Rev. 458 (2005)

## PROFESSIONAL AND VOLUNTEER ASSOCIATIONS

Berkeley Law Foundation, Board of Directors and Grants Committee Co-Chair

Disability Rights Bar Association

Bar Association of San Francisco



**ROSEN BIEN
GALVAN & GRUNFELD LLP**

**Kara J. Janssen**

101 Mission Street, Sixth Floor
San Francisco, California  94105-1738

T:  (415) 433-6830
F:  (415) 433-7104
E:  KJanssen@rbgg.com

---

## EXPERIENCE

**Rosen Bien Galvan & Grunfeld LLP, San Francisco, California**            2016 – Present
**Associate Attorney**

General and complex civil litigation, with an emphasis on civil rights, employment, business, and attorneys' fees cases, at the trial court and appellate levels.

**Disability Rights Legal Center, Los Angeles, California**            August 2015 – July 2016
**Staff Attorney**

Class action litigation and individual representation on behalf of people with disabilities.  Lead attorney on multiple matters in charge of all communications, drafting of legal documents, management of discovery, and settlement efforts.  Responded to intakes including legal and factual research to determine viability of claims and whether further action is warranted.  Communicated with media regarding case developments and performed outreach to the community.

**Disability Rights Advocates, Berkeley, California**
**Staff Attorney**                                                          September 2012 – August 2015
**John W. Carson/LD Access Fellow**                                         September 2010 – September 2012

Class action litigation and structured negotiations to advance the rights of people with disabilities.  Drafted pleadings and motions, handled communications with clients, opposing counsel, and courts.  Managed discovery including written discovery and depositions.  Prepared settlement conference statements and draft settlement agreements.  Handled administrative proceedings including special education due process hearings.  Prepared press releases, communicated with media regarding case developments and performed outreach to the community.

**NYU Offender Reentry Clinic, New York, New York**            August 2009 – May 2010
**Student Advocate**

Litigated employment discrimination cases involving individuals denied licenses by New York State.  Advocated for use of alternatives to incarceration and presented policy recommendations to the New York Secretary of State.



**Disability Rights Advocates, Berkeley, California**          **May 2009 – August 2009**
**Summer Associate**
Performed legal research and assisted with the drafting of motions, declarations, and written discovery.

**The Legal Aid Society, New York, New York**          **January 2009 – May 2009**
**Student Advocate, Immigration Law Unit**
Conducted intake interviews, performed legal research, and assisted in the representation of detained immigrants in removal proceedings.

**Bazelon Center for Mental Health Law, Washington, D.C.**          **June 2008 – August 2008**
**Legal Intern**
Conducted research and prepared memoranda of law for attorneys on issues relating to the incarceration of individuals with disabilities.

**New York University School of Law, New York, New York**          **June 2008 – August 2008**
**Research Assistant for Professor Anthony Thompson**
Conducted research regarding the constitutionality of juvenile offenders sentenced to life imprisonment without the possibility of parole.

## EDUCATION

**New York University School of Law**          **J.D., May 2010**
**New York, New York**
*Honors:*  Recipient of the Root-Tilden-Kern Scholarship: full merit scholarship for public service, academic merit and leadership.

*Activities:*  Mental Health Law Association, Co-founder and President; Law Students for Human Rights, Project Leader; Mediation Organization, Treasurer and Coach; National Lawyers Guild Detainee Working Group, Co-chair.

**University of Arizona, Tucson, Arizona**          **B.A. in Psychology, *magna cum laude*, May 2006**
*Honors:*  Recipient of Full Tuition Scholarship for Academic Excellence; Phi Beta Kappa, Alpha of Arizona Chapter.

## BAR ADMISSIONS

State Bar of California No. 274762 (2010)
U.S. District Courts for the Northern and Central Districts of California
U.S. Courts of Appeals for the Second and Ninth Circuits

## PUBLISHED CASES

*Noel v. New York City Taxi & Limousine Comm'n*, 687 F.3d 63 (2d Cir. 2012)
*Noel v. New York City Taxi & Limousine Comm'n*, 837 F. Supp. 2d 268 (S.D.N.Y. 2011)

[321337.1]

## PUBLICATIONS/PRESENTATIONS

"Making the ADA Work for Indigent Clients" Federal Public Defender's Office for the Central District of California, July 27, 2018, Los Angeles, California

"Strategies for Litigating on behalf of Incarcerated People with Disabilities" ACLU National Prison Project Webinar, May 18, 2017

"How to Litigate the Disability Rights of Incarcerated Persons" Jacobus tenBroek Disability Law Symposium, March 30, 2017, Baltimore, MD

Co-Panelist, "Education Rights," Juvenile Law Institute, January 29, 2016, Riverside, California

"Know Your Rights! Empower Yourself!", Southern California Resource Services for Independent Living, January 8, 2015, Downey, California and February 19, 2015, Alhambra, California

Co-panelist," Legal Updates," National Federation of the Blind of California State Convention, October 11, 2014, Los Angeles, California

Co-presenter, "Education Rights: Students in the Juvenile Justice System", Contra Costa County Office of the Public Defender, March 26, 2014 Martinez, California

Co-panelist, "Cognitive Processing Deficits: Impact beyond Academic Achievement and Sensory Processing Deficits, Related Impairments, and Impacts for Litigation," California Attorneys for Criminal Justice and California Public Defenders Association Capital Case Defense Seminar, February 16, 2014, Monterey, California

Co-panelist, "Technology and Access: Leveling the Playing Field in Higher Education," Disability Rights Legal Center's First Annual Disability Rights Summit, October 22, 2013, Los Angeles, California

Co-presenter, "Recent Litigation Developments: College Students with Disabilities," Private College Disability Resource Center, October 28, 2011, Academy of Art University, San Francisco, California

## PROFESSIONAL AFFILIATIONS

American Bar Association, Member, 2010 to present
Disability Rights Bar Association, Member, 2010 to present

## LANGUAGES

Conversational in Spanish



**ROSEN BIEN
GALVAN & GRUNFELD LLP**

**Marc J. Shinn-Krantz**

101 Mission Street, Sixth Floor
San Francisco, California  94105-1738

T:  (415) 433-6830
F:  (415) 433-7104
E:  MShinn-Krantz@rbgg.com

## EXPERIENCE

**Rosen Bien Galvan & Grunfeld LLP, San Francisco, California        2017 – Present**
**Associate Attorney**
General and complex civil litigation, with an emphasis on civil rights, employment, business, and attorneys' fees cases, at the trial court and appellate levels.

**U.S. District Court for the Southern District of West Virginia        Fall 2016 – Fall 2017**
**Charleston, West Virginia**
**Judicial Law Clerk to the Honorable Joseph R. Goodwin**
Conducted research and drafted judicial opinions.  Assisted Judge to coordinate 60,000 cases in product liability MDLs in addition to regular criminal and civil docket.  Attended negotiations, conferences, and hearings.  Supervised summer externs.

**University of Minnesota Law School, Minneapolis, Minnesota        Fall 2015 – Spring 2016**
**Legal Writing Instructor**
Co-taught Legal Writing course to a class of first-year students with an adjunct faculty member.

**Prison Law Office, Berkeley, California        Summer 2015**
**Summer Law Clerk**
Interviewed clients in county jail, participated in negotiations with county sheriff, researched potential constitutional claims and drafted memoranda—culminating in new class action.  Toured SVSP and interviewed *Armstrong v. Brown* and *Clark v. California* clients.

**Conflict Resolution Center, Minneapolis, Minnesota        Fall 2014 – Spring 2015**
**Mediator and Extern**
Mediated disputes including cases in housing court and harassment court, citizen-police complaints, and neighbor-to-neighbor conflicts.  Coordinated outreach to Minneapolis Police Department, City Council, and Public Housing Authority.

**U.S. District Court for the District of Minnesota, St. Paul, Minnesota        Fall 2014**
**Judicial Extern to the Honorable Susan Richard Nelson**
Researched legal issues, analyzed parties' briefs, and drafted bench memoranda.  Proofread judicial orders.

[331616.2]



**Mid-Minnesota Legal Aid, Minnesota Disability Law Center**                    **Summer 2014**
**Minneapolis, Minnesota**
**Law Clerk**
Advocated for the rights of individuals with disabilities.  Argued before administrative law judges.  Investigated systemic statewide issues.  Researched novel ADA issue.  Assisted negotiations with government entities.  Drafted memoranda.

**Rosen Bien Galvan & Grunfeld LLP, San Francisco, California**       **Fall 2009 – Spring 2013**
**Paralegal**
Worked primarily on *Armstrong v. Brown* and *Coleman v. Brown*.  Analyzed document productions, aided in drafting prison tour reports, corresponded with class members, and trained new paralegals.  Assisted with opposing *Coleman* termination motion.

## EDUCATION

**University of Minnesota Law School**                    **J.D., *cum laude*, 2016**
**Minneapolis, Minnesota**                    **Labor & Employment Law**
*Honors:*  *ABA Journal of Labor & Employment Law*, Lead Managing Editor, Best 2L Editor Award; President's Student Leadership and Service Award, 2016; University of Minnesota Human Rights Law Award, 2016; Dean's List (all semesters); Leonard E. Lindquist Scholarship; Dean's Distinguished Merit Scholarship

*Activities:*  Research Advisor, Human Rights Center; Volunteer Participant, Law School Public Service Program; Volunteer Instructor, Open Doors to Federal Courts; Co-President, Amnesty International

**Oberlin College, Oberlin Ohio**                    **B.A., Politics; Law & Society, 2008**
*Activities:*  Intern to Adrian Fenty, Mayor of Washington D.C.; Student Senate

## BAR ADMISSIONS

State Bar of California No. 312968 (2016)

## PUBLICATIONS/PRESENTATIONS

*Ending Sexual Orientation Discrimination in Employment*, The Recorder (February 20, 2018)

*Third-Party Inflammatory Appeals to Prejudice: Race, Religion, and Union Elections*, 31 A.B.A. J. Lab. & Emp. L. 385 (Winter 2016)

## PROFESSIONAL AFFILIATIONS AND ACTIVITIES

Disability Rights Bar Association (DRBA)
Bar Association of San Francisco (BASF) Disability Rights Subcommittee

## LANGUAGES

Spanish (limited working proficiency)

# Exhibit B

**PERSON RECAP**

| Person | | Actual Hours Billed | Hours Claimed | Rate | Total Amount |
|---|---|---|---|---|---|
| MWB | Michael W. Bien | 0.9 | 0.0 | $965.00 | $0.00 |
| LAE | Lisa A. Ells | 665.1 | 619.0 | $650.00 | $402,350.00 |
| EG | Ernest Galvan | 8.5 | 0.0 | $780.00 | $0.00 |
| GCG | Gay C. Grunfeld | 8.1 | 0.0 | $835.00 | $0.00 |
| SJR | Sanford Jay Rosen | 1.9 | 0.0 | 1,000.00 | $0.00 |
| MLF | Michael L. Freedman | 0.6 | 0.0 | $585.00 | $0.00 |
| CDH | Christopher D. Hu | 2.4 | 0.0 | $440.00 | $0.00 |
| PAL | Pablo Lastra | 0.5 | 0.0 | $450.00 | $0.00 |
| VS | Van Swearingen | 0.5 | 0.0 | $585.00 | $0.00 |
| KJJ | Kara J. Janssen | 863.6 | 813.4 | $525.00 | $427,035.00 |
| MSK | Marc Shinn-Krantz | 179.7 | 135.4 | $375.00 | $50,775.00 |
| FGL | F. Gail LaPurja | 3.3 | 0.0 | $275.00 | $0.00 |
| KES | Karen E. Stilber | 23.1 | 19.0 | $340.00 | $6,460.00 |
| FFV | Fely F. Villadelgado | 0.3 | 0.0 | $275.00 | $0.00 |
| HNW | Hanna N. Wallace | 62.0 | 35.3 | $225.00 | $7,942.50 |
| SEL | Sara E. Long | 97.6 | 71.2 | $225.00 | $16,020.00 |
| KAM | Kelly A. McGraw | 0.2 | 0.0 | $240.00 | $0.00 |

**DISBURSEMENTS**

| Date | Description of Disbursements | Amount |
|---|---|---|
| 9/1/2016 | Kara J. Janssen- Mileage- Mileage to and from Santa Clara county Jail for inmate visits | $43.42 |
| 9/14/2016 | Kara J. Janssen- Mileage- Mileage to and from Santa Clara County Jail for inmate visits | $43.42 |
| 10/12/2016 | Kara J. Janssen- Mileage- Mileage to and from Santa Clara County Jail for inmate visits | $43.42 |
| 10/26/2016 | Kara J. Janssen- Travel- Parking | $10.00 |
| 10/26/2016 | Kara J. Janssen- Travel- Parking | $15.00 |

**DISBURSEMENTS**

| Date | Description of Disbursements | Amount |
|---|---|---|
| 10/26/2016 | Kara J. Janssen- Travel- Parking | $12.50 |
| 11/3/2016 | Lisa A. Ells- Mileage- Mileage | $52.92 |
| 11/7/2016 | Lisa A. Ells- Travel- Parking for meeting with county reps | $7.50 |
| 11/7/2016 | Lisa A. Ells- Travel- Parking at office before meeting | $37.00 |
| 11/9/2016 | Kara J. Janssen- Travel- Parking | $15.00 |
| 11/9/2016 | Kara J. Janssen- Mileage- Mileage | $43.42 |
| 12/2/2016 | Kara J. Janssen- Travel- Parking | $15.00 |
| 12/2/2016 | Kara J. Janssen- Mileage- Mileage | $43.42 |
| 12/6/2016 | Kara J. Janssen- Travel- Parking | $15.00 |
| 12/6/2016 | Kara J. Janssen- Mileage- Mileage | $43.42 |
| 12/31/2016 | Specialized Legal Services, Inc.- Miscellaneous- Summons in a Civil Action | $193.20 |
| 12/31/2016 | Specialized Legal Services, Inc.- Miscellaneous- Summons in a Civil Action | $60.00 |
| 12/31/2016 | Specialized Legal Services, Inc.- Miscellaneous- Process service - Santa Clara County Office of teh Sheriff | $60.00 |
| 2/13/2017 | Kara J. Janssen- Travel- Parking | $15.00 |
| 2/13/2017 | Kara J. Janssen- Mileage- Mileage | $43.20 |
| 2/15/2017 | Lisa A. Ells- Travel- Parking | $15.00 |
| 2/15/2017 | Lisa A. Ells- Travel- Meals | $12.30 |
| 2/15/2017 | Lisa A. Ells- Mileage- Mileage | $52.92 |
| 2/15/2017 | Lisa A. Ells- Mileage- Mileage | $61.56 |
| 3/1/2017 | Kara J. Janssen- Travel- Parking | $15.00 |
| 3/1/2017 | Kara J. Janssen- Mileage- Mileage | $43.20 |
| 3/14/2017 | Lisa A. Ells- Travel- Parking | $19.00 |
| 3/16/2017 | Kara J. Janssen- Mileage- Mileage | $43.20 |
| 6/15/2017 | Kara J. Janssen- Travel- Parking | $15.00 |
| 6/15/2017 | Kara J. Janssen- Mileage- Mileage | $43.20 |

**DISBURSEMENTS**

| Date | Description of Disbursements | Amount |
|---|---|---|
| 6/26/2017 | Lisa A. Ells- Mileage- Mileage | $59.40 |
| 6/26/2017 | Lisa A. Ells- Travel- Parking | $11.00 |
| 6/26/2017 | Lisa A. Ells- Travel- Parking | $11.00 |
| 8/11/2017 | Specialized Legal Services, Inc.- Filing Fee- E-filing: 08/11/17 | $245.00 |
| 8/18/2017 | Lisa A. Ells- Travel- Lunch for MLS KJ client and expert | $81.69 |
| 8/18/2017 | Lisa A. Ells- Travel- Parking | $6.00 |
| 8/18/2017 | Lisa A. Ells- Mileage- Mileage | $59.40 |
| 8/25/2017 | Kara J. Janssen- Travel- Parking | $15.00 |
| 8/25/2017 | Kara J. Janssen- Mileage- Mileage | $43.20 |
| 9/25/2017 | Lisa A. Ells- Travel- 9/25/2017 Mediation - Lunch for LAE, KJJ, MI | $48.47 |
| 9/25/2017 | Lisa A. Ells- Travel- 9/25/2017 Mediation - Parking | $25.00 |
| 9/25/2017 | Lisa A. Ells- Mileage- 9/25/2017 Mediation - Mileage | $56.70 |
| 11/6/2017 | Lisa A. Ells- Meals- Meals lunch for LAE KJJ MLS | $68.52 |
| 11/6/2017 | Lisa A. Ells- Travel- Parking | $25.00 |
| 11/6/2017 | Lisa A. Ells- Mileage- Mileage | $59.40 |
| 12/4/2017 | Lisa A. Ells- Travel- 11/27 mediation - parking in San Jose - receipt machine not working | $25.00 |
| 12/4/2017 | Lisa A. Ells- Travel- 11/27 mediation - Lunch for LAE KJJ | $40.07 |
| 12/4/2017 | Lisa A. Ells- Mileage- 11/27 mediation - Mileage to and from San Jose | $59.40 |
| 12/11/2017 | Lisa A. Ells- Mileage- Mediation - Mileage | $62.10 |
| 12/11/2017 | Lisa A. Ells- Travel- Mediation - Parking | $25.00 |
| 12/11/2017 | Lisa A. Ells- Travel- Mediation - Lunch for LAE KJJ MI | $66.04 |
| 1/27/2018 | Lisa A. Ells- Meals- Lunch LAE MSK KJJ MI - settlement conf in SJ | $72.16 |
| 1/27/2018 | Lisa A. Ells- Transportation- Parking - settlement conf in SJ | $25.00 |
| 1/27/2018 | Lisa A. Ells- Mileage- Mileage - settlement conf in SJ | $57.23 |
| 1/31/2018 | Specialized Legal Services, Inc.- Miscellaneous- Service on United States District Court, Hon. Lucy H. Koh, 1/24/18 | $170.00 |
| 2/22/2018 | Marc Shinn-Krantz- Transportation- Parking-Client visit at SCCJ | $5.00 |

**DISBURSEMENTS**

| Date | Description of Disbursements | Amount |
|------|------------------------------|--------|
| 3/29/2018 | Marc Shinn-Krantz- Meals- Social Policy-LAE, MSK, Michelle Iorio conference in SJ. | $47.85 |
| 3/29/2018 | Lisa A. Ells- Mileage- Settlement conference | $63.22 |
| 3/29/2018 | Lisa A. Ells- Transportation- Parking - Settlement conference | $25.00 |
| 4/27/2018 | Lisa A. Ells- Transportation- Parking to attend settlement conference | $25.00 |
| 4/27/2018 | Lisa A. Ells- Meals- Social Policy-for MSK MI LAE - Settlement conference | $57.84 |
| 4/27/2018 | Lisa A. Ells- Mileage- Travel to attend Settlement conference | $58.86 |
| 5/4/2018 | Marc Shinn-Krantz- Travel- Parking—client visit to SCCJ | $15.00 |
| 5/4/2018 | Marc Shinn-Krantz- Mileage- Mileage - travel from Berkeley to SCCJ for client visits, and return trip | $55.59 |
| 5/7/2018 | Lisa A. Ells- Meals- Social Policy - lunch for MSK LAE MI | $41.30 |
| 5/7/2018 | Lisa A. Ells- Transportation- Impark - 5/7 Settlement Conf. | $10.00 |
| 5/7/2018 | Lisa A. Ells- Mileage- Travel to from for settlement conference. | $49.05 |
| 5/7/2018 | Marc Shinn-Krantz- Travel- Parking - settlement conference | $25.00 |
| 5/7/2018 | Marc Shinn-Krantz- Mileage- Travel to settlement conference | $55.04 |
| 5/31/2018 | Lisa A. Ells- Travel- Parking for settlement conf | $10.00 |
| 5/31/2018 | Lisa A. Ells- Mileage- Travel to/from Settlement conference | $54.50 |
| 5/31/2018 | Lisa A. Ells- Travel- Social Policy San Jose | $46.78 |
| 5/31/2018 | Marc Shinn-Krantz- Travel- Parking - Impark Paseo De San Antonio | $10.00 |
| 5/31/2018 | Marc Shinn-Krantz- Mileage- drive from Berkeley to Oakland to pick up M. Iorio, then to San Jose settlement conference, back to Oakland, then to | $55.04 |
| 6/12/2018 | Lisa A. Ells- Travel- Parking - 6/12 settlement conference | $10.00 |
| 6/12/2018 | Lisa A. Ells- Mileage- Mileage - 6/12 settlement conference | $59.95 |
| 6/20/2018 | Kara J. Janssen- Mileage- Mileage to attend CMC in San Jose. | $45.78 |
| 6/20/2018 | Kara J. Janssen- Travel- Parking Expense to attend CMC in San Jose. | $20.00 |
| 9/13/2018 | Kara J. Janssen- Mileage- Visits with two clients at Jail | $43.60 |
| 9/13/2018 | Kara J. Janssen- Travel- Parking - Visits with two clients at Jail | $6.25 |

**DISBURSEMENTS**

| Date | Description of Disbursements | Amount |
|------|------------------------------|--------|
| 9/20/2018 | Kara J. Janssen- Mileage- Mileage to visit clients in main jail to go over settlement docs | $43.60 |
| 10/8/2018 | Kara J. Janssen- Mileage- Mileage to see client at clients home in San Jose to go over settlement documents | $46.32 |
| 11/13/2018 | Outside Postage and Delivery | $154.50 |
| 11/15/2018 | Westlaw research | $593.65 |
| 11/30/2018 | Inhouse Postage | $114.80 |
| 11/30/2018 | Outside Copying and Scanning | $1,374.82 |
| 12/6/2018 | Lisa A. Ells- Travel- Parking in SJ for hearing - Preliminary approval hearing | $10.00 |
| 12/6/2018 | Lisa A. Ells- Travel- Parking at office in SF before hearing - Preliminary approval hearing | $26.00 |
| 12/6/2018 | Lisa A. Ells- Mileage- Mileage to and from San Jose - Preliminary approval hearing | $54.50 |
| 12/7/2018 | Pacer Charges | $3.80 |
| 12/31/2018 | Long distance telephone charges | $104.98 |
| 1/11/2019 | In-house Copying and Printing | $3,829.00 |
| | Total Disbursements | $9,800.60 |

| | | |
|---|---|---|
| Total Professional Services | $1,015,981.00 | |
| *Less Courtesy Discount* | *($105,398.50)* | |
| Total Professional Services Due | $910,582.50 | |
| Total Disbursements Due | $9,800.60 | |
| Total Current Charges | | $920,383.10 |

# Exhibit C

DONALD SPECTER – 083925
CORENE KENDRICK – 226642
RITA K. LOMIO – 254501
MARGOT MENDELSON – 268583
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone:    (510) 280-2621
Facsimile:     (510) 280-2704

MICHAEL W. BIEN – 096891
GAY C. GRUNFELD – 121944
ERNEST GALVAN  196065
PENNY GODBOLD – 226925
MICHAEL FREEDMAN – 262850
ROSEN BIEN
GALVAN & GRUNFELD LLP
50 Fremont Street, 19th Floor
San Francisco, California  94105-2235
Telephone:    (415) 433-6830
Facsimile:     (415) 433-7104

LINDA D. KILB – 136101
DISABILITY RIGHTS EDUCATION &
DEFENSE FUND, INC.
3075 Adeline Street, Suite 201
Berkeley, California  94703
Telephone:    (510) 644-2555
Facsimile:     (510) 841-8645

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ARMSTRONG, et al., | Case No. C94 2307 CW |
| Plaintiffs, | **[PROPOSED] STIPULATED ORDER CONFIRMING UNDISPUTED ATTORNEYS' FEES AND COSTS FOR THE SECOND QUARTER OF 2018** |
| v. | |
| EDMUND G. BROWN, JR., et al., | |
| Defendants. | Judge:   Hon. Claudia Wilken |

On March 26, 1997, the District Court established procedures by which Plaintiffs are to collect periodic attorneys' fees and costs in this case in connection with their work monitoring Defendants' compliance with the Court's Orders and collecting fees.

Pursuant to these procedures, on July 24, 2018, Plaintiffs served on Defendants their Second Quarterly Statement for 2018 by overnight delivery.  The parties completed their meet-and-confer process on August 24, 2018 as to the fees and costs incurred on all matters.

As a result of the August 24, 2018 agreement, the parties agree to the following:

The parties agree to the payment of $1,427,447.74 to resolve all fees and costs incurred during the Second Quarter of 2018, for monitoring and/or litigation activities in the California Department of Corrections of Rehabilitation Division of Adult Operations and Adult Programs (CDCR AOAP) portion of the case.  Attached hereto as **Exhibit A** are charts setting forth the fees and costs claimed by Plaintiffs and the amounts agreed to by the parties to settle these claims.

The parties agree to the payment of $58,816.06 to resolve all fees and costs incurred during the Second Quarter of 2018, for monitoring and/or litigation activities in the Board of Parole Hearings (BPH) portion of the case.  Attached hereto as **Exhibit B** are charts setting forth the fees and costs claimed by Plaintiffs and the amounts agreed to by the parties to settle these claims.

The parties agree to the payment of $190,152.71 to resolve all fees and costs incurred during the Second Quarter of 2018, for monitoring and/or litigation activities in the Division of Adult Parole Operations (DAPO) portion of the case.  Attached hereto as **Exhibit C** are charts setting forth the fees and costs claimed by Plaintiffs and the amounts agreed to by the parties to settle these claims.

The parties agree to the payment of $15,639.04 to resolve all fees and costs incurred during the Second Quarter of 2018, for fees work.  Attached hereto as **Exhibit D** are charts setting forth the fees and costs claimed by Plaintiffs and the amounts agreed to by the parties to settle these claims.

[3293147.1]

1       IT IS HEREBY ORDERED that the amounts set forth above are due and

2    collectable as of forty-five days from the date of entry of this Order.  Interest on these fees

3    and costs will run from August 23, 2018, accruing at the rate provided by 28 U.S.C.

4    § 1961.

5

6    DATED:   September 12   , 2018

7                                                    Claudia Wilken
                                                     United States District Judge

8

9    APPROVED AS TO FORM:

10

11   DATED: September 10, 2018              /s/Sharon Garske
                                            Sharon Garske
12                                          Deputy Attorney General
                                            Attorney for Defendants
13

14   DATED:  September 10, 2018             /s/Gay Crosthwait Grunfeld
                                            Gay Crosthwait Grunfeld
15                                          Rosen Bien Galvan & Grunfeld LLP
                                            Attorney for Plaintiffs
16

17

18

19

20

21

22

23

24

25

26

27

28

                                            3                    Case No. C94 2307 CW
     PROPOSED] STIPULATED ORDER CONFIRMING UNDISPUTED ATTORNEYS' FEES AND COSTS FOR THE
                                  SECOND QUARTER OF 2018

[3293147.1]

# EXHIBIT A

**Armstrong v. Brown**
Second Quarterly Statement of 2018
April 1, 2018 through June 30, 2018

## CDCR/AOAP SUMMARY OF UNDISPUTED FEES AND COSTS

| MATTER | UNDISPUTED FEES | UNDISPUTED COSTS |
|---|---|---|
| CDCR/AOAP MONITORING | $1,392,705.85 | $34,741.89 |
| | **TOTAL UNDISPUTED:** | **$1,427,447.74** |

**Armstrong v. Brown**
Second Quarterly Statement of 2018
April 1, 2018 through June 30, 2018
*Matter: CDCR/AOAP Monitoring/Merits*

| Monitoring (581-3) | | Actual Hours | Claimed Hours | 2018 Rates | Total | Fees Now Owing Per Negotiated Compromise |
|---|---|---|---|---|---|---|
| **ROSEN, BIEN, GALVAN & GRUNFELD** | | | | | | |
| Michael W. Bien (MWB) | | 2.30 | 2.30 | $965 | $2,219.50 | $2,141.82 |
| Gay C. Grunfeld (GCG) | | 26.40 | 26.40 | $835 | $22,044.00 | $21,272.46 |
| Ernest Galvan (EG) | | 1.5 | 1.5 | $780 | $1,170.00 | $1,129.05 |
| Penny Godbold (PG) | | 253.20 | 249.60 | $675 | $168,480.00 | $162,583.20 |
| Thomas Nolan (TN) | | 186.80 | 183.40 | $700 | $128,380.00 | $123,886.70 |
| Michael L. Freedman (MLF) | | 30.30 | 27.90 | $585 | $16,321.50 | $15,750.25 |
| Ben Bien-Kahn (BBK) | | 69.90 | 68.10 | $535 | $36,433.50 | $35,158.33 |
| Krista Stone-Manista (KSM) | | 114.70 | 110.40 | $535 | $59,064.00 | $56,996.76 |
| Jenny Yelin (JY) | | 11.40 | 10.10 | $525 | $5,302.50 | $5,116.91 |
| Kara J. Janssen (KJJ) | | 0.10 | 0.00 | $525 | $0.00 | $0.00 |
| Michael S. Nunez (MSN) | | 0.20 | 0.00 | $500 | $0.00 | $0.00 |
| Mark Shinn-Krantz (MSK) | | 4.90 | 0.00 | $375 | $0.00 | $0.00 |
| Karen Stilber (KES) | | 121.50 | 112.80 | $340 | $38,352.00 | $37,009.68 |
| Linda Woo (LHW) | | 2.30 | 0.00 | $340 | $0.00 | $0.00 |
| F. Gail LaPurja (FGL) | | 1.30 | 0.00 | $275 | $0.00 | $0.00 |
| Greg Gonzalez (GZG) | | 0.40 | 0.00 | $275 | $0.00 | $0.00 |
| Katherine Hamilton (KCH) | | 130.10 | 96.80 | $240 | $23,232.00 | $22,418.88 |
| Dylan Verner-Crist (DVC) | | 9.20 | 9.20 | $240 | $2,208.00 | $2,130.72 |
| Marcus V. Levy (MVL) | | 0.50 | 0.00 | $275 | $0.00 | $0.00 |
| Maisy H. Sylvan (MHS) | | 205.20 | 194.00 | $225 | $43,650.00 | $42,122.25 |
| Nathalie Welch (NW) | | 15.70 | 10.20 | $240 | $2,448.00 | $2,362.32 |
| Hanna Wallace (HW) | | 317.50 | 301.90 | $225 | $67,927.50 | $65,550.04 |
| | **Total Hours:** | 1,505.40 | 1,404.60 | | | |
| **RBGG FEES:** | | | | | **$617,232.50** | **$595,629.36** |
| **PRISON LAW OFFICE** | | | | | | |
| Donald Specter (DS) | | 29.40 | 29.40 | $965 | $28,371.00 | $27,378.02 |
| Sara Norman (SN) | | 35.50 | 35.50 | $790 | $28,045.00 | $27,063.43 |
| Corene Kendrick (CK) | | 24.30 | 24.30 | $675 | $16,402.50 | $15,828.41 |
| Rita Lomio (RL) | | 257.90 | 257.90 | $615 | $158,608.50 | $153,057.20 |
| Thomas Nosewicz | | 157.80 | 157.80 | $585 | $92,313.00 | $89,082.05 |
| Margot Mendelson (MM) | | 113.10 | 113.10 | $535 | $60,508.50 | $58,390.70 |
| Sia N. Henry (SNH) | | 23.50 | 23.50 | $425 | $9,987.50 | $9,637.94 |
| Camille Woods (CW) | | 101.30 | 101.30 | $350 | $35,455.00 | $34,214.08 |
| Amber Norris (AN) | | 181.80 | 181.80 | $335 | $60,903.00 | $58,771.40 |
| Megan Lynch (ML) | | 273.80 | 273.80 | $335 | $91,723.00 | $88,512.70 |
| Sarah Hopkins (SH) | | 254.60 | 254.60 | $300 | $76,380.00 | $73,706.70 |
| Annalise Finney (AF) | | 138.30 | 138.30 | $300 | $41,490.00 | $40,037.85 |
| Molly Petchenik (MP) | | 154.50 | 154.50 | $275 | $42,487.50 | $41,000.44 |
| Tania Amarillas (TA) | | 11.20 | 11.20 | $275 | $3,080.00 | $2,972.20 |
| Stacy Amador (SA) | | 52.80 | 52.80 | $275 | $14,520.00 | $14,011.80 |
| Alexis Hoffman (AH) | | 88.90 | 88.90 | $275 | $24,447.50 | $23,591.84 |
| Patrick Booth (PB) | | 67.80 | 67.80 | $275 | $18,645.00 | $17,992.43 |
| Samuel Kennedy (SK) | | 9.80 | 9.80 | $275 | $2,695.00 | $2,600.68 |
| Gabriela Pelsinger (GP) | | 45.80 | 45.80 | $275 | $12,595.00 | $12,154.18 |
| Katie Tertocha (KT) | | 24.80 | 24.80 | $275 | $6,820.00 | $6,581.30 |
| | **Total Hours:** | 2,046.90 | 2,046.90 | | | |
| **PLO FEES:** | | | | | **$825,477.00** | **$796,585.31** |
| **DISABILITY RIGHTS EDUCATION AND DEFENSE FUND** | | | | | | |
| Linda Kilb (LK) | | 0.2 | 0.2 | $845 | $169.00 | $163.09 |
| Case Clerk | | 2.00 | 2.00 | $170 | $340.00 | $328.10 |
| | **Total Hours:** | 2.00 | 2.00 | | | |
| **DREDF FEES:** | | | | | **$509.00** | **$491.19** |
| **TOTAL CDCR/AOAP MONITORING FEES:** | | | | | **$1,443,218.50** | **$1,392,705.85** |

**Armstrong v. Brown**
Second Quarterly Statement of 2018
April 1, 2018 through June 30, 2018
<u>Costs</u>

## *Matter:  CDCR/AOAP Merits/Monitoring*

| Rosen, Bien, Galvan & Grunfeld (581-3) | | Claimed Costs | Costs Now Owing Per Negotiated Compromise |
|---|---|---|---|
| Photocopying (In house) | | $2,232.00 | $2,153.88 |
| Photocopying/printing (Outside) | | $1,342.07 | $1,295.10 |
| Translation/Interpreter Services | | $75.05 | $72.42 |
| Postage & Delivery | | $344.05 | $332.01 |
| Telephone | | $24.85 | $23.98 |
| Travel - Mileage, Tolls, Food | | $8,834.48 | $8,525.27 |
| | **Total RBGG Costs:** | **$12,852.50** | **$12,402.66** |
| **Prison Law Office** | | | |
| Photocopying (In house) | | $980.40 | $946.09 |
| Interpreting/Translation services | | $3,578.00 | $3,452.77 |
| Travel - Mileage, Tolls, Food | | $16,622.09 | $16,040.32 |
| Postage & Delivery | | $1,833.81 | $1,769.63 |
| | **Total PLO Costs:** | **$23,014.30** | **$22,208.80** |
| **Disability Rights Education & Defense Fund, Inc.** | | | |
| Photocopying (in-house) | | $85.20 | $82.22 |
| Inmate Collect Telephone Calls | | $25.00 | $24.13 |
| Postage & Delivery | | $24.96 | $24.09 |
| | **Total DREDF Costs:** | **$135.16** | **$130.43** |
| | **TOTAL CDCR/AOAP MERITS/MONITORING COSTS:** | **$36,001.96** | **$34,741.89** |

# EXHIBIT B

**Armstrong v. Brown**
Second Quarterly Statement of 2018
April 1, 2018 through June 30, 2018

## BPH SUMMARY OF UNDISPUTED FEES AND COSTS

| MATTER | UNDISPUTED FEES | UNDISPUTED COSTS |
|--------|-----------------|------------------|
| BPH | $57,358.15 | $1,457.90 |

**TOTAL UNDISPUTED:**     **$58,816.06**

**Armstrong v. Brown**
Second Quarterly Statement of 2018
April 1, 2018 through June 30, 2018
*Matter: BPH*

| _BPH (581-4)_ | | Actual | Claimed | 2018 | | Fees Now Owing Per Negotiated |
|---|---|---|---|---|---|---|
| | | Hours | Hours | Rates | Total | Compromise |
| _BPH MONITORING (581-4)_ | | | | | | |
| ROSEN, BIEN, GALVAN & GRUNFELD | | | | | | |
| Gay C. Grunfeld (GCG) | | 7.70 | 7.70 | $835 | $6,429.50 | $6,204.47 |
| Thomas Nolan (TN) | | 48.00 | 48.00 | $700 | $33,600.00 | $32,424.00 |
| Krista Stone-Manista (KSM) | | 0.30 | 0.00 | $535 | $0.00 | $0.00 |
| Karen Stilber (KES) | | 0.70 | 0.00 | $340 | $0.00 | $0.00 |
| F. Gail LaPurja (FGL) | | 0.20 | 0.00 | $275 | $0.00 | $0.00 |
| Fely F. Villadelgado (FFV) | | 0.10 | 0.00 | $275 | $0.00 | $0.00 |
| Maisy H. Sylvan (MHS) | | 1.10 | 0.00 | $225 | $0.00 | $0.00 |
| Katherine Hamilton (KCH) | | 12.50 | 7.90 | $240 | $1,896.00 | $1,829.64 |
| | Total Hours: | 70.60 | 63.60 | | | |
| RBGG FEES: | | | | | $41,925.50 | $40,458.11 |
| PRISON LAW OFFICE | | | | | | |
| Sara Norman (SN) | | 5.80 | 5.80 | $790 | $4,582.00 | $4,421.63 |
| Rita Lomio (RL) | | 0.60 | 0.60 | $615 | $369.00 | $356.09 |
| Rana Anabtawi (RA) | | 3.70 | 3.70 | $535 | $1,979.50 | $1,910.22 |
| Mae Ackerman-Brimberg (MAB) | | 24.90 | 24.90 | $425 | $10,582.50 | $10,212.11 |
| | Total Hours: | 35.00 | 35.00 | | | |
| PLO FEES: | | | | | $17,513.00 | $16,900.05 |
| TOTAL FEES FOR BPH WORK: | | | | | $59,438.50 | $57,358.15 |

**Armstrong v. Brown**
Second Quarterly Statement of 2018
April 1, 2018 through June 30, 2018
Costs

## Matter: BPH

| | | Costs | Costs Now Owing Per Negotiated Compromise |
|---|---|---|---|
| Rosen, Bien, Galvan & Grunfeld (581-4) | | | |
| Photocopying (In house) | | $94.20 | $90.90 |
| Westlaw research | | $1.25 | $1.21 |
| Interpreter/SLI | | $491.28 | $474.09 |
| Telephone | | $0.55 | $0.53 |
| Travel - Mileage, Tolls, Food | | $486.42 | $469.40 |
| | Total RBGG Costs: | $1,073.70 | $1,036.12 |
| | | | |
| Prison Law Office | | | |
| Travel - Mileage, Tolls, Food | | $437.08 | $421.78 |
| | Total PLO Costs: | $437.08 | $421.78 |
| | | | |
| | TOTAL BPH COSTS: | $1,510.78 | $1,457.90 |

# EXHIBIT C

## Armstrong v. Brown
**Second Quarterly Statement of 2018**
**April 1, 2018 through June 30, 2018**

## DAPO SUMMARY OF UNDISPUTED FEES AND COSTS

| MATTER | UNDISPUTED FEES | UNDISPUTED COST |
|---|---|---|
| DAPO MONITORING | $185,688.20 | $4,464.51 |

**TOTAL UNDISPUTED:**     **$190,152.71**

**Armstrong v. Brown**
Second Quarterly Statement of 2018
April 1, 2018 through June 30, 2018
*Matter: DAPO Monitoring*

| *DAPO Monitoring (581-9)* | | Actual Hours | Claimed Hours | 2018 Rates | Total | Fees Now Owing Per Negotiated Compromise |
|---|---|---|---|---|---|---|
| **ROSEN, BIEN, GALVAN & GRUNFELD** | | | | | | |
| Michael W. Bien (MWB) | | 0.70 | 0.70 | $965 | $675.50 | $651.86 |
| Gay C. Grunfeld (GCG) | | 15.80 | 15.70 | $835 | $13,109.50 | $12,650.67 |
| Penny Godbold (PG) | | 27.00 | 26.00 | $675 | $17,550.00 | $16,935.75 |
| Thomas Nolan (TN) | | 40.10 | 40.10 | $700 | $28,070.00 | $27,087.55 |
| Michael L. Freedman (MLF) | | 4.20 | 0.00 | $585 | $0.00 | $0.00 |
| Benjamin Bien-Kahn (BBK) | | 100.90 | 97.60 | $535 | $52,216.00 | $50,388.44 |
| Krista Stone-Manista (KSM) | | 20.50 | 20.40 | $535 | $10,914.00 | $10,532.01 |
| Jenny S. Yelin (JSY) | | 40.80 | 39.50 | $525 | $20,737.50 | $20,011.69 |
| Karen Stilber (KES) | | 17.90 | 17.90 | $340 | $6,086.00 | $5,872.99 |
| F. Gail LaPurja (FGL) | | 12.40 | 11.90 | $275 | $3,272.50 | $3,157.96 |
| Marcus V. Levy (MVL) | | 0.10 | 0.00 | $275 | $0.00 | $0.00 |
| Katherine Hamilton (KCH) | | 8.00 | 5.70 | $240 | $1,368.00 | $1,320.12 |
| Nathalie Welch (NCW) | | 221.70 | 160.10 | $240 | $38,424.00 | $37,079.16 |
| Hanna Wallace (HW) | | 0.80 | 0.00 | $225 | $0.00 | $0.00 |
| | **Total Hours:** | **510.90** | **435.60** | | | |
| **RBGG FEES:** | | | | | **$192,423.00** | **$185,688.20** |
| **TOTAL FEES FOR DAPO MONITORING WORK:** | | | | | **$192,423.00** | **$185,688.20** |

**Armstrong v. Brown**
Second Quarterly Statement of 2018
April 1, 2018 through June 30, 2018
<u>Costs</u>

## *Matter: DAPO Monitoring*

| Rosen, Bien, Galvan & Grunfeld (581-9) | | Costs | Costs Now Owing<br>Per Negotiated<br>Compromise |
|---|---|---|---|
| Photocopying (in-house) | | $1,192.40 | $1,150.67 |
| Photocopying (outside) | | $101.66 | $98.10 |
| Westlaw | | $7.05 | $6.80 |
| Inhouse Postage | | $285.77 | $275.77 |
| Long distance telephone charges | | $0.35 | $0.34 |
| Travel - Mileage, Tolls, Food | | $3,039.21 | $2,932.84 |
| | **Total RBGG Costs:** | **$4,626.44** | **$4,464.51** |
| | **TOTAL DAPO MONITORING COSTS:** | **$4,626.44** | **$4,464.51** |

# EXHIBIT D

## Armstrong v. Brown
**Second Quarterly Statement of 2018**
**April 1, 2018 through June 30, 2018**

## SUMMARY OF UNDISPUTED FEES WORK AND COSTS

|  | UNDISPUTED FEES | UNDISPUTED COSTS |
|---|---|---|
| FEES WORK (ALL MATTERS) | $15,463.64 | $175.40 |
|  | **TOTAL UNDISPUTED:** | **$15,639.04** |

**Armstrong v. Brown**
Second Quarterly Statement of 2018
April 1, 2018 through June 30, 2018
*Matter: All Matters Fees Work*

| *Fees (581-2)* | | Actual | Claimed | 2018 | | Fees Now Owing Per Negotiated |
|---|---|---|---|---|---|---|
| | | Hours | Hours | Rates | Total | Compromise |
| **ROSEN, BIEN, GALVAN & GRUNFELD** | | | | | | |
| Gay C. Grunfeld (GCG) | | 10.20 | 10.00 | $835 | $8,350.00 | $8,057.75 |
| Karen E. Stilber (KES) | | 14.20 | 12.80 | $340 | $4,352.00 | $4,199.68 |
| | Total Hours: | 24.40 | 22.80 | | | |
| **RBGG FEES:** | | | | | **$12,702.00** | **$12,257.43** |
| | | | | | | |
| **PRISON LAW OFFICE** | | | | | | |
| Rita Lomio | | 1.00 | 1.00 | $615 | $615.00 | $593.48 |
| Margot Mendelson (MKM) | | 1.60 | 1.60 | $535 | $856.00 | $826.04 |
| Ashley Kirby (AK) | | 6.00 | 6.00 | $210 | $1,260.00 | $1,215.90 |
| | Total Hours: | 8.60 | 8.60 | | | |
| **PLO FEES:** | | | | | **$2,731.00** | **$2,635.42** |
| | | | | | | |
| **DISABILITY RIGHTS EDUCATION AND DEFENSE FUND** | | | | | | |
| Linda Kilb (LDK) | | 0.70 | 0.70 | $845 | $591.50 | $570.80 |
| | Total Hours: | 0.70 | 0.70 | | | |
| **DREDF FEES:** | | | | | **$591.50** | **$570.80** |
| | | | | | | |
| **TOTAL FEES FOR ARMSTRONG FEES WORK:** | | | | | **$16,024.50** | **$15,463.64** |

**Armstrong v. Brown**
Second Quarterly Statement of 2018
April 1, 2018 through June 30, 2018
<u>Costs</u>

## *Matter: Fees Work in All Matters*

| | | Costs Now Owing |
|---|---|---|
| <u>Rosen, Bien, Galvan & Grunfeld (581-2)</u> | Costs | <u>Per Negotiated Compromise</u> |
| Photocopying and Printing (in-house) | $127.40 | $122.94 |
| Long distance telephone | $0.90 | $0.87 |
| Postage & Delivery | $46.86 | $45.22 |
| **Total RBGG Costs:** | **$175.16** | **$169.03** |
| | | |
| <u>Disability Rights Education & Defense Fund, Inc.</u> | | |
| Photocopying (in-house) | $6.60 | $6.37 |
| **Total DREDF Costs:** | **$6.60** | **$6.37** |
| | | |
| **TOTAL FEES WORK COSTS :** | **$181.76** | **$175.40** |

# Exhibit D

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE HERNANDEZ, et al., | Case No. 5:13-cv-02354-PSG |
| Plaintiffs, | **ORDER GRANTING ATTORNEY'S FEES AND EXPENSES** |
| v. | **(Re:  Docket No. 500)** |
| COUNTY OF MONTEREY, et al., | |
| Defendants. | |

Counsel for Plaintiffs Jesse Hernandez and all others similarly situated moves for an award of $4.8 million for their reasonable attorney's fees and expenses,[1] as agreed by the parties in the Settlement Agreement.[2]  Defendants do not oppose: while Defendants initially objected to Plaintiffs' request for interest,[3] the parties successfully met, conferred and resolved the issue without the court's intervention.[4]

The court GRANTS as unopposed Plaintiffs' motion for $4.8 million for reasonable attorney's fees and expenses.  The question of interest is resolved according to the parties' stipulation.[5]

---

[1] *See* Docket No. 500.

[2] *See* Docket No. 494 at ¶¶ 60-65.

[3] *See* Docket Nos. 501, 502.

[4] *See* Docket No. 508.

[5] *See id.*

Case No. 5:13-cv-02354-PSG
ORDER GRANTING ATTORNEY'S FEES AND EXPENSES

1    **SO ORDERED.**

2    Dated: November 9, 2015

3    _____
     PAUL S. GREWAL

4    United States Magistrate Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2